## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                      Chapter 11

ELCOM HOTEL & SPA, LLC and                  Case No.  13-10029-BKC-RAM
ELCOM CONDOMINIUM, LLC,                      Case No.  13-10031-BKC-RAM

    Debtors.                            (Jointly Administered)
_____/

### ELCOM HOTEL & SPA, LLC'S EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE ENTRY INTO POST-PETITION INSURANCE PREMIUM FINANCING AGREEMENT
### (Emergency Hearing Requested)

**Elcom Hotel & Spa, LLC respectfully requests that this Court consider this matter as soon as its calendar permits.  The Debtor has determined that a coverage gap exists in its general liability insurance policy and failure to immediately remedy this matter could expose the Debtor to significant liability.  As such, there is a high likelihood of immediate and irreparable harm to the Debtor and its estate if the Debtor does not enter into a new insurance agreement.   Additionally, the Debtor seeks to enter into an insurance premium financing agreement to fund the premium payments due under the new general liability insurance policy.**

Elcom Hotel & Spa, LLC ("**Elcom Hotel**"), as debtor and debtor in possession, by and through undersigned counsel, submits this Motion, pursuant to 11 U.S.C. §§ 105, 363, 364, 1107, and 1108 and Fed. R. Bankr. P. 4001 and 6004, and Local Rule 4001-3, seeking entry of an order authorizing Elcom Hotel's entry into the post-petition insurance premium financing agreement (the "**Agreement**")[1] with Premium Assignment Corporation ("**PAC**"), and respectfully represents as follows:

### I.        Jurisdiction and Venue

1.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper before this

---

[1] The proposed Agreement is attached to this Motion as Exhibit "A".

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested in this Motion are sections 105(a), 363(b), 364(c)(2), 1107(a), and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rule 4001-3.

## II.      Background

3.      On January 2, 2013 (the "**Petition Date**"), Elcom Hotel and Elcom Condominium, LLC ("**Elcom Condo**") (collectively, the "**Debtors**") each commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Debtors are owners of a spa, restaurant, hotel units, and common areas (the "**Property**") located at what is known as One Bal Harbour, which is operated as a five-star resort.

5.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties-in-interest to the *First Day Declaration of Thomas D. Sullivan* (the "**Sullivan Declaration**") [ECF No. 6].

## III.      Elcom Hotel's Insurance Policies

6.      In the ordinary course of business, Elcom Hotel currently maintains insurance coverage (the "**Policies**"), including, among others, general liability, automobile liability, property, excess liability, and flood insurance policies.  The maintenance of the Policies is necessary to ensure the continued operation of Elcom Hotel's business and to protect the value of its assets, primarily the Property, and is required for a debtor to operate in Chapter 11.

7.    Prior to the Petition Date, the Policies were purchased through broker Bars Insurance and Reinsurance, LLC.  The annual premiums for the Policies were $2,471,431.24. These premiums were financed through First Insurance Funding.  The interest rate for the financing was 4.25% per annum and the total finance charge would be $35,207.88.  In addition to a $495,000.00 down payment, Elcom Hotel was required to make nine monthly payments of $223,787.68.  The policy period for the Policies expires on May 9, 2013.

8.    Since the Petition Date, Elcom Hotel, through its Chief Restructuring Officer Troy Taylor of Algon Capital, LLC, has been actively negotiating to (i) acquire new, less costly insurance policies for Elcom Hotel; (ii) obtain better insurance coverage; and (iii) obtain the least costly financing for such policies.  Based on the negotiations, Elcom Hotel was able to finalize the proposed Agreement with PAC for financing insurance premiums for a new commercial general liability insurance policy with Praetorian Insurance Company and National Union Fire Insurance Company of Louisiana for an umbrella coverage insurance policy (the "**New General Liability Policies**").  The New General Liability Policies will be purchased through broker Wells Fargo Insurance Services, USA, Inc.  Elcom Hotel is still in the process of negotiating renewal of insurance policies for property, flood, and the remaining Policies which expire in May; however, because Elcom Hotel has determined that a coverage gap exists in its current general liability insurance policies, Elcom Hotel seeks to immediately renew those policies.  Elcom Hotel will be entitled to a return of any unused premiums for the previous general liability insurance policies.

9.    Elcom Hotel believes that it has obtained the New General Liability Policies and premium financing on terms favorable to Elcom Hotel's estate.  By entering into the Agreement to pay for the New General Liability Policies, Elcom Hotel will save in excess of $175,000.00 in annual insurance premium payments on its general liability policy and its insurance coverage

will increase over what existed prior to the Petition Date.  For example, the New General Liability Policies includes coverage for in keepers legal liability and garage keepers legal liability, and increases coverage limits.  Elcom Hotel believes that it is not economically advantageous to pay the premiums on the New General Liability Policies on an annualized basis, and by entering into the Agreement Elcom Hotel will significantly increase its cash flow at a limited cost.

10.     Failure to enter into the New General Liability Policies will cause Elcom Hotel to operate without total insurance coverage and potentially expose Elcom Hotel to immediate and significant risk.

### IV.    Proposed Financing

11.     Elcom Hotel proposes to obtain financing from PAC to pay the premiums for the New General Liability Policies on the terms set forth in the Agreement.

12.     The significant aspects of the Agreement are as follows:

a.  Elcom Hotel will make a down payment of $33,088.75 (25% of the premiums under the New General Liability Policies).

b.  In order to pay the remaining premiums due under the New General Liability Policies, Elcom Hotel will receive $99,266.25 in financing from PAC.

c.  Elcom Hotel will pay PAC an annual percentage rate of 3.84% equaling a total finance charge of $1,600.65.

d.  Elcom Hotel will make 9 payments of $11,246.05 for the remaining premiums under the Agreement.

e.  Elcom Hotel has granted PAC a first priority lien on and security interest in unearned premiums or other sums which may become payable under the New General Liability

Policies.

## V.     Relief Requested and Basis Therefor

13.      By this Motion, Elcom Hotel respectfully requests that this Court enter an order authorizing entry into the Agreement.

14.      Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).[2]  Moreover, section 105(a) of the Bankruptcy Code allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a).  A debtor's decision to use assets outside the ordinary course of business must be based upon the sound business judgment of the debtor.  *See e.g.*, *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (*citing In re Schipper*, 933 F.3d 513, 515 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.3d 141, 143 (2d Cir. 1992) (holding that a court determining a section 363(b) application must find from the evidence presented before it a good business reason to grant such application).

15.      The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's

---

[2] Elcom Hotel believes that procurement of the New General Liability Policies constitutes transactions in the ordinary course of business, within the meaning of section 363(c)(1) of the Bankruptcy Code, that do not require prior bankruptcy court approval.

conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

16.     For all of the reasons stated in this Motion, Elcom Hotel believes that entry into the Agreement is well within its sound business judgment and that the "sound business justification" test is satisfied.  Elcom Hotel believes it is in the best interests of its estate and creditors to maintain adequate insurance coverage and finance the premium payments for the New General Liability Policies to increase Elcom Hotel's cash flow at a minimal cost.

17.     This Court may also authorize Elcom Hotel to enter into the Agreement pursuant to section 364(c)(2) of the Bankruptcy Code.  Section 364(c)(2) authorizes, after notice and a hearing, a debtor in possession to obtain debt secured by a lien on property of the estate.  *See* 11 U.S.C. § 364(c)(2).  Under any new premium finance agreement, the counterparty would likely require that Elcom Hotel grant a security interest in the unearned premiums under the financing policies.  *See generally In re Schwinn Bicycle Co.*, 200 B.R. 980, 982 (Bankr. N.D. Ill. 1996) (describing insurance premium financing agreements).

18.     Section 364(c) of the Bankruptcy Code authorizes a debtor, in exercise of its business judgment, to incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate.  This Court, as well as other courts in this District, have authorized a debtor's incurrence of secured debt for the postpetition entry into an insurance premium financing agreement.  *See In re Maguire Group Holdings, Inc., et al.*, Case No. 11-39347-BKC-RAM (Bankr. S.D. Fla. April 8, 2012) (authorizing the debtors to enter into a premium financing agreement, disclosure statement and security agreement with Imperial Credit Corporation); *see also In re Gulfstream Int'l Group, Inc., et al.*, Case No. 10-44131-BKC-

JKO (Bankr. S.D. Fla. January 13, 2011) (authorizing the debtors to enter into a postpetition premium financing agreement with AFCO Credit Corporation).

19.     Because borrowing to maintain essential insurance coverage is in the best interests of Elcom Hotel's estate and Elcom Hotel has been unable to secure unsecured premium financing, the Court should authorize Elcom Hotel to enter into the Agreement to finance the premiums for the New Policies.

20.     In addition, by this Motion, Elcom Hotel seeks a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  For the reasons set forth in this Motion, Elcom Hotel submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

21.     Notice of this Motion has been served on all parties on the attached service list. Elcom Hotel submits that no other or further notice need be provided.

## VI.    Conclusion

22.     Elcom Hotel submits that the relief requested in this Motion is appropriate, is an exercise of the Debtor's sound business judgment, is in the best interests of the estate, and should be granted as requested herein on an emergency basis.

**WHEREFORE**, Elcom Hotel respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as Exhibit "B", (a) authorizing Elcom Hotel's entry

into the Agreement to acquire the New General Liability Policies; and (b) granting such other and further relief as is just and appropriate.

Dated:  March 28, 2013                              Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, P.A.
*Counsel for the Debtors*
2525 Ponce de Leon Blvd., 9th Floor
Miami, Florida 33134
Tel.:    (305) 372-1800
Fax:    (305) 372-3508
E-mail: cwt@kttlaw.com
              clc@kttlaw.com
              vfa@kttlaw.com

By: */s/ Corali Lopez-Castro*
        Charles W. Throckmorton
        Florida Bar No. 286192
        Corali Lopez-Castro
        Florida Bar No. 863830
        Vincent F. Alexander
        Florida Bar No. 68114

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 28, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day (i) via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel of record or pro se parties who are authorized to receive electronically Notices of Electronic Filing in this bankruptcy case; and (ii) prepaid, first class U.S. mail upon all parties on the attached Master Service List.

By: */s/ Corali Lopez-Castro*
        Corali Lopez-Castro

**ELCOM HOTEL & SPA, LLC and**
**ELCOM CONDOMINIUM, LLC**
**Case Nos. 13-10029-RAM & 13-10031-RAM**

**MASTER SERVICE LIST**
**dated February 8, 2013**

**Served via electronic mail (ECF) to:**

Aleida Martinez Molina on behalf of Interested Party Village of Bal Harbour, Florida
amartinez@wsh-law.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Charles M Tatelbaum on behalf of Creditor 10295 Collins Avenue Residential Condominium
Association, Inc.
ctatelbaum@hinshawlaw.com, csmith@hinshawlaw.com

Charles W Throckmorton on behalf of Debtor Elcom Condominium, LLC
cwt@kttlaw.com, lf@kttlaw.com, ycc@kttlaw.com

Corali Lopez-Castro on behalf of Debtor Elcom Hotel & Spa, LLC
clc@kttlaw.com, rcp@kttlaw.com

Vincent F Alexander on behalf of Debtor Elcom Hotel & Spa, LLC
vfa@kttlaw.com, lf@kttlaw.com

Richard H Malchon on behalf of Other Professional BMC-The Benchmark Management
Company
richard.malchon@arlaw.com, katie.takas@arlaw.com

Raquel A Rodriguez on behalf of Interested Party Jorge Perez
rrodriguez@mcdonaldhopkins.com, ccorzo@mcdonaldhopkins.com

Christopher A Jarvinen on behalf of Creditor 10295 Collins Avenue, Hotel Condominium
Association, Inc.
cjarvinen@bergersingerman.com, efile@bergersingerman.com;dparry@bergersingerman.com

Harris J. Koroglu on behalf of Creditor ValleyCrest Landscape Maintenance, Inc.
hkoroglu@shutts.com, jgoodwin@shutts.com

Paul Steven Singerman on behalf of Creditor 10295 Collins Avenue, Hotel Condominium
Association, Inc.

singerman@bergersingerman.com, mdiaz@bergersingerman.com;efile@bergersingerman.com

William G Salim Jr on behalf of Interested Party Mark Pordes
wsalim@mmsslaw.com, cleibovitz@mmsslaw.com

Steven D Schneiderman on behalf of U.S. Trustee Office of the US Trustee
Steven.D.Schneiderman@usdoj.gov

Adam I Skolnik on behalf of Creditor HSA Investments I, LLC
askolnik@skolniklawpa.com, fskolnik@skolniklawpa.com

Albert J Vitto on behalf of Yun Maintenance Services, Inc.
vitto@slpalaw.com

Barry E Mukamal
bankruptcy@marcumllp.com, FL64@ecfcbis.com

**Served via U.S. Mail to:**

OBH Funding, LLC
3000 John Deere Road
Toano, VA 23168

Illy Caffe North America
800 Westchester Avenue
Suite S440
Rye Brook, NY 10573

Mitchell R. Bloomberg, Esq.
Hinshaw & Culbertson, LLP
2525 Ponce de Leon, Suite 400
Coral Gables, FL 33134

F9 Investments, LLC f/k/a ANO, LLC
c/o Eric Ostroff, Esq.
Meland Russin & Budwick, P.A.
200 South Biscayne Blvd., Suite 3000
Miami, FL 33131

Florida Dept. of Revenue
P.O. Box 6668
Tallahassee, FL 32314

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Thomas D. Sullivan
3000 John Deere Road
Toano, VA 23168

U.S. Securities and Exchange Commission
Office of Reorganization
3475 Lenox Road NE, Suite 1000
Atlanta, GA 30326-1382

Steven C. Cronig, Esq.
Hinshaw & Culbertson, LLP
2525 Ponce de Leon, Suite 400
Coral Gables, FL 33134

Esperanza Segarra, Esq.
Hinshaw & Culbertson, LLP
2525 Ponce de Leon, Suite 400
Coral Gables, FL 33134

Paul W. Linehan, Esq.
McDonalds Hopkins LLC
600 Superior Aveue, East, Suite 2100
Cleveland, OH 44114

343734.1

# EXHIBIT "A"



**PREMIUM FINANCE AGREEMENT**

**Florida**

P.O. Box 8800 - 3522 Thomasville Rd.
Tallahassee, FL 32314
Phone 850-907-5610

***C815525***

☐ PERSONAL   ☒ COMMERCIAL   ☒ NEW   ☐ AGENCY RENEWAL   ☐ ADD'L PREMIUM

THIS AGREEMENT, made effective the _____ **20** _____ day of _____ **March 2013** _____, between

**ELCOM HOTEL & SPA LLC**
(Name of Borrower/Insured exactly as it appears in financed policies)

ADDRESS  **10295 COLLINS AVE DBA ONE BAL HARBOUR RESORT & SPA & ELCOM CONDO LLC**

CITY **BAL HARBOUR**          STATE  **FL**   ZIP **33154**          PHONE # _____

hereinafter called the Borrower, and Premium Assignment Corporation , a Florida Corporation hereinafter called Lender, for the purpose of financing the purchase of insurance policies described in the Scheduled Policies of Insurance listed in page 3 to this Agreement.

| TOTAL PRICE OF PREMIUMS | - CASH DOWN PAYMENT | = PRINCIPAL BALANCE OWED ON PREMIUMS | + DOC STAMPS & SERVICE FEE (if applicable) | = TOTAL AMOUNT FINANCED | + FINANCE CHARGE (Amount credit costs over term of loan) | = TOTAL OF PAYMENTS (Amount paid if all payments made as scheduled) | ANNUAL INTEREST RATE |
|---|---|---|---|---|---|---|---|
| 132,355.00 | 33,088.75 | 99,266.25 | 347.55 | 99,613.80 | 1,600.65 | 101,214.45 | 3.84 |

| SELECT BILLING OPTION: ☐ Payment Book ☒ Monthly Invoice ☐ Direct Debit **YOUR PAYMENT SCHEDULE WILL BE:** Each monthly payment due on same day of each succeeding month until paid in full. | Amount of Monthly Payment | Number of Payments | Date First Payment is Due |
|---|---|---|---|
| | 11,246.05 | 9 | 4/20/2013 |

FOR VALUE RECEIVED, BORROWER PROMISES TO PAY to the order of Lender at the address given at the top of this page, the Total Amount Financed and all sums shown above, including interest at the Annual Interest Rate and other charges as described hereinafter, pursuant to the terms stated below and in page 2 of this Agreement.

1. **SECURITY FOR PAYMENT:** To secure payment of all sums due under this Agreement, Borrower grants Lender a security interest in any unearned premiums or other sums which may become payable under the Scheduled Policies of Insurance shown on page 3.

2. **LIMITED POWER OF ATTORNEY:** BORROWER IRREVOCABLY APPOINTS LENDER AS ATTORNEY-IN-FACT TO CANCEL THE SCHEDULED POLICIES OF INSURANCE AFTER BORROWER DEFAULTS IN MAKING PAYMENTS UNDER THIS AGREEMENT.

3. **NOTICE TO BORROWER:** (1) Do not sign this Agreement before you read it, or if it contains any blank space, (2) You are entitled to a completely filled in copy of this Agreement, (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge, and (4) BY SIGNING BELOW BORROWER AGREES TO THE PROVISIONS ABOVE AND ALL OF THE TERMS WHICH APPEAR ON THE SECOND PAGE OF THIS AGREEMENT AND ACKNOWLEDGES RECEIPT OF COPIES OF PAGES 1, 2 AND 3 OF THIS AGREEMENT and (5) The undersigned Agency will receive from Lender approximately 0.48% of the total amount financed for aiding in the preparation of this Agreement and payment of the financed premiums.

SIGNATURE OF ALL INSURED[S] NAMED IN POLICIES OR AUTHORIZED AGENT OF INSURED[S], AS PERMITTED BY LAW:

X

Date _____ Name and Title: _____        Date _____ Name and Title: _____

**PRODUCER'S REPRESENTATIONS & WARRANTIES:**

The undersigned Producer represents and warrants that:        (A) The Cash Down Payment shown above has been paid by or on behalf of the Borrower. (B) The Total Price of Premiums shown above has been or will be used to purchase insurance policies shown in the Scheduled Policies of Insurance on page 3 of this Agreement. Any portion of the Total Price of Premiums received by Producer that is not used to purchase such insurance policies, as well as any refunds or credits on such policies, shall be promptly paid to Lender. (C) To the best of the undersigned's knowledge and belief, Borrower is not subject to any bankruptcy or insolvency proceedings and Producer has no reason to believe that Borrower is insolvent. (D) The Borrower's signature(s) is (are) genuine and authorized, or to the extent permitted by applicable law, the Producer has been authorized by Borrower to sign this Agreement on Borrower's behalf. (E) Producer has delivered or will deliver a copy of this Agreement to Borrower.  **Producer agrees that the Representations & Warranties above, as well as those on page 3 of this Agreement, are a binding contract between Producer and Lender.**

**PRODUCER / AGENCY**

Name  **WFIS USA INC/COCONUT GROVE**

Address  **2601 S BAYSHORE DR STE 1600**
**COCONUT GROVE, FL 33133**          Date _____ **PRODUCER'S SIGNATURE** _____



IN CONSIDERATION of the payment by Lender of the Principal Balance Owed on Premiums shown on page 1 to the insurance companies named in the Scheduled Policies of Insurance shown on page 3 (or the agents of such companies), the Borrower agrees:

**4. ACCEPTANCE DATE** This Agreement is binding upon its acceptance by Lender. Acceptance shall occur upon payment of the Principal Balance Owed on Premiums to the insurance companies named in the Scheduled Policies of Insurance, or the agents of such companies.

**5. PAYMENTS** Borrower shall make payments directly to Lender in the amounts and at the same time specified on page 1 of this Agreement. Payments shall be made at Lender's address given at the top of page 1 or such other address as Lender may direct in writing. Payments made to any other address, person, firm, corporation or insurance agency (including but not limited to the Producer) shall not constitute payment to Lender. Payments received after cancellation of the Scheduled Policies of Insurance shall be credited to the unpaid balance due under this Agreement and shall not constitute reinstatement of the cancelled policies, nor shall it constitute a waiver by Lender of any rights.

**6. LATE CHARGES** If a payment is more than 5 days late, Borrower agrees to pay a late charge not to exceed the greater of $10.00 or 5% of each delinquent or unpaid installment, unless prohibited by applicable law.

**7. DEFAULT/CANCELLATION** A default shall occur if Borrower fails to pay any sums required by this Agreement in a timely manner or if Borrower transfers a Scheduled Policy of Insurance. After default, any unpaid balance of the Total Amount Financed shall become immediately due and payable in full and Lender may enforce its security interest and its rights under the Limited Power of Attorney. Interest will continue to accrue on the unpaid balance at the Annual Percentage Rate or maximum rate allowed by applicable law, at the option of Lender, until all balances owed under this Agreement are paid. Lender may request cancellation of all or any of the Scheduled Policies of Insurance at the earliest time after default permitted by applicable law. Should Lender cancel the Scheduled Policies of Insurance, Borrower agrees to pay Lender a cancellation fee of $0 as permitted by applicable law.

**8. EXCESS INTEREST OR FEES** It is the intent of the Lender that no interest, fee or charge in excess of that permitted by applicable law will be charged, taken or become payable under this Agreement. In the event it is determined that Lender has taken, charged or accrued interest, fees or charges in excess of that permitted under law, such excess shall be returned to Borrower or credited against the sum due Lender hereunder.

**9. REFUNDS** The Borrower will receive a refund of the finance charge if the account is prepaid in full prior to the last installment due date. The refund shall be computed according to applicable law subject to a nonrefundable service charge of $20.

**10. SHORTAGE OR OVERAGE OF RETURNED PREMIUM** If Lender does not receive unearned premiums or other funds after cancellation or expiration of the Scheduled Policies of Insurance in an amount sufficient to pay the unpaid balance due under this Agreement, Borrower agrees to pay the deficiency to Lender on demand. Interest shall accrue on the deficiency at the Annual Percentage Rate, or the maximum rate allowed by applicable law, at the option of Lender. If the unearned premiums received by Lender are more than the amount due under this Agreement, the excess shall be returned to Borrower within the time allowed by applicable law. If Borrower's refund is less than $1.00 no refund need be made.

**11. ATTORNEYS FEES/COURT COSTS** Borrower agrees to pay all attorneys fees, expenses and costs incurred by Lender in collecting amounts due from Borrower under this Agreement, which shall not exceed 20% of the amount due if the agreement is referred to an attorney not a salaried employee of Lender, including attorneys fees incurred on appeal and in bankruptcy.

**12. LENDER RELATIONSHIP** Borrower acknowledges that: (a) Lender is not an insurance agent nor an insurance company, (b) This Agreement is a financing agreement and not an insurance policy or guarantee of insurance coverage, (c) Lender has played no part in the selection or structuring of the financed insurance policies, (d) Lender has no obligation to request reinstatement of any insurance policies properly cancelled after a default under this Agreement, and (e) The decision of whether to reinstate insurance coverage is made solely by the insurance companies providing coverage, not Lender.

**13. ADDITIONAL PREMIUMS** Lender may advance to Producer, as Borrower's agent, or to an insurance company any additional premiums that may become due under the Schedule Policies of Insurance, after borrower's payment of the down payment, by adding the advanced amount, plus any finance charge, to Borrower's balance under this Agreement. However, any additional premium which is owed to the insurance company(ies) named in the Scheduled Policies of Insurance as a result of any misclassification of risk which is not paid in full or financed in this Agreement may result in cancellation of the coverage by the insurance company for nonpayment of premium. Lender's payment shall not be applied by the insurer to pay for any additional premium owed by Borrower as a result of any misclassification of risk.

**14. LENDER LIABILITY** Lender is not responsible for any damages resulting from cancellation of the Scheduled Policies of Insurance by Lender, as long as the cancellation was done in accordance with applicable law. Borrower shall be responsible for Lender's reasonable attorneys fees and expenses for any unsuccessful action filed by Borrower seeking damages for improper cancellation. Lender's liability for breach of this Agreement shall be limited to the Principal Balance Financed under this Agreement, if permitted by applicable law.

**15. RETURNED CHECKS** Borrower agrees to pay a returned check fee of $15, as allowed by applicable law, for each of Borrower's checks returned to Lender for Insufficient funds or because the insured has no account in the payor bank.

**16. WARRANTIES OF BORROWER** Borrower warrants that: (a) Each of the Scheduled Policies of Insurance have been issued or a binder has been issued; (b) Borrower has not and will not assign or encumber any unearned premium of the Scheduled Policies of Insurance or grant a power of attorney to cancel the Scheduled Policies of Insurance to anyone other than Lender until all sums due under this Agreement are paid in full; (c) Lender may assign all its rights under this Agreement as allowed by applicable law; (d) No proceeding in bankruptcy or insolvency has been instituted by or against Borrower or is contemplated by Borrower, and (e) No insurance financed by this Agreement was purchased for personal, family or household purposes, unless so indicated on page 1.

**17. INTEREST CALCULATION** Interest is computed on an annual basis of 12 months of 30 days on the balance of the Total Amount Financed, from the effective date of the earliest insurance policy for which premiums are being advanced to the date when all sums due under this Agreement are paid.

**18. BLANK SPACES** Borrower agrees that if any policy financed by this Agreement has not been issued at the time the Agreement is signed, the names of the insurance companies issuing the financed policies, the policy numbers and the due date of the first installment may be inserted in the Agreement after it is signed.

**19. GOVERNING LAW** The Parties agree that the law of the state in which this Agreement is executed shall control the interpretation of the Agreement and the rights of the parties, unless the Agreement is executed in a state without premium finance laws, in which case the law of the State of Florida shall govern.

**20. SAVINGS AND MERGER CLAUSE** The Parties agree that if one or more portions of this Agreement are found to be invalid or unenforceable for any reason, the remaining portions shall remain fully enforceable. The parties also agree that this Agreement contains the entire agreement between the parties regarding the subject matter herein and supersedes any prior discussions.

**21. FINANCING OPTION** Entry into this financing arrangement is not a condition of obtaining insurance. You may opt to pay the premium for such insurance without financing such premium, or to obtain financing from some other source if you choose.



State: FL

# SCHEDULED POLICIES OF INSURANCE

V8(0)G480GI1.79

ELCOM HOTEL & SPA LLC
10295 COLLINS AVE
DBA ONE BAL HARBOUR RESORT & SPA &
BAL HARBOUR, FL  33154          ***C815525***

WFIS USA INC/COCONUT GROVE          08917
2601 S BAYSHORE DR STE 1600
COCONUT GROVE, FL  33133
(305) 443-4886

| Premium | Down Payment | Unpaid Balance | Doc Stamps/Fees | Amt. Financed | Finance Charges | Total / Payments |
|---|---|---|---|---|---|---|
| 132,355.00 | 33,088.75 (25.00 %) | 99,266.25 | 347.55 | 99,613.80 | 1,600.65 | 101,214.45 |

| Payment | Payments | Rate | First Due | Type | Status | Contract Type |
|---|---|---|---|---|---|---|
| 11,246.05 | 9 | 3.84 % | 4/20/2013 | INVOICE | NEW | COMMERCIAL |

| EFF DATE EXP DATE | COMPANY / BROKER | CITY | ST | CO. # | TYPE MEP | POLICY NO. | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|
| 4/1/2013 CO: 4/1/2014 MGA: | PRAETORIAN INS CO | NEW YORK | NY | 87243 | PKG 0.00 % | | 116,869.00 |
| 3/20/2013 CO: 3/20/2014 MGA: | NATIONAL UNION FIRE INS | PITTSBURGH | PA | 86140 | UMBR 0.00 % | | 15,486.00 |

Created By:  ufmd130                                    Auth Code:

## ADDITIONAL REPRESENTATIONS & WARRANTIES OF PRODUCER

(F)  All information provided above is complete and correct in all respects and the policies listed above are or will be in force on the stated Effective Date and delivered by Producer to the Borrower, except for assigned risk or residual market policies.

(G)  If any information listed above is or becomes incomplete or inaccurate, Producer shall promptly provide correct information to Lender.

(H)  The Producer is an authorized policy issuing agent of the companies issuing the policies listed above or is the authorized agent of the MGA or broker placing the coverage directly with the insuring company,      **except those policies indicated with an "X".**

(I)  None of the policies listed above are subject to reporting or retrospective rating provisions.  All policies subject to audit, minimum or fully earned premium provisions are indicated below:

Policy No and Prefix No:

(J)  Except as indicated above, all Scheduled Policies of Insurance can be cancelled by Borrower or Lender on 10 days notice and the unearned premiums will be computed pro rata or on the standard short rate table.

(K)  If any Scheduled Policies of Insurance are subject to audit, Producer and Borrower have made good faith determination that the deposit, provisional or initial premiums are not less than the anticipated premiums to be earned for the full term of the policy(ies).

(L)  Upon cancellation of any of the Scheduled Policies of Insurance, Producer shall remit to Lender the full amount of the unearned premium, including unearned commission, as well as any other payments or credits received by Producer, up to the unpaid balance due under this Agreement, within 15 days of receipt from the insuring company.

**DOCUMENTARY STAMPS REQUIRED BY LAW IF ANY ARE AFFIXED TO MONTHLY JOURNAL AND CANCELLED.**

Page 3  of  3

# EXHIBIT "B"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                    Chapter 11

ELCOM HOTEL & SPA, LLC and                Case No.  13-10029-BKC-RAM
ELCOM CONDOMINIUM, LLC,                   Case No.  13-10031-BKC-RAM

     Debtors.                                    (Jointly Administered)
_____/

**ORDER GRANTING ELCOM HOTEL & SPA, LLC'S EMERGENCY MOTION**
**FOR ENTRY OF AN ORDER AUTHORIZING THE ENTRY INTO**
**POST-PETITION INSURANCE PREMIUM FINANCING AGREEMENT**

**THIS MATTER** came before the Court for hearing on _____ 2013, at _____

a.m./p.m. upon the *Emergency Motion for Entry of an Order Authorizing the Entry into a Post-*

*Petition Insurance Premium Financing Agreement* (the "**Motion**")[1] [ECF No. ____]                with

Premium Assignment Corporation ("**PAC**") filed by Debtor Elcom Hotel & Spa, LLC ("**Elcom**

**Hotel**").   The Court, having reviewed the Motion, heard argument of counsel, noted that no

objections were made to the Motion, and being otherwise duly advised in the premises, finds that

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.
4233.101/344616                                         1

(i) this Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the Court has the authority to grant the relief requested in the Motion; (v) the relief requested in the Motion is necessary and is in the best interests of Elcom Hotel, its estate, and its creditors; (vii) proper and adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary; and (vii) finding good cause to grant the relief requested in the Motion, it is

   **ORDERED AND ADJUDGED** that:

   1.      The Motion is **GRANTED**.

   2.      Elcom Hotel is hereby authorized and directed to: (a) enter into the Agreement, which is made a part hereof by reference; (b) grant PAC or its successor or assigns a first priority lien on and security interest in unearned premiums as described in the Agreement; and (c) pay PAC or its successor or assigns all sums when due under the Agreement.

   3.      Without limitation, the liens, security interests and rights in unearned premiums granted under the Agreement are senior to the lien of any DIP Lender in this Case and are senior to any claims under 11 U.S.C. §§ 503, 506(b) or 507(b).

   4.      If additional premiums become due to insurance companies under the policies financed under the Agreement, Elcom Hotel and PAC or its successor or assigns are authorized to modify the Agreement as necessary to pay the additional premiums without the necessity of further hearing or order of this Court.

   5.      In the event PAC or its assigns fail to receive any payment due under the Agreement within fifteen (15) days of the due date, the automatic stay provided by 11 U.S.C. § 362 shall thereupon be terminated without the necessity of a motion, further hearing or order of

this Court to permit PAC or its successor or assigns to exercise its rights and remedies under the Agreement, including without limitation the rights to: (a) cancel the financed insurance policy(ies); and (b) collect and apply unearned premiums payable under the financed policy(ies) to the balance owed under the Agreement.

6.    If the collection and application of unearned premiums is insufficient to pay the balance owed under the Agreement, PAC or its successor or assigns may within 21 days after the collection and application of such unearned premiums file a proof of claim for the unsatisfied amount of any indebtedness under the Agreement notwithstanding the passage of any bar date for the filing of proofs of claim.

7.    The rights of PAC or its successor or assigns under the Agreement are fully preserved and protected and shall remain unimpaired by this Bankruptcy proceeding, and shall remain in full force and effect, notwithstanding the subsequent conversion of this proceeding to one under Chapter 7 or any other provision of the United States Bankruptcy Code.

8.    In order to enable Elcom Hotel to have immediate insurance coverage, the 14 day stay of this order pursuant to Bankruptcy Rule 6004(h) shall not apply, and the relief herein granted is effective immediately upon entry.

9.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

# # #

**Submitted by:**

Corali Lopez-Castro, Esq.
Florida Bar No. 863830
**KOZYAK TROPIN & THROCKMORTON, P.A.**
2525 Ponce de Leon Blvd., 9th Floor
Miami, Florida 33134
Tel: (305) 372-1800

4233.101/344616                                          3

Fax: (305) 372-3508
E-mail: clc@kttlaw.com

*Counsel for the Debtors*

**Copies to:**

Corali Lopez-Castro, Esq.
*(Attorney Lopez-Castro shall upon receipt serve a copy of this Order upon all interested parties and file a certificate of service)*