**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

ELCOM HOTEL & SPA, LLC and
ELCOM CONDOMINIUM, LLC,

      Debtors.

_____/

Chapter 11

Case No. 13-10029-BKC-RAM
Case No. 13-10031-BKC-RAM

(Jointly Administered)

**DEBTORS' MOTION FOR ORDER (I) AUTHORIZING DEBTORS TO OBTAIN**
**POSTPETITION FINANCING PURSUANT TO §§ 11 U.S.C. 363 AND 364 AND (II)**
**GRANTING SUPERPRIORITY CLAIMS TO LENDER PURSUANT TO 11 U.S.C. § 364**

      Elcom Hotel & Spa, LLC ("**Elcom Hotel**") and Elcom Condominium, LLC ("**Elcom**
**Condo**"), as debtors and debtors in possession (collectively, the "**Debtors**"), by and through
undersigned counsel, respectfully move this Court for entry of an order (the "**DIP Order**")
granting, pursuant to sections 105, 363(b), and 364(c) of title 11 of the United States Code, 11
U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), Rule 4001 of the Federal Rules of Bankruptcy
Procedure (the "**Bankruptcy Rules**"), and Rules 4001-3 and 9013-1(H) of the Local Rules of the
Bankruptcy Court for the Southern District of Florida (the "**Local Rules**"), authorization to
obtain a postpetition loan (the "**DIP Loan**") from OBH Funding, LLC ("**OBH**"), as a
superpriority administrative expense claim, in an amount up to $1,000,000.00, and respectfully
represent as follows:

## I.   Jurisdiction

      1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157
and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this
Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for this Motion are sections 105(a), 363(b), 364(c), 1107(a), and 1108 of the Bankruptcy Code, Rule 4001 of the Bankruptcy Rules, and Rules 4001-3 and 9013-1(H) of the Local Rules.

## II.  **Background**

3.      On January 2, 2013 (the "**Petition Date**"), the Debtors each commenced a voluntary case under Chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Debtors are owners of a spa, restaurant, hotel units, and common areas (the "**Property**") located at what is known as ONE Bal Harbour, which is operated as a five-star resort.

5.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties-in-interest to the *First Day Declaration of Thomas D. Sullivan* (the "**Sullivan Declaration**") [ECF No. 6].

## III. **Prepetition and Postpetition Funding of the Debtors' Operations**

6.      Aside from revenues received from the Debtors' operations of its businesses, the funding for the Debtors' prepetition operations came from OBH Funding, LLC ("**OBH**"). OBH's last prepetition infusion was through receiver's certificates in the aggregate amount of $1,832,486.14 related to Case No. 10-13859 CA 11, *10295 Collins Avenue, Residential Condo. Ass'n, Inc. v. Elcom Hotel & Spa, LLC, et al.* (the "**State Court Proceeding**"), currently pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. OBH is an entity owned and controlled by Sullivan.

7.     During the pendency of these Chapter 11 cases, the Debtors have funded postpetition operations through revenues from the Property, a capital contribution from F9 Properties, LLC ("**F9**") in the amount of $676,190.87, as evidenced by the Notice of Funding [ECF No. 90], and debtor-in-possession financing from OBH in the amount of $1,200,000.00 approved by the Court on June 5, 2013 [ECF No. 230].

### IV. Proposed Financing

8.     The Debtors propose to obtain additional debtor-in-possession financing from OBH on the terms set forth in the loan agreement between the Debtors and OBH (the "**DIP Loan Agreement**"), a copy of which is attached hereto as Exhibit "A". The terms of the DIP Loan Agreement are substantially similar to the previous debtor-in-possession loan agreement between the Debtors and OBH, which was previously approved by this Court.

9.     The significant aspects of the Dip Loan Agreement are as follows[1]:

    a.     OBH will provide the Debtors with up to $1,000,000.00 in unsecured financing to be used in accordance with budgets approved by OBH. The budgets will not be filed with the Court, but will be available for inspection by the Associations upon request.

    b.     The outstanding balance of the DIP Loan will incur interest at 9% per annum.

    c.     OBH will be entitled to a superpriority administrative expense claim for the outstanding balance of the DIP Loan, including all other amounts OBH is entitled to pursuant to the DIP Loan Agreement.

    d.     The DIP Loan will be repaid upon the earlier of an event of default, as defined in the DIP Loan Agreement, or upon the sale of any of the Debtors' assets in connection with or prior to the confirmation of a Chapter 11 plan of reorganization, or upon the confirmation of a Chapter 11 plan of reorganization if the plan does not provide for a sale of any of the Debtors' assets.

---

[1] The Debtors respectfully refer the Court and interested parties to the DIP Loan Agreement for the complete terms of the DIP Loan Agreement

## V. <u>The Proposed Use of DIP Loan</u>

10.      The Debtors' ability to fund operations, pay employees, provide services to guests, and satisfy other critical operating expenses are essential to the Debtors' ability to continue to operate in these Chapter 11 cases.  Since the Petition Date, the Debtors have been able to operate primarily from revenues generated from the Property; however, the Debtors are exiting the slow summer season for operations at the Property where the Debtors operated at a loss.  The Debtors need the DIP Loan to fund the operational deficits and other administrative expenses incurred during these Chapter 11 cases.

11.      Without the DIP Loan, the Debtors' operations may be permanently damaged, and the Debtors may lose significant value as a going concern.  The DIP Loan provided by OBH is intended to preserve and enhance the Debtors' value by funding the operations of the Debtors, which will allow the Debtors to proceed with a sale of substantially all of their assets through a Chapter 11 plan.  The Debtors are hopeful that the DIP Loan will provide the Debtors with sufficient funds to satisfy the Debtors' obligations through confirmation of a plan of reorganization.

## VI. <u>Relief Requested and Basis Therefor</u>

12.      By this Motion, the Debtors request authorization to obtain the DIP Loan from OBH pursuant to the terms set forth in this Motion, as more particularly described in the DIP Loan Agreement.

13.      Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Moreover, section 105(a) of the Bankruptcy Code allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a). A debtor's decision to use assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See e.g.*, *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (*citing In re Schipper*, 933 F.3d 513, 515 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.3d 141, 143 (2d Cir. 1992) (holding that a court determining a section 363(b) application must find from the evidence presented before it a good business reason to grant such application).

14.     The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

15.     The DIP Loan will be repaid upon the earlier of an event of default, as defined in the DIP Loan Agreement, or upon the sale of any of the Debtors' assets in connection with or prior to the confirmation of a Chapter 11 plan of reorganization, or upon confirmation of a Chapter 11 plan of reorganization if the plan does not call for a sale of any of the Debtors' assets.

### VII.    The Proposed DIP Loan Should be Approved

16.     Approval of the DIP Loan will provide the Debtors with immediate and ongoing access to borrowing availability to pay its expenses during the administration of these Chapter 11 cases. Assuming that the market is receptive, the Debtors intend to propose a Chapter 11 plan

that incorporates of sale of significantly all of the Debtors' assets.  The Debtors are hopeful that the proposed DIP Loan, along with future revenues from the Property, should satisfy the Debtors' capital needs until confirmation.

17.    Absent the DIP Loan, the Debtors' necessary expenditures will not be able to be made, and the Debtors could be forced to cease operations as the result of operational deficits. The absence of funding through the DIP Loan could result in irreparable damage to Debtors' business and substantial deterioration of the value of their going concern value to the ultimate detriment of their estates, employees, creditors, interest holders, and other interested parties. Ultimately, any sales prospects would be hindered if the Debtors were unable to sustain operations at the required five-star hotel status required under the governing documents for the Property.

18.    The Debtors propose to obtain the proposed debtor-in-possession financing pursuant to section 364(c)(1) of the Bankruptcy Code.  OBH is willing to provide debtor-in-possession financing to the Debtors in exchange for a superpriority administrative claim. Notably, the proposed financing does not affect the rights or the collateral position of the Debtors' existing prepetition lenders, including OBH's issuance of receiver certificates.

19.    Section 364 of the Bankruptcy Code provides, among other things, that if the debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to obtain credit with priority over all administrative expenses of the Debtor.  11 U.S.C. § 364(c)(1).

20.    The Debtors' working capital needs can only be satisfied if the Debtors are authorized to borrow up to $1,000,000.00 from OBH, and to use such proceeds to fund current and future operations and administrative expenses.

21.    Despite diligent efforts, the Debtors submit that they are unable to obtain the funds to be provided under the DIP Loan on more favorable terms than those contained in the DIP Loan Agreement.  Based on the Debtors' previous diligent efforts, the Debtors could not (i) obtain the required funds in the ordinary course of business on an unsecured basis allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, or (ii) obtain the required funds in the non-ordinary course as an administrative expense allowable under section 503(b)(1) of the Bankruptcy Code.  *See* 11 U.S.C. § 364(a), (b).

22.    The Debtors also believe that the terms offered by OBH are significantly more favorable than any terms that have been offered, or would be offered, by other lenders.  The Debtors submit that the circumstances of this case require the Debtors to obtain financing under section 364(c) of the Bankruptcy Code, and accordingly, the DIP Loan reflects the exercise of the Debtors' sound business judgment and is in the best interests of the Debtors and their respective estates.

23.    The Debtors expect the DIP loan to be repaid from the Debtors' partial or complete sale of the Property through a Chapter 11 plan or other sale, assuming sufficient funds exist from such sale.

24.    The Debtors negotiated with OBH in good faith and pursuant to its sound business judgment.  The terms and conditions of the DIP Loan and DIP Loan Agreement are fair and reasonable under the circumstances.  Accordingly, OBH and all obligations incurred under the DIP Loan should be afforded the benefits of section 364(e) of the Bankruptcy Code.

## VIII.    Conclusion

25.    The Debtors submit that the relief requested in this Motion is appropriate, is an exercise of the Debtors' sound business judgment, is in the best interests of the estates, and should be granted as requested herein.

**WHEREFORE**, the Debtors respectfully request entry of an interim order, substantially in the form of the proposed interim order attached hereto as Exhibit "B", (a) authorizing the Debtors' entry into the DIP Loan Agreement; and (b) granting such other relief as is just and appropriate.

Dated:  September 24, 2013                          Respectfully submitted,

                                         **KOZYAK TROPIN & THROCKMORTON, P.A.**
                                         *Counsel for the Debtors*
                                         2525 Ponce de Leon Blvd., 9th Floor
                                         Miami, Florida 33134
                                         Tel.:    (305) 372-1800
                                         Fax:    (305) 372-3508
                                         E-mail:cwt@kttlaw.com
                                                            clc@kttlaw.com
                                                            vfa@kttlaw.com

                                         By: /s/ Corali Lopez-Castro
                                                            Charles W. Throckmorton
                                                            Florida Bar No. 286192
                                                            Corali Lopez-Castro
                                                            Florida Bar No. 863830
                                                            Vincent F. Alexander
                                                            Florida Bar No. 68114

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on September 24, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day (i) via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel of record or pro se parties who are authorized to receive electronically Notices of Electronic Filing in this bankruptcy case; and (ii) prepaid, first class U.S. mail upon all parties on the attached Master Service List.

By: <u>/s/ Corali Lopez-Castro</u>
Corali Lopez-Castro

**ELCOM HOTEL & SPA, LLC and**
**ELCOM CONDOMINIUM, LLC**
**Case Nos. 13-10029-RAM & 13-10031-RAM**

## MASTER SERVICE LIST

**Served via electronic mail (ECF) to:**

Paul J. Battista, Esq on behalf of Interested Party Jorge J. Perez, as Receiver Only and not in his Individual Capacity pbattista@gjb-law.com, gjbecf@gjb-law.com

Paul J. Battista, Esq on behalf of Interested Party McDonald Hopkins, LLC pbattista@gjb-law.com, gjbecf@gjb-law.com

Francis L. Carter, Esq. on behalf of Mediator Francis L. Carter flc@katzbarron.com, lcf@katzbarron.com

Ileana Espinosa Christianson, Esq. on behalf of Creditor Branch Banking & Trust Company ileana.christianson@gray-robinson.com, jceide@gray-robinson.com;lnegron@gray-robinson.com;ileana.christianson@gray-robinson.com

Ileana Espinosa Christianson, Esq. on behalf of Defendant Branch Banking and Trust Company, as Successor In Interest to Colonial Bank f/k/a Colonial Bank, N.A., a national banking association, by asset acquisition from the FDIC in its capacity as receiver fo ileana.christianson@gray-robinson.com, jceide@gray-robinson.com;lnegron@gray-robinson.com;ileana.christianson@gray-robinson.com

Joseph A. DeMaria on behalf of Defendant JYM, Ltd jad@tewlaw.com, ecs@tewlaw.com;mm@tewlaw.com;dturken@tewlaw.com

Joseph A. DeMaria on behalf of Defendant We Valet, LLC jad@tewlaw.com, ecs@tewlaw.com;mm@tewlaw.com;dturken@tewlaw.com

Joseph A. DeMaria on behalf of Defendant Jorge E Arevalo jad@tewlaw.com, ecs@tewlaw.com;mm@tewlaw.com;dturken@tewlaw.com

Brian S Dervishi on behalf of Defendant Ocean Bank bdervishi@wdpalaw.com, service@wdpalaw.com

Michael J. Eisler, Esq. on behalf of Defendant Bayview Loan Servicing, LLC meisler@strauseisler.com

John H Genovese, Esq on behalf of Creditor Berkowitz Pollack Brant jgenovese@gjb-law.com, hburke@gjb-law.com;gjbecf@gjb-law.com

Christopher A Jarvinen on behalf of Creditor 10295 Collins Avenue, Hotel Condominium Association, Inc. cjarvinen@bergersingerman.com, efile@bergersingerman.com

Harris J. Koroglu on behalf of Creditor ValleyCrest Landscape Maintenance, Inc.
hkoroglu@shutts.com, jgoodwin@shutts.com

Richard H Malchon, Jr on behalf of Other Professional BMC-The Benchmark Management
Company richard.malchon@arlaw.com, katie.takas@arlaw.com

Aleida Martinez Molina on behalf of Interested Party Village of Bal Harbour, Florida
amartinez@wsh-law.com, jfuentes@wsh-law.com

Nicole R Messamore on behalf of Creditor Freshpoint South Florida, Inc.
nmessamore@sblawfirmfl.com, general@sblawfirmfl.com

Barry E Mukamal
YPERLINK"mailto:bankruptcy@marcumllp.com"bankruptcy@marcumllp.com, FL64@ecfcbis.com

Timothy J Norris, Esq on behalf of Creditor Duane Morris LLP tjnorris@duanemorris.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Jeffrey J Pardo on behalf of Creditor 10295 Collins Avenue, Hotel Condominium Association, Inc.
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor 10295 Collins Investment Inc.
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor 133812 Canada, Inc.
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor 513 AMREI LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Bal Harbour 1017, LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor George J Schafer LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Indulgence at Bal Harbour, LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Josemar LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor K & K Realty Associates LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Ku Trading LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor TAS PROP LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Unit #1112 Regent Bal Harbour LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Unit #1113 Regent Bal Harbour LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Unit #714 Regent Bal Harbour, LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Westquality Inc.
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Arline Shenker jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Ashok Kumar jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Claire Daniels jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Denis Trupkin jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Edward Tam jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Francis Leo Doyle jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Gary Daniels jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Hassan Abbass jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Julia Abbass jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Kinda Farhat jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Lewis Shenker jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Lillian Glowinsky jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Linda Trupkin jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Michael Konig jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Michael C. Murr jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Naim Farhat jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Nicholaos Rokanas jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Noel A. D'Silva jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Norman Glowinsky jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Patricia Puglisi jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Penelope Laskaris jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Puglisi Joseph jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Tara Hart jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Vimal M. Fonseca jpardo@pardogainsburg.com

Raquel A Rodriguez on behalf of Interested Party Jorge J Perez rrodriguez@mcdonaldhopkins.com, ccorzo@mcdonaldhopkins.com

William G Salim Jr on behalf of Interested Party Mark Pordes wsalim@mmsslaw.com, cleibovitz@mmsslaw.com

Steven D Schneiderman on behalf of U.S. Trustee Office of the US Trustee Steven.D.Schneiderman@usdoj.gov

Paul Steven Singerman, Esq on behalf of Creditor 10295 Collins Avenue, Hotel Condominium Association, Inc.
singerman@bergersingerman.com, mdiaz@bergersingerman.com;efile@bergersingerman.com

Adam I Skolnik on behalf of Creditor HSA Investments I, LLC askolnik@skolniklawpa.com, fskolnik@skolniklawpa.com

Adam I Skolnik on behalf of Creditor HSA Investments II, LLC askolnik@skolniklawpa.com, fskolnik@skolniklawpa.com

Adam I Skolnik on behalf of Creditor HSA Investments III, LLC askolnik@skolniklawpa.com, fskolnik@skolniklawpa.com

Peter A Tappert, Esq. on behalf of Defendant Ocean Bank ptappert@wdpalaw.com, service@wdpalaw.com

Charles M Tatelbaum on behalf of Creditor 10295 Collins Avenue Residential Condominium Association, Inc.
ctatelbaum@hinshawlaw.com, csmith@hinshawlaw.com;carrese@hinshawlaw.com;gfarmer@hinshawlaw.com;lportuondo@hinshawlaw.com;esegarra@hinshawlaw.com;clucas@hinshawlaw.com

Charles M Tatelbaum on behalf of Plaintiff 10295 Collins Avenue Residential Condominium Association, Inc.
ctatelbaum@hinshawlaw.com, csmith@hinshawlaw.com;carrese@hinshawlaw.com;gfarmer@hinshawlaw.com;lportuondo@hinshawlaw.com;esegarra@hinshawlaw.com;clucas@hinshawlaw.com

Charles M Tatelbaum on behalf of Plaintiff 10295 Collins Avenue, Hotel Condominium Association, Inc.
ctatelbaum@hinshawlaw.com,
csmith@hinshawlaw.com;carrese@hinshawlaw.com;gfarmer@hinshawlaw.com;lportuondo@hinshawlaw.com;esegarra@hinshawlaw.com;clucas@hinshawlaw.com

Charles W Throckmorton, Esq on behalf of Debtor Elcom Condominium, LLC cwt@kttlaw.com,
lf@kttlaw.com;ycc@kttlaw.com

Charles W Throckmorton, Esq on behalf of Debtor Elcom Hotel & Spa, LLC cwt@kttlaw.com,
lf@kttlaw.com;ycc@kttlaw.com

Charles W Throckmorton, Esq on behalf of Interested Party Elcom Condominium, LLC
cwt@kttlaw.com, lf@kttlaw.com;ycc@kttlaw.com

David S Turken on behalf of Defendant JYM, Ltd dturken@tewlaw.com

David S Turken on behalf of Defendant We Valet, LLC dturken@tewlaw.com

David S Turken on behalf of Defendant Jorge E Arevalo dturken@tewlaw.com

Albert J Vitto, III on behalf of Creditor Yun Maintenance Services, Inc.
vitto@slpalaw.com

Jason Weaver on behalf of Creditor HSA Investments I, LLC jasonweaveresq@gmail.com,
akaplan@hagenlawfirm.com

Jason Weaver on behalf of Creditor HSA Investments II, LLC jasonweaveresq@gmail.com,
akaplan@hagenlawfirm.com

Jason Weaver on behalf of Creditor HSA Investments III, LLC jasonweaveresq@gmail.com,
akaplan@hagenlawfirm.com

Jason Weaver on behalf of Defendant HSA Investments I, LLC jasonweaveresq@gmail.com,
akaplan@hagenlawfirm.com

Jason Weaver on behalf of Defendant HSA Investments II, LLC jasonweaveresq@gmail.com,
akaplan@hagenlawfirm.com

Jason Weaver on behalf of Defendant HSA Investments III, LLC jasonweaveresq@gmail.com,
akaplan@hagenlawfirm.com

Doron Weiss on behalf of Plaintiff Elcom Hotel & Spa, LLC dweiss@barthet.com

Doron Weiss on behalf of Special Counsel Paul D. Breitner dweiss@barthet.com

**Served via U.S. Mail to:**

OBH Funding, LLC
3000 John Deere Road
Toano, VA 23168

Illy Caffe North America
800 Westchester Avenue
Suite S440
Rye Brook, NY 10573

F9 Investments, LLC f/k/a ANO, LLC
c/o Eric Ostroff, Esq.
Meland Russin & Budwick, P.A.
200 South Biscayne Blvd., Suite 3000
Miami, FL 33131

Florida Dept. of Revenue
P.O. Box 6668
Tallahassee, FL 32314

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Thomas D. Sullivan
3000 John Deere Road
Toano, VA 23168

U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA 30326-1382

Steven C. Cronig, Esq.
Mitchell R. Bloomberg, Esq.
Hinshaw & Culbertson, LLP
2525 Ponce de Leon, Suite 400
Coral Gables, FL 33134

Esperanza Segarra, Esq.
Hinshaw & Culbertson, LLP
2525 Ponce de Leon, Suite 400
Coral Gables, FL 33134

Paul W. Linehan, Esq.
McDonalds Hopkins LLC
600 Superior Aveue, East, Suite 2100
Cleveland, OH 44114

348249.1

# EXHIBIT "A"

# DIP LOAN AGREEMENT

**THIS DIP LOAN AGREEMENT** (the "**Agreement**") is made as of  this __ day of September, 2013, by and between OBH Funding, LLC, a Florida limited liability company (the "**Lender**"), and **ELCOM HOTEL & SPA, LLC**, a Florida limited liability company, and **ELCOM CONDOMINIUM, LLC**, a Florida limited liability company (collectively, "**Elcom**" or "**Borrower**"), as debtors and debtors-in-possession under Chapter 11 of the United States Bankruptcy Code (the "**Debtors**") in the bankruptcy cases assigned Case Nos. 13-10029-BKC-RAM and 13-10029-BKC-RAM, respectively, pending in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "**Court**") and jointly administered under the case styled: *In re Elcom Hotel & Spa, LLC and Elcom Condominium, LLC* (the "**Case**"), filed on January 2, 2013 (the "**Petition Date**").

**This Agreement and the Lender's obligations hereunder are subject in all respects to the entry of the Financing Order, as referenced in the Recitals below, without modification, unless such modification is requested or approved by the Lender.**

## RECITALS

A.      Debtors are Chapter 11 Debtors-in-Possession in the Case.

B.      The Lender is a Florida limited liability company authorized to transact business in Florida.

C.      On September 23, 2013, the Debtors filed a Motion for Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 363 and 364 and (II) Granting Superpriority Claims to Lender Pursuant to 11 U.S.C. § 364, with Preliminary Hearing Request to Authorize Immediate Interim Borrowing Pursuant to Bankruptcy Rule 4001(c) (the "**Motion**").

D.      Pursuant to the Motion, it is anticipated that, following the filing of the Motion, a Financing Order will be entered pursuant to a final hearing (the "**Final Hearing**") to be held not earlier than fourteen (14) days after the filing of the Motion.  The Motion and Financing Order are incorporated herein by this reference as though fully set forth herein.  All allegations and statements made in the Motion, and all findings of fact and conclusions of law contained in the Financing Order, are incorporated herein by this reference as though fully set forth herein.  All terms defined in the Motion and the Financing Order shall have identical meanings when used in this Agreement.

E.      The Lender has agreed to extend unsecured credit as a superpriority administrative expense claim in the Case to the Debtors for their expenses and working capital needs up to the principal amount of $1,000,000.00, to be used in accordance with budgets approved by the Lender, on the terms, covenants and conditions contained in this Agreement, in the Financing Order, and in the Promissory Note attached as Exhibit "A".

**NOW, THEREFORE**, in consideration of the above-referenced recitals which are incorporated into this Agreement by reference and the mutual covenants and agreements contained

herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.  **DIP Loan**.  The Lender agrees to advance up to $1,000,000.00 to the Debtors to fund operations and pay expenses incurred during the administration of the Case (the "**DIP Loan**"). The entire unpaid balance of the DIP Loan, including all accrued interest thereon, and all costs, including attorneys' fees, expenses, charges, disbursements, and fees due hereunder and thereunder, shall be due and payable in full upon the earlier to occur of: (i) an Event of Default; or (ii) the Maturity Date (as defined below).  The DIP Loan may be prepaid early without penalty.  Interest shall accrue on the outstanding principal balance of the DIP Loan at nine (9%) percent per annum. While in default, interest shall accrue at the maximum rate allowable under Florida law.  The Debtors shall execute and deliver to the Lender any and all documents required by the Lender from time to time to evidence the DIP Loan (collectively, together with this Agreement, hereinafter referred to as the "**Postpetition Agreements**"), consistent with the Financing Order and this Agreement.

2.  **Superpriority Administrative Expense Claim**.  The Debtors hereby grant to the Lender a superpriority administrative expense claim ("**Claim**") to secure the indebtedness and obligations identified in the Financing Order, all as provided in the Financing Order, and hereby agree to be bound by all the terms, conditions, stipulations and agreements contained in the Motion and the Financing Order. The Claim shall not be subject to any defenses, reductions, or setoffs asserted by the Debtors or any other parties in the Case, including a trustee or creditors' committee that may be appointed in the future, whether directly or derivatively,  including without limitation, any such defenses, reductions, or setoffs associated in any way with claims against Thomas Sullivan, OBH, or their affiliates

3.  **Maturity**.    The indebtedness due hereunder shall mature on the Maturity Date, defined as the earlier of (i) an Event of Default; or (ii) upon confirmation of a Chapter 11 plan of reorganization even if the plan does not call for a sale of any of the Debtors' assets (the "**Maturity Date**").  In the event that the Debtors sell any of their assets during their Chapter 11 cases, the Lender may file a motion with the Court seeking authorization to obtain repayment from the Debtors for a portion of the, or the entire, remaining balance due under the DIP Loan; provided, however, that the Court may grant the motion upon a showing by the Lender that the Debtors' ability, after making such repayment, to operate as a financially-viable, going-concern shall not be materially and negatively impacted; provided further, however, that with respect to each individual sale of assets, the Lender may seek authorization to be repaid up to an amount not greater than the net amount of the proceeds received by the Debtors' estates from the sale of such assets.

4.  **Termination.**  The DIP Loan evidenced by this Agreement and the Financing Order shall terminate upon the Maturity Date or such earlier time as the Lender seeks to enforce remedies due to an Event of Default.

5.  **Reporting**.  The Debtors shall timely deliver to the Lender all such monthly financial reports, financial statements, and other documents as required to be delivered by Debtors to the Lender.

6.      **Events of Default**.  Each of the following shall be an Event of Default under the Financing Order or this Agreement or any other Postpetition Agreements:

      a.   The Debtors' breach of, or failure to perform under the terms of, the Financing Order, this Agreement, or any other agreements with the Lender;

      b.   The Financing Order in form and substance satisfactory to the Lender is not entered on or before October 30, 2013;

      c.   An order is entered in the Case that stays, modifies, reverses, or vacates the Financing Order without the Lender's written consent; or

      d.   The appointment of a trustee in the Case, the conversion of the Case to a case under Chapter 7 of the Code, or the dismissal of the Case.

Upon the occurrence of an Event of Default, and without the necessity of having to obtain any prior approval of the Court: (a) the DIP Loan (including, without limitation, all unpaid principal and accrued interest, and all fees, costs, charges and expenses payable under the Postpetition Agreements) shall, immediately upon the Lender's demand, become due and payable in full; and (b) the Lender may pursue and enforce all rights and remedies available to the Lender under any of the Postpetition Agreements, the Financing Order, this Agreement, and applicable law.

7.      **Corporate Authority and Existence**.  The Debtors are limited liability companies duly organized, and active and current under the laws of the State of Florida.  The execution, delivery and performance of this Agreement are within the Debtors' corporate powers, have been authorized, and are not contrary to any of the Debtors' Operating Agreements or By-Laws.

8.      **Access/Inspection**.  The Debtors shall permit such persons as the Lender may designate to visit and inspect the Debtors' offices, to examine the books, records and documents of Debtors and take copies and extracts therefrom, and to discuss the operations and affairs of Debtors with their officers and employees, attorneys, and accountants at such times and as often as the Lender requests.

9.      **Miscellaneous; Governing Law and Venue**.  This Agreement shall become effective only when accepted by the Lender and approved by the Court and may be executed in one or more counterparts, each of which shall constitute an original, but all of which taken together shall constitute one and the same instrument. This Agreement shall be governed by and shall be construed and interpreted in accordance with the laws of the State of Florida.  All parties hereto agree that so long as the Debtors' Case is pending before the Court, jurisdiction and venue of any legal or judicial proceeding shall before the Court.

10.     **Notices**.  All notices required to be given under this Agreement by any party to any other party to this Agreement shall be in writing and shall be deemed to have been sufficiently given if delivered in person, sent by United States mail, via certified or registered mail, postage prepaid, and addressed as follows, or if sent via electronic mail, to the following electronic mail addresses:

If to the Debtors:      Elcom Hotel & Spa, LLC
                             Attention: Troy Taylor
                             Title: Chief Restructuring Officer
                             Electronic Mail: troy@algongroup.com

                             Elcom Condominium, LLC
                             Attention: Troy Taylor
                             Title: Chief Restructuring Officer
                             Electronic Mail: troy@algongroup.com

With copies to:      Kozyak Tropin & Throckmorton, P.A.
                             2525 Ponce de Leon Blvd., 9th Floor
                             Miami, Florida 33134
                             Attention:  Corali Lopez-Castro, Esq.
                             Electronic Mail: clc@kttlaw.com

If to Lender:        OBH Funding, LLC

                             c/o Meland Russin & Budwick, P.A.
                             3200 Southeast Financial Center
                             200 South Biscayne Boulevard
                             Miami, Florida 33131
                             Attention:  Mark S. Meland, Esq.
                             Electronic Mail: mmeland@melandrussin.com

11.    **Successors**.    The terms, warranties and agreements herein contained shall bind and inure to the benefit of the respective parties hereto, all parties in interest, and as otherwise directed by the Court and the Financing Order.

12.    **Modification**. This Agreement may only be modified in writing executed by each of the parties hereto and approved by the Court.

13.    **Financing Order**.    All of the provisions of this Agreement are subject to the terms and provisions of the Financing Order.  To the extent any provision hereof conflicts with the terms of the Financing Order, the terms of the Financing Order shall govern.

[Signatures Continued on Next Page]

**IN WITNESS WHEREOF**, this Agreement has been duly executed on the day and year specified at the beginning of this Agreement.

**Debtors**:

**Elcom Hotel & Spa, LLC**, a Florida limited liability company

By: _____
Name: _____
Its: _____

**Elcom Condominium, LLC**, a Florida limited liability company

By: _____
Name: _____
Its: _____

**LENDER:**

**OBH Funding, LLC**, a Florida limited liability company

By: _____
Name: _____
Its: _____

# EXHIBIT "A"

## PROMISSORY NOTE

Principal Amount                                              September __, 2013
$1,000,000.00                                                 Miami, Florida

FOR VALUE RECEIVED, **ELCOM HOTEL & SPA, LLC**, a Florida limited liability company, and **ELCOM CONDOMINIUM, LLC**, a Florida limited liability company, jointly and severally (collectively, "**Maker**"), having the address c/o Kozyak Tropin and Throckmorton, P.A., attn: Corali Lopez-Castro, Esq., 2525 Ponce de Leon Blvd., 9th Floor, Miami, FL 33134, as debtors and debtors-in-possession under Chapter 11 of the United States Bankruptcy Code, in the bankruptcy cases assigned Case Nos. 13-10029-BKC-RAM and 13-10029-BKC-RAM, respectively, pending in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "**Court**") and jointly administered under the case styled: *In re Elcom Hotel & Spa, LLC and Elcom Condominium, LLC* (the "**Case**"), filed on January 2, 2013 (the "**Petition Date**"), promise to pay to the order of OBH FUNDING, LLC, a Florida limited liability company, with a mailing address of c/o Meland Russin & Budwick, P.A., 200 South Biscayne Boulevard, Suite 3200, Miami, Florida 33131 ("**Payee**"), the principal sum of ONE MILLION AND NO/100 ($1,000.000.00) DOLLARS or such lesser sum as has been advanced hereunder in lawful money of the United States of America at the time of payment, together with interest from the date hereof, at the rate and on the terms set forth herein, as follows:

Prior to the Maturity Date, interest hereunder shall accrue at a fixed rate of interest of nine (9%) percent per annum.

The full principal amount of this Note and any and all accrued interest and any and all other amounts due hereunder shall be due and payable on the earlier of (i) an Event of Default; or (ii) or upon confirmation of a Chapter 11 plan of reorganization even if the plan does not call for a sale of any of the Maker's assets (the "**Maturity Date**").  In the event that the Maker sells any of its assets during the Case, the Payee may file a motion with the Court seeking authorization to obtain repayment from the Maker for a portion of the, or the entire, remaining balance due under the DIP Loan; provided, however that the Court may grant the motion upon a showing by the Payee that the Maker's ability, after making such repayment, to operate as a financially-viable, going-concern shall not be materially and negatively impacted; provided further, however, that with respect to each individual sale of assets, the Payee may seek authorization to be repaid up to an amount not greater than the net amount of the proceeds received by the Maker's estates from the sale of such assets.

During the term hereof, Maker may borrow principal hereunder (the "**Advance(s)**"), as described herein and pursuant to that certain budget approved in writing by the Maker's Chief Restructuring Officer (currently Troy Taylor), so long as the Maker is not in default hereunder, and provided that the maximum amount outstanding at any one time shall not exceed $1,000.000.00.  Advances paid may not be re-borrowed.

Interest shall be calculated on a three hundred sixty (360) day year for the actual number of days the debt is outstanding in each calendar year, by multiplying the actual number of days the debt is outstanding in each calendar year by the rate of interest computed as provided in this Note, and dividing the product thereof by three hundred sixty (360).

Maker shall have the right to prepay this Note, in whole or in part, at any time without penalty, provided that any partial prepayment shall be applied first to accrued interest and then to principal.

The principal and interest shall be payable at the office of Payee set forth in the heading hereof, or at such other place as Payee, from time to time, may designate in writing.

This Note is secured as a superpriority administrative expense claim debtor in possession loan pursuant to that certain DIP Loan Agreement, dated September __, 2013, by and amongst Maker and Payee (the "**Agreement**") and all bankruptcy orders related thereto.

As used in this instrument, the term "**Obligations**" shall refer to the indebtedness represented by this Note and all modifications, renewals, and substitutions hereof, all obligations of the Maker under the Agreement which evidence and secure the obligations of the loan evidenced by this Note (the "**Loan**"), and all other claims of every nature and description of the Payee against the Maker whether present or future, contracted with or acquired by the Payee, and whether joint, several, absolute, contingent, matured, unmatured, liquidated, unliquidated, or direct or indirect.

All of the agreements, conditions, covenants, provisions, and stipulations contained in the Agreement which are to be kept and performed by Maker are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein, and Maker covenants and agrees to keep and perform them, or cause them to be kept and performed, strictly in accordance with their terms. Any default by Maker under the Agreement which remains uncured upon the expiration of any applicable grace and/or curative period provided for therein, may, at Payee's option, be treated as an event of default hereunder.

All payments shall be applied first to accrued interest and then to principal.

It is further understood, however, that should any default be made in the payment of any installment of principal or interest on the date on which it shall fall due, or in the performance of any of the agreements, conditions, covenants, provisions or stipulations contained in this Note or the Agreement, then Payee, at its option and without notice to Maker unless expressly required elsewhere herein, may declare immediately due and payable the entire unpaid balance of principal with interest accrued thereon at the then otherwise applicable rate specified hereinabove to the date of default and thereafter at a rate equal to the maximum legal rate of interest chargeable to Maker (which rate is hereinafter referred to as the "**Default Rate**") and all other sums due by Maker hereunder or under the Agreement, anything herein or in the Agreement to the contrary notwithstanding; and payment thereof may be enforced and recovered in whole or in part at any time by one or more of the remedies provided to Payee in this Note or the Agreement. In such case, Payee may also recover all costs of suit and other expenses in connection therewith, together with a reasonable attorneys' fee for collection, together with interest on any judgment obtained by Payee at a rate which shall be equal to the Default Rate, including interest at that rate from and after the date of any execution, judicial or foreclosure sale until actual payment is made to Payee of the full amount due Payee.

The failure of the Payee to exercise such option to accelerate the indebtedness evidenced hereby shall not constitute a waiver of the right to exercise such option at any other time so long as such event of default remains outstanding and uncured.

Payee shall not exercise any right or remedy provided for herein (other than Payee's right to be paid a late charge, as described above), unless Payee in its sole discretion, deems itself insecure, or (the following sometimes referred to as "**Events of Default**"): (1) Maker fails to make any payment of principal or interest when due pursuant to the Note; or (2) in the event of any other monetary default, Maker shall have failed, within a period of ten (10) days after receiving written notice of such default

from Payee, to pay the amounts then due; or (3) in the event of a non-monetary default, Maker shall have failed, within a period of thirty (30) days after notice of such default, to correct the non-monetary default or, if such non-monetary default is of a type which cannot be cured within thirty (30) days, Maker shall have begun to correct such default and thereafter Maker proceeds diligently to correct such default.

The remedies of Payee as provided herein or in the Agreement and the warrants contained herein or contained in the Agreement, shall be cumulative and concurrent, and may be pursued singly, successively or together at the sole discretion of Payee, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

Maker and all endorsers, sureties and guarantors hereby jointly and severally waive presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest and notice of protest of this Note, and, except as expressly required by the terms and provisions of the Note and Agreement, all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note, and they agree that the liability of each of them shall be unconditional, joint and several, without regard to the liability of any other party, and shall not be affected in any manner by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Payee. Maker and all endorsers, sureties and guarantors consent to any and all extensions of time, renewals, waivers or modifications that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of the collateral or any part thereof, with or without substitution, and agree that additional makers, endorsers, guarantors or sureties may become parties hereto without notice to them or affecting their liability hereunder.

If any provision of this Note is held to be invalid or unenforceable by a court of competent jurisdiction, the other provisions of this Note shall remain in full force and effect and shall be liberally construed in favor of Payee in order to effect the provisions of this Note. In addition, in no event shall the rate of interest payable hereunder exceed the maximum rate of interest permitted to be charged by applicable law (including the choice of law rules) (hereinafter the "**Maximum Legal Rate**") and any interest paid in excess of the permitted rate shall be refunded to Maker or at the option of Maker used to reduce the principal of the outstanding indebtedness. Such refund shall be made by application of the excessive amount of interest paid against any sums outstanding and shall be applied in such order as Payee may determine. If the excessive amount of interest paid exceeds the sums outstanding, the portion exceeding the said sums outstanding shall be refunded in cash by Payee. Any such crediting or refund shall not cure or waive any default by Maker hereunder. Maker agrees, however, that in determining whether or not any interest payable under this Note exceeds the highest rate permitted by law, any nonprincipal payment, including, without limitation, prepayment fees and late charges, shall be deemed to the extent permitted by law, to be an expense, fee, premium or penalty rather than as interest.

In determining whether or not the interest paid or payable under any specific contingency exceeds the Maximum Legal Rate, Payee shall, to the maximum extent permitted under applicable law: (a) exclude voluntary prepayments and the effects thereof; and (b) amortize, prorate, allocate and spread, in equal parts, the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout the entire term of this Note; provided, that if this Note is paid and performed in full prior to the end of the full contemplated term hereof, and if the interest received for the actual period of existence thereof exceeds the Maximum Legal Rate, Payee shall refund to Maker the amount of such excess, and in such event, no holder shall be subject to any penalties provided by any laws for contracting for, charging or receiving interest in excess of the Maximum Legal Rate.

Payee shall not be deemed, by any act of omission or commission, to have waived any of its rights or remedies hereunder unless such waiver is in writing and signed by Payee, and then only to the extent specifically set forth in the writing. A waiver on one event shall not be construed as continuing or as a bar to or waiver of any right or remedy to a subsequent event.

This instrument shall be governed by and construed according to the laws of the State of Florida. Maker consents to the exclusive jurisdiction of the courts of the State of Florida and the federal courts located in Florida in any and all actions and proceedings, whether arising hereunder or under the Agreement.

Maker agrees that venue for any action brought by Payee under this Note or the Agreement shall be Miami-Dade County, Florida.

Whenever used, the singular number shall include the plural, the plural the singular, the use of any gender shall be applicable to all genders, and the words "Payee" and "Maker" shall be deemed to include the respective heirs, personal representatives, successors and assigns of Payee and Maker.

This Note may not be amended or modified, nor shall any waiver of any provision hereof be effective, except by an instrument in writing executed by Maker and Payee.

MAKER AND PAYEE HEREBY SEVERALLY, VOLUNTARILY, KNOWINGLY AND INTENTIONALLY WAIVE ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING ARISING UNDER OR IN CONNECTION WITH THIS NOTE OR PERTAINING TO THE OBLIGATIONS OF MAKER TO PAYEE AND/OR ANY PROPERTY SECURING THE SAME, REGARDLESS OF WHETHER SUCH ACTION OR PROCEEDING CONCERNS ANY CONTRACTUAL OR TORTIOUS OR OTHER CLAIM. MAKER ACKNOWLEDGES THAT THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT TO PAYEE IN ACCEPTING THIS NOTE, THAT THE PAYEE WOULD NOT HAVE ACCEPTED THIS NOTE WITHOUT THIS JURY TRIAL WAIVER, THAT MAKER HAS BEEN REPRESENTED BY AN ATTORNEY OR HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY REGARDING THIS JURY TRIAL WAIVER, AND THAT MAKER UNDERSTANDS THE LEGAL EFFECT OF THIS JURY TRIAL WAIVER.

THE PROPER FLORIDA DOCUMENTARY STAMP TAX HAS BEEN PAID AND THE PROPER DOCUMENTARY STAMPS HAVE BEEN AFFIXED TO THE MORTGAGE DEED AND SECURITY AGREEMENT SECURING THIS PROMISSORY NOTE.

[Signatures Continued on Next Page]

Maker, intending to be legally bound hereby, has caused this Note to be executed as of the day and year first above written.  This Note consists of four (4) pages, excluding the signature page.

**Elcom Hotel & Spa, LLC**, a Florida limited liability company

By: _____
Name: _____
Its: _____

**Elcom Condominium, LLC**, a Florida limited liability company

By: _____
Name: _____
Its: _____

# EXHIBIT "B"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

ELCOM HOTEL & SPA, LLC and
ELCOM CONDOMINIUM, LLC,

      Debtors.

_____/

Chapter 11

Case No. 13-10029-BKC-RAM
Case No. 13-10031-BKC-RAM

(Jointly Administered)

**ORDER GRANTING DEBTORS' MOTION FOR ORDER (I) AUTHORIZING
DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO
§§ 11 U.S.C. 363 AND 364 AND (II) GRANTING SUPERPRIORITY
CLAIMS TO LENDER PURSUANT TO 11 U.S.C. § 364**

      **THIS CAUSE** came before the Court for hearing on_____, 2013, at _____

_____ a.m/p.m. on the *Motion for Order (I) Authorizing Debtor to Obtain Postpetition*

*Financing Pursuant to 11 U.S.C. §§ 363 and 364 and (II) Granting Superpriority Claims to*

*Lender Pursuant to 11 U.S.C. § 364* (the "**Motion**") [ECF No. __] filed by Debtors Elcom Hotel

& Spa, LLC ("**Elcom Hotel**") and Elcom Condominium, LLC ("**Elcom Condo**").   After

reviewing the Motion, hearing the argument of counsel, and being otherwise fully advised of the premises, and for the reasons stated on the record, this Court finds as follows:

1.      On January 2, 2013 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for bankruptcy relief under Chapter 11 the Bankruptcy Code in this Court.

2.      The Debtors are currently operating their businesses and managing their affairs as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.      No trustee, examiner, or creditors' committee has been appointed in the Debtors' Chapter 11 cases.

4.      The Debtors are owners of (i) certain property located on approximately five acres at 10295 Collins Avenue, Bal Harbour, Florida ("**One Bal Harbour**") described as the "Hotel Lot," "Spa Lot," and "Restaurant Lot" in the Declaration of Covenants, Restrictions, and Easements of 10295 Collins Avenue Tower in the Official Record Book 25985, pages 4506-4659, in the public records of Miami-Dade County (the "**Tower Declaration**"), and (ii) nine condominium units located on the Hotel Lot, as described in the Debtors' schedules (together, the property described in (i) and (ii) of this paragraph shall be referred to as the "**Property**").

5.      Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      An immediate and critical need exists for the Debtors to obtain funds in order to continue with the orderly operation of their businesses, to pay the costs of administration of their estates, and to satisfy other working capital and operational needs.

7.     The Debtors are unable to obtain the required funds (i) in the forms of unsecured credit or debt allowable under § 503(b)(1) of the Bankruptcy Code, an administrative expense pursuant to § 364(a) or (b) of the Bankruptcy Code, or unsecured debt having the priority afforded by § 364(c)(l) of the Bankruptcy Code, or (ii) on terms more favorable than those offered by OBH Funding, LLC ("**OBH**" or the "**Lender**") under the DIP Loan Agreement, this Order, and all other agreements, documents, notes or instruments delivered pursuant hereto or thereto or in connection herewith or therewith (collectively the "**Postpetition Financing Documents**").

8.     The terms of the financing as contained in the Postpetition Financing Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

9.     The Debtors have requested that, pursuant to the terms of the Postpetition Financing Documents, OBH make a loan to the Debtors (as defined below, the "**Postpetition Obligations**"), to be used by the Debtors solely in accordance with the terms of the Postpetition Financing Documents, as which may be amended, modified, and supplemented by this Order. The ability of the Debtors to continue their businesses, realize value from their assets, and confirm a plan and/or consummate a sale under Chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining such financing.  OBH is willing to make such loans and advances on a superpriority administrative expense basis, as more particularly described herein, pursuant to the terms and conditions of the Postpetition Financing Documents, as which may be amended, modified, and supplemented by this Order.  Accordingly, the relief requested in the Motion, as which may be amended, modified, and supplemented by this Order, is necessary, essential, and

appropriate for the continued operation of the Debtors' businesses, the management and preservation of their assets, and is in the best interests of the Debtors, their estates, and creditors.

10.     Based on the record before the Court, the terms of the Postpetition Financing Documents, pursuant to which the postpetition loans and advances will be made or provided to the Debtors by OBH, have been negotiated in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates, and creditors. Based on the record presented to the Court by the Debtors, OBH and its counsel are entitled to a finding of "good faith" pursuant to section 364(e) of the Bankruptcy Code, and entitled to the full protection and benefits of the provisions of section 364(e) of the Bankruptcy Code in the event that this Order or any provision herein is vacated, reversed or modified on appeal or otherwise.

11.     It is in the best interests of the Debtors' estates that they be allowed to finance their operations under the terms and conditions set forth herein and in the Postpetition Financing Documents, as which may be amended, modified, and supplemented by this Order.  The relief requested by the Motion is necessary to avoid immediate and irreparable harm to the Debtors' estates, and good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein.

12.     The Debtors have provided proper and adequate notice of the Motion, the hearing thereon, and the potential entry of this Order as required by Bankruptcy Rule 4001 and 11 U.S.C. §§ 102(1), 363, and 364.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED**.  Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits.  This Order shall become effective immediately upon its entry and shall be valid and binding on all parties in interest.

2.      The Debtors are hereby (i) authorized and directed to enter into the DIP Loan Agreement, substantially in the form filed with the Court, and the other Postpetition Financing Documents, and (ii) authorized to borrow funds, incur debt, reimbursement obligations and other obligations, and perform their obligations in accordance with the terms and conditions of the Postpetition Financing Documents, as which may be amended, modified, and supplemented by this Order.  All obligations owed to OBH under or in connection with the Postpetition Financing Documents, including, without limitation, loans, advances, and other indebtedness, obligations, and amounts (contingent or otherwise) owing from time to time under or in connection with the Postpetition Financing Documents are defined and referred to herein as the "**Postpetition Obligations**."

3.      Upon execution and delivery of the Postpetition Financing Documents and entry of this Order, the Postpetition Financing Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors and OBH in accordance with their terms.  No obligation, payment, transfer, or grant of security under this Order or the other Postpetition Financing Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

4233.101/348378.2

4.      OBH shall be entitled to a superpriority administrative expense claim (the "**Claim**") to secure the Postpetition Obligations, all as provided herein.  The Claim shall not be subject to any defenses, reductions, or setoffs asserted by the Debtors or any other party in the Debtors' Chapter 11 cases, including, but not limited to, a trustee or creditors' committee that may be appointed in the future, whether directly or derivatively, including, without limitation, any such defenses, reductions, or setoffs associated in any way with claims against Thomas Sullivan, OBH, or their affiliates; provided further, however, that this provisions shall not, in any manner, affect any of the rights of any of the parties under the Stipulation [ECF No. 69].  Any claims a party may assert against Sullivan, OBH, or their affiliates shall not be affected by the Claim granted herein, provided further, however, that this provision shall not, in any manner, affect any of the rights of any of the parties under the Stipulation.  For the avoidance of doubt, the purpose of this provision is to have the Postpetition Obligations and Claim unaffected by or affect any other proceeding.

5.      Notwithstanding anything to the contrary in the Pospetition Financing Documents, the Debtors will use the proceeds of the postpetition loan in an amount of up to $1,000,000.00 (the "**DIP Loan**") to  fund operations and pay expenses during the administration of the Debtors' Chapter 11 cases; provided, further, however, that, notwithstanding any term in the Postpetition Financing Documents to the contrary, the Debtors shall not be obligated to pay any attorneys' fees or expenses incurred by OBH in connection with the DIP Loan in excess of $15,000.00.

6. The Debtors shall use the advances made under or in connection with the Postpetition Financing Documents solely as provided in this Order and in the other Postpetition Financing Documents, as which may be amended, modified, and supplemented by this Order.

7. The Postpetition Obligations shall be paid in accordance with the terms and provisions of the Postpetition Financing Documents.

8. All Postpetition Obligations hereby constitute under section 364(c)(1) of the Bankruptcy Code allowed superpriority administrative expense claims against the Debtors having priority over all administrative expenses of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), 506(c), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise (except for the fees payable pursuant to 28 U.S.C. § 1930(a)(6)), whether incurred in these Chapter 11 cases or any conversion thereof to cases under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto, which such superpriority claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including the proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code).

9. In connection with this postpetition financing, the Debtors further acknowledge, represent, stipulate, and agree, among other things, that until the full repayment of the DIP Loan, the Debtors shall not permit to exist any administrative expense claim against the Debtors of any kind or nature whatsoever, that has a priority that is equal or superior to the priority of the superpriority administrative expense claims granted to OBH under this Order.

10. Notwithstanding any term in the Postpetition Financing Documents to the contrary, immediately upon the occurrence and during the continuation of an Event of Default as

described in paragraph 6 of the DIP Loan Agreement, OBH may declare the DIP Loan to be immediately due and payable in full (any such declaration shall be referred to herein as a "**Termination Declaration**").  The Termination Declaration shall be given by email (and overnight mail) to each of the following: (i) counsel to the Debtors (c/o Kozyak Tropin & Throckmorton, P.A., 2525 Ponce de Leon Blvd., 9th Floor, Miami, Florida 33134, Attn: Corali Lopez-Castro, Esq. (clc@kttlaw.com)); (ii) Counsel to the Hotel Condominium Association (c/o Berger Singerman LLP, 1450 Brickell Avenue, Miami, Florida 33131 Attn: Christopher Jarvinen, Esq. (cjarvinen@bergersingerman.com) and Pardo Gainsburg PL, 200 SE 1st Street, Suite 700, Miami, Florida 33131, Attn: Stevan J. Pardo (spardo@paardogainsburg.com)); (iii) counsel for the Residential Condominium Association (c/o Hinshaw & Culbertson LLP, One East Broward Blvd., Suite 1010, Ft. Lauderdale, Florida 33301, Attn: Charles M. Tatelbaum, Esq. (ctatelbaum@hinshawlaw.com) and Steven C. Cronig, Esq (scc@hinshawlaw.com)); (iv) U.S. Trustee (c/o Office of the United States Trustee, 51 SW First Avenue, Room 1204, Miami, Florida 33130, Attn: Steven D. Schneiderman, Esq. (steven.d.schneiderman@usdoj.gov)).  The earliest date any such Termination Declaration is properly made by OBH by email to all of the counsel listed in this paragraph shall be referred to herein as the "**Termination Declaration Date**."  During the five (5) business days after the Termination Declaration Date (the "**Remedies Notice Period**"), the Debtors, the Hotel Condominium Association, the Residential Condominium Association, and/or the U.S. Trustee shall be entitled to seek an emergency hearing with the Court seeking a determination of whether an Event of Default has occurred and/or any other appropriate relief related to the Debtors' continued use of the proceeds of the DIP Loan, with the rights and objections of all parties reserved with respect thereto.  Unless the

Court determines otherwise during the Remedies Notice Period (which shall be extended, if necessary, to accommodate the Court's calendar for an emergency hearing), the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice to or order of the Court, and the DIP Loan shall become due and payable in full, and OBH shall be permitted to exercise any and all remedies set forth herein, in the Postpetition Financing Documents (as which may be amended, revised, and/or supplemented by this Order and any further order of the Court), as applicable, and as otherwise available at law against the Debtors, without further order of or notice, application, or motion to the Court.

11.    Notwithstanding anything herein or in the other Pospetition Financing Documents, on the Maturity Date, as defined in the DIP Loan Agreement, the Debtors shall no longer, pursuant to this Order, the other Postpetition Financing Documents or otherwise, be authorized to borrow funds or incur indebtedness hereunder or under the other Postpetition Financing Documents or to use any proceeds of the Postpetition Obligations already received.

12.    Notwithstanding anything herein or the occurrence of the Maturity Date, as defined in the DIP Loan Agreement, all of the rights, remedies, benefits and protections provided to OBH under this Order and the other Postpetition Financing Documents shall survive such Maturity Date.  Upon such Maturity Date, the principal of and all other amounts due under the Postpetition Financing Documents, shall be immediately due and payable, and OBH shall have all other rights and remedies provided in this Order, the other Postpetition Financing Documents, and applicable law.

13.     If OBH shall at any time exercise any of its rights and remedies hereunder, under the other Postpetition Financing Documents, or under applicable law in order to effect payment or satisfaction of the Postpetition Obligations, OBH shall seek prior Court approval.

14.     The failure or delay by OBH to seek relief or otherwise exercise their rights and remedies under this Order or any other Postpetition Financing Documents shall not constitute a waiver of any of its rights, and any single or partial exercise of such rights and remedies against the Debtors shall not be construed to limit any further exercise of such rights and remedies against the Debtors.

15.     Without limiting the rights of access and information afforded to OBH under the Postpetition Financing Documents, the Debtors, upon reasonable written notice and at such reasonable times during normal business hours and as often as may reasonably be requested, shall permit any representatives designated by OBH to visit and inspect any of the Debtors' properties, to inspect, copy, and take extracts from their financial and accounting records and to discuss their affairs, finances, and accounts with its officers and independent public accountants.

16.     The provisions of this Order shall be binding upon and inure to the benefit of OBH, the Debtors, and their respective successors and assigns.

17.     Based on the findings set forth in this Order and in accordance with section 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of this Order or any other Postpetition Financing Documents are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, no such modification, amendment, or vacation shall affect the validity, enforceability, or priority of any lien or claim authorized or created hereby or thereby or any Postpetition Obligations incurred hereunder or thereunder.

18.    The Debtors are authorized and directed to the extent necessary under section 363 of the Bankruptcy Code, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, to do and perform all acts, to make, execute and deliver all required instruments and documents to OBH.

19.    The obligations of the Debtors in respect of the Postpetition Obligations, and the claims to or for the benefit of OBH pursuant to this Order and the other Postpetition Financing Documents, shall not be discharged by the entry of an order (a) confirming a chapter 11 plan in these Chapter 11 cases or (b) converting these Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code.  Under no circumstances, absent OBH's consent, shall any Chapter 11 plan in these Chapter 11 cases be confirmed or become effective unless such plan provides that the Postpetition Obligations shall be paid in full in cash and satisfied in the manner provided in the Postpetition Financing Documents on or before the effective date of such plan.

20.    The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order converting the Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code.

21.    In the event that any provision of this Order conflicts with any term of the other Postpetition Financing Documents, this Order shall govern.

22.    The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

# # #

**Submitted by**:
Corali Lopez-Castro, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd., 9th Floor

4233.101/348378.2                                    11

Miami, Florida 33134
Tel.:        305-372-1800
Fax:         305-372-3508
E-mail:      clc@kttlaw.com

**Copies furnished to:**
Corali Lopez-Castro, Esq.
[Attorney Lopez-Castro is directed to serve a copy of this Order on all interested parties and file a certificate of service]