# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

ELCOM HOTEL & SPA, LLC and
ELCOM CONDOMINIUM, LLC,

    Debtors.
_____/

Chapter 11

Case No. 13-10029-BKC-RAM
Case No. 13-10031-BKC-RAM

(Jointly Administered)

# INTERIM ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO §§ 11 U.S.C. 363 AND 364 AND (II) GRANTING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS TO LENDER PURSUANT TO 11 U.S.C. § 364 WITH INTERIM REQUEST TO AUTHORIZE IMMEDIATE BORROWING PURSUANT TO BANKRUPTCY RULE 4001(c)

**THIS CAUSE** came before the Court for preliminary hearing on May 21, ~~2012 at a.m./p.m.~~ 2013 at 10:00 am on the *Debtors' Emergency Motion for Order (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 363 and 364 and (II) Granting Superpriority Claims to Lender Pursuant to 11 U.S.C. § 364 with Interim Request to Authorize Immediate Borrowing Pursuant to Bankruptcy Rule 4001(c)* (ECF No. 202) (the "Motion") ~~(ECF~~

{Firm Clients/3258/3258-46/01273093.DOCX.}
4233.101/342476
~~4973482-1~~
4981861-3

1

~~No.~~). After reviewing the Motion, hearing the argument of counsel, and being otherwise fully advised of the premises, and for the reasons stated on the record, this Court finds as follows:

1. On January 2, 2013 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for bankruptcy relief under Chapter 11 the Bankruptcy Code in this Court.

2. The Debtors are currently operating their businesses and managing their affairs as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. No trustee, examiner or creditors' committee has been appointed in the Debtors' Chapter 11 cases.

~~The Debtors are owners of a spa, restaurant, hotel units, and common areas (the "**Property**") located at what is known as ONE Bal Harbour, which is operated as a five-star resort.~~

4. The Debtors are owners of (i) certain property located on approximately five acres at 10295 Collins Avenue, Bal Harbour, Florida ("**One Bal Harbour**") described as the "Hotel Lot", "Spa Lot" and "Restaurant Lot" in the Declaration of Covenants, Restrictions, and Easements of 10295 Collins Avenue Tower in the Official Records Book 25985, pages 4506-4659, in the public records of Miami-Dade County ("**Tower Declaration**"), and (ii) nine condominium units described on Schedule "A" of the Debtors' Schedules and Statements of Financial Affairs, filed with the Court on February 4, 2013 [ECF No. 87] (together, the property described in "(i)" and (ii)" of this paragraph is collectively known as the "**Property**").

5. As a result of good-faith, arms-length, post-petition negotiations between and among (i) the Debtors, (ii) 10295 Collins Avenue, Hotel Condominium Association, Inc. ("**Hotel Condominium Association**"), (iii) 10295 Collins Avenue, Residential Condominium

{Firm Clients/3258/3258-46/01273093.DOCX.}
4233.101/342476
~~4975482-1~~
~~4981861-3~~

2

Association, Inc. (the "**Residential Condominium Association**" and together with the Hotel Condominium Association, collectively, the "**Associations**"), (iv) Thomas Sullivan ("**Sullivan**"), and (v) and three entities in which Sullivan has an interest, including Elevation Communities, LLC ("**Elevation Communities**"), ANO, LLC ("**ANO**") and F9 Investments, LLC ("**F9**"), the Court approved a certain stipulation on January 15, 2013 [ECF No. 69] (the "**Stipulation**").

6. Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7. An immediate and critical need exists for the Debtors to obtain funds in order to continue with the orderly operation of their businesses, to pay the costs of administration of their estate and to satisfy other working capital and operational needs.

8. The Debtors are unable to obtain the required funds (i) in the forms of unsecured credit or debt allowable under § 503(b)(1) of the Bankruptcy Code, an administrative expense pursuant to § 364(a) or (b) of the Bankruptcy Code, or ~~unsecured debt having the priority afforded by § 364(c)(1) of the Bankruptcy Code, or~~ (ii) on terms more favorable than those offered by OBH Funding, LLC ("**OBH**" or the "**Lender**") under the DIP Loan Agreement, this Interim Order, the Final Order and all other agreements, documents, notes or instruments delivered pursuant hereto or thereto or in connection herewith or therewith (collectively the "**Postpetition Financing Documents**").

9. The terms of the <u>interim</u> financing as contained in the Postpetition Financing Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment

consistent with ~~its~~ their fiduciary duties and constitute reasonably equivalent value and fair consideration.

10. The Debtors have requested that, pursuant to the terms of the Postpetition Financing Documents, OBH ~~Funding, LLC ("OBH")~~ make a loan to the Debtors (as defined below, the "Postpetition Obligations"), to be used by the Debtors solely in accordance with the terms of the Postpetition Financing Documents, as amended, modified and supplemented by this Interim Order. The ability of the Debtors to continue their businesses, realize value from assets and consummate a sale under Chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining such financing. OBH is willing to make such loans and advances on a superpriority administrative expense basis, as more particularly described herein, pursuant to the terms and conditions of the Postpetition Financing Documents, as amended, modified and supplemented by this Interim Order. Accordingly, the relief requested in the Motion~~,~~, as amended, modified and supplemented by this Interim Order, is necessary, essential and appropriate for the continued operation of the Debtors' businesses, the management and preservation of its assets, and is in the best interests of the Debtors, their estates and creditors.

11. Based on the record before the Court, the terms of the Postpetition Financing Documents, pursuant to which the postpetition loans and advances will be made or provided to the Debtors by OBH, have been negotiated in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estate and creditors. Based on the record presented to the Court by the Debtors, it appears OBH and their respective counsel are entitled to a finding of "good faith" pursuant to section 364(e) of the Bankruptcy Code, and entitled to the full protection and benefits of the provisions of section 364(e) of the

Bankruptcy Code in the event that this Interim Order or any provision herein is vacated, reversed or modified, on appeal or otherwise.

12. It is in the best interests of the Debtors' estates that they be allowed to finance their operations under the terms and conditions set forth herein and in the Postpetition Financing Documents, as amended, modified and supplemented by this Interim Order. The relief requested by the Motion is necessary to avoid immediate and irreparable harm to the Debtors' estates, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Interim Order.

13. The Debtors have provided proper and adequate notice of the Motion, the Preliminary Hearing and the potential entry of this Interim Order as required by Bankruptcy Rule 4001 and 11 U.S.C. §§ 102(1), 363, and 364.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED on an interim basis**. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits or, to the extent applicable, deferred until the hearing on the Final Order. This Interim Order shall become effective immediately upon its entry and shall be valid and binding on all parties in interest.

2. The Debtors are hereby (i) authorized and directed to enter into the DIP Loan Agreement, substantially in the form filed with the Court, and the other Postpetition Financing Documents, as amended, modified and supplemented by this Interim Order, and (ii) authorized to borrow funds, incur debt, reimbursement obligations and other obligations, and perform its their obligations in accordance with the terms and conditions of the Postpetition Financing

{Firm Clients/3258/3258-46/01273093.DOCX.}
4233.101/342476
4975482-1
4981861-3

5

Documents, as amended, modified and supplemented by this Interim Order. Prior to the entry of the Final Order, the Debtors may agree to non-material, *de minimis* amendments, modifications, and supplements to the Postpetition Financing Documents ~~may be amended, modified, supplemented or the provisions thereof waived in accordance with their terms,~~ without further order of this Court or notice to any party; *provided, however*, that notice of any such amendment, modification, or supplement shall be provided by email to the U.S. Trustee and the respective counsel for the Hotel Condominium Association and the Residential Condominium Association at the email addresses set forth in paragraph 11 of this Interim Order (collectively, ~~which~~ the "**Notice Parties**"), and such Notice Parties shall have five (5) days from the date of such notice within which to object in writing to such amendment, modification or supplement, and upon any such timely written objection, such amendment, modification or supplement shall only be permitted pursuant to an order of this Court after notice and a hearing. All obligations owed to OBH under or in connection with the Postpetition Financing Documents, including, without limitation, loans, advances and other indebtedness, obligations and amounts (contingent or otherwise) owing from time to time under or in connection with the Postpetition Financing Documents are defined and referred to herein as the "**Postpetition Obligations**."

3.   Upon execution and delivery of the Postpetition Financing Documents and the funding of the Interim Amount (defined herein), the Postpetition Financing Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms; *provided, however*, that notwithstanding any other provision of this Interim Order or of the other Postpetition Financing Documents, the ~~Debtor~~ Debtors shall not, prior to entry of a final order approving the Postpetition Financing Documents (the "**Final**

{Firm Clients/3258/3258-46/01273093.DOCX.}
4233.101/342476                                6
~~4975482-1~~
4981861-3

**Order**"), incur Postpetition Obligations in the principal amount of more than $600,000 (the "**Interim Amount**"), and *provided further*, that the Interim Amount may only be borrowed under the DIP Loan Agreement, as amended, modified and supplemented by this Interim Order. No obligation, payment, or transfer ~~or grant of security~~ under this Interim Order or the other Postpetition Financing Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or any applicable ~~nonbankruptcy~~ non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim; provided further, however, that this provision shall not, in any manner, affect any of the rights of any of the parties under the Stipulation.

    4. OBH shall be entitled to a superpriority administrative expense claim ("**Claim**") to secure the ~~indebtedness and obligations incurred by the Debtors~~ Post-Petition Obligations, all as provided herein. The Claim shall not be subject to any defenses, reductions, or setoffs asserted by the Debtors or any other party in the ~~Case~~ Debtors' chapter 11 cases, including a Trustee or Creditors' Committee that may be appointed in the future, whether directly or derivatively, including without limitation, any such defenses, reductions or setoffs associated in any way with claims against Thomas Sullivan, OBH or their affiliates; provided further, however, that this provision shall not, in any manner, affect any of the rights of any of the parties under the Stipulation. Any claims a party may assert against Sullivan, OBH or their affiliates shall not be affected by the Claim granted herein provided further, however, that this provision shall not, in any manner, affect any of the rights of any of the parties under the Stipulation. For the avoidance of doubt, the purpose of this provision is to have the Postpetition Obligations and Claim unaffected by or affect any other proceeding.

5. Notwithstanding anything to the contrary in the Postpetition Financing Documents, the Debtors will use the proceeds of the postpetition loan in an amount of up to $1.2 million (the "**DIP Loan**") to fund operations and pay expenses incurred during the administration of the Debtors' chapter 11 cases solely in accordance with and as set forth in the budget, attached hereto as "Exhibit A" (as may be amended in accordance with paragraph 6 hereof, the "**Budget**") during the period from the date hereof through the Termination Date (the "**Specified Period**"); provided, however, that for the avoidance of any doubt, the Debtors have confirmed that they do not need any portion of the DIP Loan to fund any amount(s) of the Debtors' obligation to pay Shared Facilities' expenses and other fees, as described more fully in Article 11 of the Tower Declaration and paragraph 12 of the Stipulation, provided that this limitation shall apply with respect to this Interim Order and any subsequent interim order or Final Order approving the Motion, and this limitation shall not represent the law of the case with respect to any potential future financing arrangements in the Debtors' chapter 11 cases which will be independently considered by the Court; provided, further, however, that, notwithstanding any term in the Postpetition Financing Documents to the contrary, the Debtors shall not be obligated to pay any attorneys' fees or expenses incurred by OBH in excess of $15,000.

6. The Budget and any modifications to, or extensions, amendments or updates of, the Budget shall be (i) developed by, and in form and substance acceptable to and approved in writing by the Debtors' Chief Restructuring Officer (currently Troy Taylor), and (ii) provided to the respective counsel for OBH, the Hotel Condominium Association and the Residential Condominium Association by email on not less than five (5) business days' advance notice at the email addresses set forth in paragraph 11 of this Interim Order and provided further that OBH,

the Hotel Condominium Association or the Residential Condominium Association, as the case may be, shall have the right to object to any such modifications, extensions, amendments or updates, including without limitation the filing of a pleading with the Court on shortened notice. The Debtors shall be authorized to exceed the amounts set forth in the Budget by the sum of (x) 115% of the disbursements projected for such week in the Budget, plus (y) (except for the first week) any unused portion of the disbursements projected for any prior week in the Budget (but excluding, for avoidance of doubt, any amounts in excess of 100% of the projected disbursements for any week).

7. The Debtors shall use the advances made under or in connection with the Postpetition Financing Documents solely as provided in ~~this Interim Order and in~~ the ~~other~~ Postpetition Financing Documents, as amended, modified and supplemented by this Interim Order.

8. The Postpetition Obligations shall be paid in accordance with the terms and provisions of the Postpetition Financing Documents, as amended, modified and supplemented by this Interim Order.

9. All Postpetition Obligations hereby constitute under section 364(c)(1) of the Bankruptcy Code allowed superpriority administrative expense claims against the Debtors having priority over all administrative expenses of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), ~~506(c),~~ 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise, whether incurred in ~~this Chapter 11 Case~~ these chapter 11 cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto, which such superpriority ~~claims~~ administrative expense claim shall be

{Firm Clients/3258/3258-46/01273093.DOCX.}
4233.101/342476
~~4975482-1~~
4981861-3

9

payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (~~including~~but excluding, ~~upon entry of the Final Order~~absent further order of the court and expressly preserving the rights of all of the parties, the proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code).

10. In connection with this postpetition financing, the Debtors further acknowledge, represent, stipulate and agree, among other things, that until the full repayment of the DIP Loan, the Debtors shall not permit to exist any administrative expense claim against the Debtors of any kind or nature whatsoever, that has a priority that is equal or superior to the priority of the superpriority administrative expense claims granted to OBH under this Interim Order.

11. Notwithstanding any term in the Postpetition Financing Documents to the contrary, immediately upon the occurrence and during the continuation of an Event of Default as described in paragraph 6 of the DIP Loan Agreement, OBH may declare the DIP Loan to be immediately due and payable in full (any such declaration, shall be referred to herein as a "**Termination Declaration**"). The Termination Declaration shall be given by email (and overnight mail) to each of the following: (i) counsel to the Debtors (c/o Kozyak Tropin & Throckmorton, P.A., 2525 Ponce de Leon Blvd., 9th Floor, Miami, Florida 33134, ATTN: Corali Lopez-Castro, Esq. (clc@kttlaw.com)); (ii) counsel to the Hotel Condominium Association ((c/o Berger Singerman LLP, 1450 Brickell Avenue, Miami, Florida, 33131, ATTN: Paul Steven Singerman, Esq. (Singerman@bergersingerman.com) and Christopher A. Jarvinen, Esq. (cjarvinen@bergersingerman.com)) and (c/o Pardo Gainsburg PL, 200 SE 1st Street Suite 700, Miami, Florida 33131, ATTN: Stevan J. Pardo, Esq. (spardo@pardogainsburg.com)); (iii) counsel for the Residential Condominium Association (Hinshaw & Culbertson LLP, One East


Broward Blvd., Suite 1010, Ft. Lauderdale, FL 33301 (ATTN: Charles M. Tatelbaum, Esq. (CTatelbaum@hinshawlaw.com) and Steven C. Cronig, Esq. (SCC@hinshawlaw.com)); and (iv) U.S. Trustee (Office of the United State Trustee, 51 SW First Avenue, Room 1204, Miami, FL 33130, ATTN: Steven D. Schneiderman, Esq. (steven.d.schneiderman@usdoj.gov)). The earliest date any such Termination Declaration is properly made by OBH by email to all of the counsel listed in this paragraph shall be referred to herein as the "**Termination Declaration Date**"). During the five (5) business days after the Termination Declaration Date (the "**Remedies Notice Period**"), the Debtors, the Hotel Condominium Association, the Residential Condominium Association and/or the U.S. Trustee shall be entitled to seek an emergency hearing with the Court seeking a determination of whether an Event of Default has occurred and/or any other appropriate relief related to the Debtors' continued use of the DIP Loan, with the rights and objections of all parties reserved with respect thereto. Unless the Court determines otherwise during the Remedies Notice Period (which shall be extended, if necessary, to accommodate the Court's calendar for an emergency hearing), the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice to or order of the Court, and the DIP Loan shall become due and payable in full and OBH shall be permitted to exercise any and all remedies set forth herein, in the Postpetition Financing Documents (as amended, revised and/or supplemented by this Interim Order and any further order of the Court), as applicable, and as otherwise available at law against the Debtors, without further order of or notice, application or motion to the Court.

12. Notwithstanding anything in the Postpetition Financing Documents to the contrary, the "Default Rate" (i.e., the interest rate charged during a matured Event of Default, as described in the Promissory Note) shall be fifteen (15%) percent per annum.

13. Notwithstanding anything in the Postpetition Financing Documents to the contrary, the definition of "Maturity" in paragraph 3 of the DIP Loan Agreement, is revised as follows (the bolded/underlined language is new):

> Maturity: The indebtedness due hereunder shall mature on the Maturity Date, defined as the earlier of (i) an Event of Default; or (ii) upon confirmation of a Chapter 11 plan of reorganization even if the plan does not call for a sale of any of the Debtors' assets (the "Maturity Date"). In the event that the Debtors sell any of their assets during their chapter 11 cases, the Lender may file a motion with the Court seeking authorization to obtain repayment from the Debtors for a portion of the, or the entire, remaining balance due under the DIP Loan; provided, however that the Court may grant the motion upon a showing by the Lender that the Debtors' ability, after making such repayment, to operate as a financially-viable, going-concern shall not be materially and negatively impacted; provided further, however, that with respect to each individual sale of assets, the Lender may seek authorization to be repaid up to an amount not greater than the net amount of the proceeds received by the Debtors' estates from the sale of such assets.

14. Notwithstanding anything herein or in the other ~~Pospetition~~ Postpetition Financing Documents, on the Maturity Date, as defined in the DIP Loan Agreement, the Debtors shall no longer, pursuant to this Interim Order, the other Postpetition Financing Documents or otherwise, be authorized to borrow funds or incur indebtedness hereunder or under the other Postpetition Financing Documents or to use any proceeds of the Postpetition Obligations already received.

15. Notwithstanding anything herein or the occurrence of the Maturity Date, as defined in the DIP Loan Agreement, all of the rights, remedies, benefits and protections provided to OBH under this Interim Order and the other Postpetition Financing Documents shall survive such Maturity Date. Upon such Maturity Date, the principal of and all other amounts due under the Postpetition Financing Documents, shall be immediately due and payable and OBH shall have all other rights and remedies provided in this Interim Order, the other Postpetition Financing Documents and applicable law.

16. If OBH shall at any time exercise any of their respective rights and remedies hereunder, under the other Postpetition Financing Documents or under applicable law in order to effect payment or satisfaction of the Postpetition Obligations, OBH shall seek prior Court approval.

17. The failure or delay by OBH to seek relief or otherwise exercise their rights and remedies under this Interim Order or any other Postpetition Financing Documents shall not constitute a waiver of any of the rights of the DIP Lender, and any single or partial exercise of such rights and remedies against the Debtors shall not be construed to limit any further exercise of such rights and remedies against the Debtors.

18. Without limiting the rights of access and information afforded to OBH under the Postpetition Financing Documents, the Debtors, upon reasonable written notice and at such reasonable times during normal business hours and as often as may reasonably be requested shall permit any representatives designated by OBH to visit and inspect any of its properties, to inspect, copy and take extracts from its financial and accounting records and to discuss its affairs, finances and accounts with its officers and independent public accountants.

19. The provisions of this Interim Order shall be binding upon and inure to the benefit of OBH ~~and~~, the Debtors and the Associations, and their respective successors and assigns.

20. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the interim amounts under the DIP Loan contemplated by this Interim Order, in the event that any or all of the provisions of this Interim Order or any other Postpetition Financing Documents are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any ~~lien or~~ claim authorized or created hereby or thereby or any Postpetition Obligations incurred hereunder or thereunder.

21. The Debtors are authorized and directed to the extent necessary under section 363 of the Bankruptcy Code, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, to do and perform all acts, to make, execute and deliver all required instruments and documents to OBH.

22. The obligations of the Debtors in respect of the Postpetition Obligations, and the claims to or for the benefit of OBH pursuant to this Interim Order and the other Postpetition Financing Documents, shall not be discharged by the entry of an order (a) confirming a chapter 11 plan in this Chapter 11 Case or (b) converting this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. Under no circumstances, absent OBH's consent, shall any Chapter 11 plan in ~~this Chapter 11 Case~~ these chapter 11 cases be confirmed or become effective unless such plan provides that the Postpetition Obligations shall be paid in full in cash and satisfied in the manner provided in the Postpetition Financing Documents on or before the effective date of such plan.

23. The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order converting ~~the Chapter 11 Case to a case~~ these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

24. Promptly after the entry of this Interim Order, the Debtor shall serve on all interested parties copies of the Motion, this Interim Order and a notice of the Final Hearing (the "**Final Hearing Notice**") to be held on _____ at _____ a.m./p.m. to consider entry of the Final Order. All creditors and parties in interest shall have ~~5 days from the date of service of such~~ up to two (2) business days prior to the Final Hearing ~~Notice in which~~ to file an objection, if any, to the continued authority of the ~~Debtor~~ Debtors to obtain funds in accordance with the terms ~~hereof and~~ of the Postpetition ~~Loan~~ Financing Documents, as amended, modified and supplemented by this Interim Order. Objections must be in writing and shall be filed with this Court and served upon the attorneys for the Debtor: Kozyak Tropin & Throckmorton, P.A., 2525 Ponce de Leon Blvd., 9th Floor, Miami, FL 33134, Attn: Corali Lopez-Castro, Esq. and counsel for Lender: Meland Russin & Budwick, 3200 Southeast Financial Center, 200 South Biscayne Bld., Miami, Florida 33131 Attn: Peter Russin, Esq..

25. In the event that any provision of this Interim Order conflicts with any term of the other Postpetition Financing Documents, this Interim Order shall govern. This Interim Order shall not, in any manner whatsoever, affect the rights granted to the Debtors, Sullivan, Elevation, ANO, and F9, the Hotel Condominium Association and/or the Residential Condominium Association in the Stipulation.

26. Notwithstanding any provisions in the Postpetition Financing Documents to the contrary (e.g., the language in the Promissory Note at pp. 3 and 4), this Court has and will retain

jurisdiction (i) to enforce this Interim Order according to its terms and (ii) to determine any disputes arising with respect to this Interim Order and the Postpetition Financing Documents.

###

**Submitted by**:
Corali Lopez-Castro, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Miami, Florida 33134
Tel.:      305-372-1800
Fax:       305-372-3508
E-mail:    clc@kttlaw.com

**Copies furnished to**:
Corali Lopez-Castro, Esq.
[Attorney Lopez-Castro is directed to serve a copy of this Order on all interested parties and file a certificate of service]