**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| ELCOM HOTEL & SPA, LLC and | Case No.  13-10029-BKC-RAM |
| ELCOM CONDOMINIUM, LLC, | Case No.  13-10031-BKC-RAM |
| | |
| Debtors. | (Jointly Administered) |

_____/

**DEBTORS' MOTION FOR ENTRY OF ORDER (A) APPROVING COMPETITIVE
BIDDING AND SALE PROCEDURES; (B) APPROVING FORM AND MANNER OF
NOTICES; (C) APPROVING FORM OF PURCHASE AND SALE AGREEMENT;
(D) SCHEDULING DATES TO CONDUCT AUCTION AND HEARING TO
CONSIDER FINAL APPROVAL OF SALE, INCLUDING TREATMENT
OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (E) AUTHORIZING
SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO
11 U.S.C. § 363, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
AND INTERESTS; AND (F) GRANTING RELATED RELIEF[1]**

Elcom Hotel & Spa, LLC ("**Elcom Hotel**") and Elcom Condominium, LLC ("**Elcom

Condo**"), as debtors and debtors in possession (collectively, the "**Debtors**"), by and through

undersigned counsel, pursuant to sections 105, 363, 364, and 365 of title 11 of the United States

Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), Rules 2002(a)(2), 6004, 6006, and

9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1

of the Local Rules of the Bankruptcy Court for the Southern District of Florida (the "**Local

Rules**"), file this *Motion for Entry of Order (A) Approving Competitive Bidding and Sale*

_____

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Purchase Agreement attached
hereto as Exhibit "A", the Auction Procedures Order attached as Exhibit "B", and/or the Auction Procedures
attached as Exhibit "1" to the Auction Procedures Order, as applicable.

1

*Procedures; (B) Approving Form and Manner of Notices, (C) Approving Form of Purchase and Sale Agreement, (D) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale, Including Treatment of Executory Contracts and Unexpired Leases, (E)Authorizing Sale of Substantially all of Debtors' Assets Pursuant to 11 U.S.C. § 363, Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (F) Granting Related Relief* (the "**Auction Procedures Motion**"), and in support respectfully represent as follows:

## LOCAL RULE 6004-1 CONCISE STATEMENT[2]

In accordance with Local Rule 6004-1, below is a summary of the relief requested by the Debtors:

**Identity of the Purchaser**:  The proposed purchaser is Stoneleigh Capital LLC (the "**Proposed Purchaser**").  However, the sale is subject to higher and better offers so the Proposed Purchaser may not be the ultimate purchaser.  The Proposed Purchaser is not an insider of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

**The Sale Terms**:

- **The Sale Price**:  $13,000,000.00 (the "**Purchase Price**")

- **Warranties**:  The sale is "WHERE IS, AS IS" physical condition.  All existing warranties, to the extent any exist, related to the personal property being purchased are being acquired and assumed by the Proposed Purchaser.

- **Closing Date**:  On or before December 31, 2013.

- **Closing Conditions**:  Entry of the Sale Order in form and substance acceptable to the Proposed Purchaser, delivery of at least 95 rental management agreements by hotel unit owners, and representations and warranties made by Sellers under the Purchase Agreement shall be true as of the Closing Date, subject to Sellers' right to update such representations and warranties.

---

[2] To the extent that there is an inconsistency between the terms of this summary and any provisions of the Auction Procedures Order, the terms of the Auction Procedures Order shall control.

**The Auction Terms**:

- **Higher and Better Offers**: The sale is subject to higher and better offers.

- **Proposed Auction Date**: December 5, 2013

- **Initial Overbid Amount**: The Purchase Price, plus the Break Fee, plus $200,000.00, or an alternative structure that is determined to be not less favorable than the terms and conditions of the Purchase Agreement.

- **Minimum Incremental Bids**: $200,000.00 higher than the bid at which the Auction commences, and then continues in minimum increments of at least $200,000.00 higher than the previous bid.

- **Proposed last date for submitting competing bids**: December 2, 2013.

**Requirements of Competing Bidders**:

- **Minimum Deposit**: $500,000.00

- **Documentation Requirements**: Executed Purchase Agreement in clean and redline, reflecting the variations from the Purchase Agreement, or an alternative purchase agreement that the Debtors determine is not less favorable than the terms and conditions of the Purchase Agreement.

- **Other Qualifying Conditions**: All Qualifying Bidder's offers must be irrevocable until the closing of the purchase of the Purchased Assets; Evidence of financial and other information that will allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to consummate the transaction contemplated by the modified Purchase Agreement; No break fee, expense reimbursement, or similar type of payment.

**Purchaser Protections not Otherwise Described**:

- **Proposed Break Fee**: $390,000.00, plus the expenses, including, without limitation, attorneys' fees and other professional fees actually incurred by the Proposed Purchaser in connection with pursuing the transactions contemplated by the Purchase Agreement (the "**Break Fee**").

- **Matching Rights**: There are no matching rights.

**Statement Regarding Transfer of Personally Identifiable Information**:  The Debtors have internal policies related to the prohibition of the transfer of personally identifiable information.  The Purchase Agreement does not contemplate the sale of personally identifiable consumer information.

**Identity of All Known Lienholders**:

- OBH Funding, LLC

- Elcom Hotel & Spa, LLC

- 10295 Collins Avenue, Hotel Condominium Association

**Statement Requesting Dates for Hearings and Auction**:  The Debtors request that the Auction occur on or before December 5, 2013, so that a closing can occur on or before December 31, 2013.

## I.        Jurisdiction

1.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.        The bases for this Auction Procedures Motion are sections 105(a), 363, 364, and of the Bankruptcy Code, Rules 2002(a)(2), 6004, 6006, Rule 9014 of the Bankruptcy Rules, and Rule 6004-1 of the Local Rules.

## II.        Background

3.        On January 2, 2013 (the "**Petition Date**"), the Debtors each commenced a voluntary case under Chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.        One Bal Harbour Resort & Spa ("**One Bal Harbour**") is located on five acres of land at 10295 Collins Avenue, Bal Harbour, Florida.  The building and improvements consist of

a luxury hotel, resort, condominium, restaurant, and spa facility.  One Bal Harbour includes 185 residential condominium units and 124 hotel condominium units.

5.    One Bal Harbour is governed (i) by the Declaration of Covenants, Restrictions and Easements for 10295 Collins Avenue Tower (the "**Tower Declaration**") recorded in OR Book 25895, Page 4506 of the Public Records of Miami-Dade County, Florida; and (ii) by a Development Agreement (the "**Development Agreement**") with the Village of Bal Harbour recorded in OR Book 21562, Page 3830 of the Public Records of Miami-Dade County, Florida.

6.    The Tower Declaration divides the project into five vertically subdivided lots:

a.   The "Residential Condominium Lot": By virtue of a separately recorded condominium declaration that is subordinate to the Tower Declaration, the Residential Condominium Lot consists of a condominium that includes 185 residential condominium units.  The common area of this condominium is managed by the 10295 Collins Avenue, Residential Condominium Association, Inc. (the "**Residential Association**").

b.   The "Hotel Condominium Lot": By virtue of a separately recorded condominium declaration that is subordinate to the Tower Declaration, the Hotel Condominium Lot consists of a condominium that includes 124 hotel condominium units.  Owners of these units are required to operate their units as "five-star" hotel rooms.  Owners of these units have certain limited occupancy rights.   The common area of this condominium is managed by the 10295 Collins Avenue, Hotel Condominium Association (the "**Hotel Association**").

c.   The "Spa Lot" comprises the spa facilities associated with the hotel.

d.   The "Restaurant Lot" comprises the restaurant facilities associated with the hotel.

e.  The  "Hotel Lot" includes the following facilities (the **Shared Facilities**," which are neither part of the Residential Condominium Lot or the Hotel Condominium Lot, nor "common elements" of those two condominiums):

i.  The "General Shared Facilities," which consist of the physical structure of the building, the roofs of the building, all parking facilities, all exterior grounds including certain beachfront rights, the majority of the mechanical and electrical systems running through the building, a swimming pool accessible to all residents of One Bal Harbour, and a number of cross-easements for use of a "Plaza" area in common with an adjacent building;

ii.  The "Residential Shared Facilities," which consist of the lobby of the Residential Condominium, all elevators serving the Residential Condominium, all exterior windows and doors of each Residential Unit, all balconies adjacent to each Residential Unit, a separate swimming pool accessible only to owners of Residential Units, and certain mechanical and electrical systems serving the Residential Condominium;

iii.  The "Hotel Condominium Shared Facilities," which consist of all elevators serving the Hotel Condominium, all exterior windows and doors of each Hotel Condominium Unit, all balconies adjacent to each Hotel Condominium Unit and certain mechanical and electrical systems serving the Hotel Condominium;

iv.  The "Non-Residential Shared Facilities";

v.  The "Shared Facilities Restaurant";

    vi.   The "Spa Shared Facilities";

    vii.   The "Pool Deck Shared Facilities";

    viii.   The "Hotel Condominium Spa Shared Facilities"; and

    ix.   The "Shared Facilities Garage".

7.      Elcom Hotel is the owner of the Hotel Lot, Restaurant Lot, and Spa Lot (collectively, the "**Lots**").  Elcom Condo is the owner of nine hotel condominium units located on the Hotel Condominium Lot, Units 214, 215, 315, 415, 515, 615, 715, 1811, and 1812 (collectively, the "**Hotel Units**").

8.      On  October 17, 2013, the Debtors filed their Disclosure Statement in Support of Joint Plan of Liquidation [ECF No. 363] and Joint Plan of Liquidation [ECF No. 364].

9.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties-in-interest to the First Day Declaration of Thomas D. Sullivan (the "**Sullivan Declaration**") [ECF No. 6].

### III.    Assets to be Sold

10.      The Debtors, as seller thereto, and Stoneleigh Capital LLC, as purchaser (the "**Proposed Purchaser**"), have entered into that certain Purchase and Sale Agreement, dated as of October 21, 2013 (the "**Purchase Agreement**"), in connection with the sale (the "**Sale**") of substantially all of the Debtors' assets, as described in the Purchase Agreement (collectively, the "**Purchased Assets**").  The Purchased Assets include, but are not limited to, the Lots and the Hotel Units.

## IV.    Sale and Marketing Efforts

11.    On February 6, 2013, the Court entered an order [ECF No. 94] authorizing the Debtors' retention of Algon Capital, LLC d/b/a Algon Group ("**Algon**") and Troy Taylor as their chief restructuring officer ("**CRO**"), as of January 14, 2013.  Since the CRO has been in place, he has assisted the Debtors in preparing the Purchased Assets for a potential sale.  The CRO conducted a marketing process, which focused on contacting potential buyers for the Purchased Assets who would be a strategic fit and have the capabilities to operate a five-star property.

12.    As part of their marketing process, the Debtors prepared a detailed Confidential Investment Memorandum (the "**Memorandum**") for parties interested in purchasing the Purchased Assets, or a part thereof.  The Debtors signed approximately thirty confidentiality agreements with parties who expressed an interest in pursuing a transaction for the purchase of the Purchased Assets, or portions thereof.  Each interested party subsequently received the Memorandum.  The Debtors, through the CRO and Algon, conducted approximately 15 tours at One Bal Harbour for parties who indicated that they were interested in purchasing the Purchased Assets.

13.    The Debtors received two written letters of intent indicating an interest in purchasing substantially all of the Debtors' assets.  The Debtors reviewed each written offer and determined that the most favorable offer was from the Proposed Purchaser.  In the Debtors' opinion, the offer from the Proposed Purchaser is the highest and best offer received to date for the Purchased Assets, and the Debtors have entered into the Purchase Agreement.

4233.101/349140

8

## V.     Summary of Relief Requested

14.     Pursuant to the Purchase Agreement, the Debtors reserved the right to subject the Purchase Agreement to higher and better offers.  Accordingly, the Debtors request a hearing (the "**Auction Procedures Hearing**") for the Court to consider entry of an order (the "**Auction Procedures Order**") (i) approving the auction procedures, including, without limitation, the Break Fee, substantially in the form of Exhibit 1 to the Auction Procedures Order (the "**Auction Procedures**"), for additional bidding on the Purchased Assets, (ii) approving the form and manner of the Notice of Auction, attached as Exhibit "2" to the Auction Procedures Order, (iii) approving the form of the Purchase Agreement to be used in conjunction with the Auction Procedures, and (iv) scheduling a Sale Hearing (defined below) and/or a hearing to consider confirmation of a Chapter 11 plan to approve the Sale to the Proposed Purchaser or the Prevailing Bidder (as defined in the Auction Procedures).

15.     The Debtors intend to consummate the Sale, consistent with (i) the due process requirements of sections 363 and 365 of the Bankruptcy Code, and (ii) the sale process under the Auction Procedures.  By this Motion, the Debtors seek approval and implementation of a three-step sales process, as follows:

a.  an "Auction Procedures Hearing" at which the Debtor will seek approval of the Auction Procedures.  The Debtors request that the Auction Procedures Hearing take place on November 4, 2013, at 9:30 a.m.

b.  an "Auction" to be conducted in accordance with the Auction Procedures, assuming one or more "Qualifying Bids" are timely received as provided in the Auction

Procedures.   In the event of an Auction, the Debtors request that the Auction be conducted on December 5, 2013; and

c.   a "Sale Hearing" and/or a hearing to consider confirmation of a Chapter 11 plan proposed to be held at the earliest opportunity after conclusion of the Auction, at which time the Debtors will seek entry of an order (i) authorizing the Sale and/or confirming a Chapter 11 plan (if necessary), (ii) authorizing and approving the Purchase Agreement, (iii) approving procedures and rights related to assumption and assignment of certain executory contracts and unexpired leases, and (iv) granting related relief (the "**Sale Order**").  The Debtors request that the Sale Hearing take place on December 9, 2013.

16.     The Debtors expect to be able to meet their burden at the Auction Procedures Hearing and the Sale Hearing for demonstrating that the sale and marketing efforts to date have been appropriately conducted, with the Debtors, through the CRO and Algon, already having exposed the Purchased Assets to the target market (and the market at large) that would be interested in purchasing the Purchased Assets and capable of operating a five-star hotel.   As such, the deadlines proposed herein, as previously discussed amongst interested parties and scheduled by the Court [ECF No. 338], will appropriately balance the Debtors' objective in concluding the Sale with the highest and best offer for the benefit of the Debtors' estates with the need to thoroughly market the Purchased Assets and properly negotiate a transaction.

# VI.     Auction Procedures

17.     In order to ensure that the Debtors' estates are able to derive maximum value from the Purchased Assets, the Debtors negotiated in the Purchase Agreement the right to continue to solicit offers for the Purchased Assets, as provided in the Auction Procedures. The Debtors seek to adopt procedures that will foster continued competitive bidding among potential buyers without eliminating or discouraging any Qualifying Bids, including the present "stalking horse" bid by the Proposed Purchaser embodied in the Purchase Agreement.

18.     The entry of the Auction Procedures Order is a condition precedent to the consummation of the Sale, as contemplated by the Purchase Agreement. The Debtors believe that the proposed Auction Procedures constitute the best method of maximizing the value of the Purchased Assets through the continuation of a competitive sales process that will allow for the solicitation and submission of competitive Proposals (as set forth in the Auction Procedures, a competitive Proposal submitted in accordance with these procedures shall be deemed a "**Qualifying Bid**" and such bidder shall constitute a "**Qualifying Bidder**").

19.     In addition, the Purchase Agreement sets forth the terms and conditions under which the Proposed Purchaser will purchase the Purchased Assets from the Debtors and also permits the Debtors to solicit higher and better bids for the Purchased Assets. As discussed in more detail below, any Qualifying Bidder must submit a written Proposal (as defined in the Auction Procedures) upon the terms and conditions substantially as set forth in the Purchase Agreement (or pursuant to an alternative structure that is determined to be not less favorable than the terms and conditions of the Purchase Agreement) and be accompanied by, *inter alia*, mark-ups (clean and blackline) of the Purchase Agreement. Thus, the Debtors request that the Court approve, by entering the Auction Procedures Order, the form of Purchase Agreement.

20.    In order to participate in the bidding process and be deemed a Qualifying Bidder, each Proposal submitted to the Debtors must comply with the following requirements (as set forth in more detail in the Auction Procedures):

a.    State that such Interested Party (as defined in the Auction Procedures) offers to purchase the Purchased Assets, and, if applicable, fund a Plan, upon the terms and conditions substantially as set forth in the Purchase Agreement or pursuant to an alternative structure that is determined to be not less favorable than the terms and conditions of the Purchase Agreement;

b.    State such Interested Party is prepared to enter into a legally binding purchase and sale agreement or other agreement for the acquisition of Purchased Assets on terms and conditions no less favorable to the Debtors than the terms and conditions contained in the Purchase Agreement, including, without limitation, the purchase of the  Purchased Assets;

c.    Be accompanied by mark-ups (clean and blackline) of, as applicable, the (i) Purchase Agreement, (ii) the Initial Plan, and/or (iii) the other plan-related documents;

d.    State that such Interested Party is financially capable of consummating the transaction described in the Proposal;

e.    State that the Proposal is irrevocable until the closing of the Proposal if the Interested Party is chosen as the Prevailing Bidder (defined herein) at the Auction;

f.    Contain such financial and other information that will allow the Debtors, after consultation with the Hotel Association, to make a reasonable determination as to the

Interested Party's financial and other capabilities to consummate the transaction contemplated by the Proposal;

g.   Does not include (i) a right to request or entitlement to any transaction payment, commitment payment, break fee or similar type of payment or (ii) reimbursement of fees and expenses other than in connection with the implementation of the Proposal if the Interested Party is the Prevailing Bidder;

h.   Fully discloses the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, including the identification of any insider of the Debtors that will be participating in connection with such Proposal;

i.   Results in a value to the Debtors, in the Debtors' reasonable judgment after consultation with their financial and legal advisors and the Hotel Association, that is more than the aggregate of the value of the sum of: (A) the Purchase Price, plus (B) the amount of the Break Fee;

j.   (A) Does not contain any due diligence or financing contingencies of any kind; and (B) Contains evidence that the Interested Party has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to finance the purchase of the Purchased Assets, which evidence is reasonably satisfactory to the Debtors, after consultation with the Hotel Association;

k.   Includes evidence of authorization and approval from such Interested Party's board of directors (or other comparable governing) with respect to the submission, execution, delivery, and closing of the Proposal;

l.  Is accompanied by a $500,000.00 cash Deposit (as defined in the Auction Procedures) with an independent escrow agent selected by the Debtors (the "**Escrow Agent**"), pursuant to the escrow agreement to be provided by the Debtors to the Interested Parties (the "**Escrow Agreement**"); provided, however, that the Escrow Agent shall not be any professional currently retained by the Proposed Purchaser in this matter (*e.g.*, the Proposed Purchaser's legal counsel).  Alternatively, in the discretion of the Debtors, after consultation with the Hotel Association, the Deposit may be in the form of a letter of credit acceptable to the Debtors in the amount of $500,000.00; and

m.  State each Interested Party's and any other sponsor's experience in the five-star hotel industry, including ownership and management of hospitality assets, as well as any other information that it thinks could be important to the Debtors in their decision-making process regarding the Proposal and why the Interested Party believes that the Proposal offers a higher or otherwise better bid than the proposal submitted by the Proposed Purchaser;

21.     The submission of a Proposal and a Deposit by the Proposal Deadline shall constitute a binding and irrevocable offer on the part of the Interested Party.

22.     The Proposed Purchaser shall be deemed a Qualifying Bidder.

23.     The Auction Procedures also contain the following relevant terms:

a.  The Auction shall take place on December 5, 2013, at 10:00 a.m. (prevailing Eastern Time) at the offices of Kozyak Tropin & Throckmorton, P.A., 2525 Ponce de Leon Blvd., 9th Floor, Miami, Florida 33134, or at such other place and time as the Debtors shall notify all Qualifying Bidders, including the Proposed Purchaser, counsel

for the Hotel Association, counsel for the Proposed Purchaser, and the Office of the United States Trustee.

b.  In addition to the Debtors and their advisors, the only parties eligible to participate in the Auction shall be: (i) the Proposed Purchaser and its representatives and advisors; (ii) representatives and advisors of the Residential Association; (iii) representatives and advisors of the Hotel Association; (iv) those Qualifying Bidders who have submitted a Qualifying Bid to the Debtors (as well as such Qualifying Bidder's advisors and representatives); and (v) the Office of the United States Trustee for the Southern District of Florida.

c.  The Auction process shall be governed by the following procedures:

i.  The Debtors and their respective professionals shall direct and preside over the Auction, provided that the Debtors shall consult with the Hotel Association during the Auction.

ii.  On or before December 4, 2013, each Qualifying Bidder who has timely submitted a Qualifying Bid (as determined in accordance with these Auction Procedures) must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder does not attend the Auction, such Qualifying Bidder's Qualifying Bid shall nevertheless remain fully enforceable against such Qualifying Bidder until the date of the selection of the Prevailing Bid at the conclusion of the Auction.

iii.  All Qualifying Bidders who have timely submitted Qualifying Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction

with the understanding that the identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualifying Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other Qualifying Bidders throughout the entire Auction; provided that all Qualifying Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualifying Bidder attending the Auction in person.

iv.  All proceedings at the Auction shall be conducted before and transcribed by a court stenographer arranged by the Debtors and paid for by the Debtors' estates.

v.  At the commencement of the Auction, the Debtors shall announce and describe the terms of the Qualifying Bid that the Debtors have determined, after consultation with the Hotel Association, constitutes the highest or otherwise best offer among the Qualifying Bids and with which they intend to commence the Auction (the "**Pre-Auction Prevailing Bid**"), previously identified by the Debtors on December 3, 2013, in accordance with the Auction Procedures.

vi.  The Debtors may employ and announce at the Auction in the exercise of their business judgment, after consultation with the Hotel Association, additional procedural rules that are reasonable under the circumstances to obtain the highest or best Prevailing Bid (*e.g.*, the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (i) not materially inconsistent with the Auction Procedures, or inconsistent with the Bankruptcy

Code or any order of the Bankruptcy Court, and (ii) disclosed to each Qualifying Bidder at the Auction.

vii.   Bidding at the Auction will begin with the Pre-Auction Prevailing Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid (a "**Subsequent Bid**") is submitted by a Qualifying Bidder that the Debtors determine, in the exercise of their business judgment, and after consultation with the Hotel Association, (i) in the case of the first round, is greater than the value of the sum of (A) the Purchase Price in the Purchase Agreement plus (B) the amount of the Break Fee plus (C) $200,000.00; and (ii) in the case of subsequent rounds, is a higher or otherwise better bid by the minimum bid increment of $200,000.00, for each such round than the best bid of the previous round.  Each Qualifying Bidder must submit a Subsequent Bid that satisfies the minimum bid increment in each round of bidding to continue participating in the Auction.  Qualifying Bidders shall not be allowed to skip rounds.

viii.   Only the Proposed Purchaser and the Qualifying Bidders shall be entitled to make any Subsequent Bids at the Auction.

ix.   The Proposed Purchaser shall be entitled to include as part of any and all of its Subsequent Bids a credit for the amount of the Break Fee.

x.   All Qualifying Bidders shall have the right to submit additional bids and make additional modifications to the Proposal documents submitted by the Qualifying Bidder (or, in the case of Stoneleigh, the Purchase Agreement and other Stoneleigh Plan Related Documents), as applicable, at the Auction, provided

that any such modifications to the Proposal documents submitted by the Qualifying Bidder (or, in the case of Stoneleigh, the Purchase Agreement and other Stoneleigh Plan Related Documents), on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors than any prior bid by such Qualifying Bidder, as determined by the Debtors in their reasonable business judgment, after consultation with the Hotel Association.

      xi.   The Debtors shall announce all of the material terms of each Subsequent Bid at the Auction, and shall disclose their valuation of the total consideration offered in each such Subsequent Bid (and the basis for their determination) in order to (a) confirm that each Subsequent Bid meets the minimum bid increment set by the Debtors, after consultation with the Hotel Association, for the round in which such Subsequent Bid was submitted and (b) to provide a floor for further Subsequent Bids.

    d.  The Auction shall continue until the Debtors, in their reasonable discretion and in exercise of their business judgment, after consultation with the Hotel Association, identify which Qualifying Bidder has the highest or otherwise best bid (the "**<u>Prevailing Bid</u>**," and such bidder, the "**<u>Prevailing Bidder</u>**").

    e.  In announcing the Prevailing Bid, the Debtors shall announce the material terms of such bid, the basis for determining the total consideration and the resulting calculated benefit of such bid.  Upon the close of the Auction, the Debtors shall announce the Prevailing Bidder, and such Prevailing Bidder shall promptly thereafter submit fully executed revised documentation memorializing the terms of the Prevailing Bid to the

Debtors and the Hotel Association.  The Prevailing Bid may not be assigned to any party without the consent of the Debtors, after consultation with the Hotel Association.

f.   If an Auction is conducted, the party with the next highest Qualifying Bid or Subsequent Bid after the Prevailing Bid made by the Prevailing Bidder or otherwise next best Qualifying Bid at the Auction, as determined by the Debtors, in the exercise of their reasonable business judgment, and after consultation with the Hotel Association, will be designated as a backup bidder (the "**Backup Bidder**").  The Backup Bidder shall be required to keep its initial Qualifying Bid, if any, (or if the Backup Bidder submitted one or more Subsequent Bids at the Auction, its final Subsequent Bid) (the "**Backup Bid**") open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern time) on the date which is sixty (60) days after the date of the Sale Hearing (the "**Outside Backup Date**"); provided, however, that notwithstanding the foregoing, in no event shall the Outside Backup Date be later than one hundred and twenty (120) days following the date of closing of a transaction with the Prevailing Bidder or with the Backup Bidder (such transaction, an "**Alternative Transaction**").   Following the Sale Hearing, if the Prevailing Bidder fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Prevailing Bidder, the Debtors may designate the Backup Bidder to be the new Prevailing Bidder, and the Debtors will be authorized, but not required, to consummate the Alternative Transaction, with the Backup Bidder without further order of the Bankruptcy Court.  In such case, the defaulting Prevailing Bidder's deposit, if any, shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Prevailing Bidder.  The deposit of

the Backup Bidder, if any, shall be held by the Debtors until the earlier of 24 hours after (i) the closing of the transaction with the Prevailing Bidder and (ii) the Outside Backup Date.

g.   Absent irregularities in the conduct of the Auction, or reasonable and material confusion during the bidding, the results at the close of the Auction shall be final and no additional bids will be accepted or considered after the close of the Auction.

h.   If no Auction is held, then the proposal of the Proposed Purchaser as represented by the Purchase Agreement shall be deemed to be the Prevailing Bid and the Proposed Purchaser shall be deemed to be the Prevailing Bidder, and the Debtors will proceed to seek Bankruptcy Court approval for the transactions.

## VII.    Relief Requested and Basis Therefore

24.    By this Motion, the Debtors request that this Court, pursuant to Sections 363(b), (f), (k) and (m) of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure, approve the Purchase Agreement, and the sale of the Purchased Assets to the Proposed Purchaser free and clear of all free and clear of any and all claims (including "claims" as defined in Section 101(5) of the Bankruptcy Code), mortgages, pledges, liens, leasehold interests, security interests, interests, charges, encumbrances, setoffs, recoupments, cure claims, liabilities, debts, indebtedness, costs, damages, judgments or obligations of any character whatsoever and whenever arising, either before or after the Petition Date (collectively, the "**Encumbrances**"), subject to higher and better offers.

25.    This Court has the statutory authority to authorize the Sale free and clear of the Encumbrances.  Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell all or any

part of property of the estate, free and clear or any and all liens, claims, liabilities, encumbrances, or other interests if:

     a.   Applicable non-bankruptcy law permits sale of such property free and clear of such interest;

     b.   such entity consents;

     c.   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

     d.   such interest is in a bona fide dispute, or

     e.   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see In re Kellstrom Industries, Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002), *citing In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) is written in the disjunctive; the court may approve a sale "free and clear" of all liens provided at least one of the subsections is met).

     26.     Furthermore, property of the estate may be sold outside the ordinary course of business. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts interpreting section 363(b)(1) of the Bankruptcy Code have held that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of the debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith. *See In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D.

Del. 1991); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (D. Del. 1987). Here, each of those factors is met. Courts usually defer to the business judgment of a debtor or trustee in deciding whether or not to authorize the sale of the debtor's property outside the ordinary course of business. *See e.g., In re Continental Airlines, Inc.*, 780 F.2d 1223 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983); *In re Mason's Nursing Center, Inc.*, 73 E.R. 360, 362 (Bankr. S.D. Fla. 1987).

27.     Subject to the terms and conditions of the Purchase Agreement, the Debtors, in the sound exercise of their business judgment, have concluded that the sale of the Purchased Assets contemplated by the consummation of the Sale to the Proposed Purchaser (or to the highest and best bidder) presents the best option of maximizing the value of the Debtors' estates for the benefit of the Debtors' creditors.

28.     To date, the purchase price offered by the Proposed Purchaser is the highest and best offer for the Purchased Assets. In order to ensure the highest possible recovery for the Debtors' estates, the Debtors have required that their obligations to proceed under the Purchase Agreement be subject to the receipt of higher and better offers through a competitive Auction of the Purchased Assets, as set forth herein. Accordingly, the Debtors respectfully assert that ample business justification exists for the Sale.

29.     Pursuant to Section 363(f) of the Bankruptcy Code, the Debtors will sell the Purchased Assets free and clear of all Encumbrances, which will attach to the sale proceeds, except as described in the Purchase Agreement.

30.     The Proposed Purchaser and the Debtors have negotiated the Purchase Agreement, and the transactions contemplated thereby, in good faith and at arms-length.

Accordingly, the Debtors submit that the Proposed Purchaser should be entitled to the protections of section 363(m) of the Bankruptcy Code.

31.     The Debtors further request that, after the Sale Hearing and provided that the Debtors do not deem any other Qualifying Bids to be higher or better than the Qualifying Bid of the Proposed Purchaser, this Court enter the Sale Order authorizing and approving the Purchase Agreement, and the Debtors' execution of, entry into, and consummation of the Purchase Agreement.

### VIII.  <u>Approval of the Break Fee</u>

32.     The Purchase Agreement and Auction Procedures include a Break Fee.  The Break Fee at hand should also be approved in the form and amount set forth in this Auction Procedures Motion.  First, courts in other districts have approved break fees in approximately the same amount as measured in proportion to the proposed purchase price.  *See*, *e.g.*, *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999); *In re Reliant Energy Channelview LP*, 594 F.3d 200 (3d Cir. 2010); *see also In re Northstar Aerospace (USA) Inc.,* No 12-11817 (MFW) (Bankr. D. Del. June 27, 2012) (court approved breakup fee of 3.5% in connection with $70 million sale of assets); *In re AbitibiBowater Inc.*, No. 09-11296 (KJC) (Bankr. D. Del. June 25, 2010) (approving 6% breakup fee on $500 million commitment); *In re Tronox Inc.*, No. 09- 10156 (ALG) (Bankr. S.D.N.Y. Sept. 23, 2009) (approving a break-up fee and expense reimbursement totaling 3.7% of total purchase price).

33.     Second, courts in this district and elsewhere in Florida have also typically approved break fees in the range of three percent (3%), provided that there is a showing of benefit to the estate and that the break fees reflect the actual costs to the stalking horse.  *See*, *e.g.*, *In re*

*First Foliage, L.C.*, No. 10-27532 (LMI) (Bankr. S.D.Fla. Jan. 14, 2011) (approving bidding protections including, but not limited to, reimbursement of buyer's documented and reasonable out-of-pocket expenses up to $300,000); *In re Camtech Precision Manuf., Inc., et al.*, No. 10-22760 (PGH) (Bankr. S.D. Fla. Dec. 23, 2010) (approving break fee in amount of expenses incurred relating to sale up to maximum of $150,000); *In re Florida Extruders Int'l, Inc.*, No. 11-07761 (RKM) (Bankr. M.D. Fla. May 27, 2011) (approving break fee up to 3% of purchase price).

34.     Here, the proposed Break Fee, while not necessarily conventional in this district, nevertheless meets the standards for approval of such fees and should be approved. The Purchased Assets have a long history, replete with many thorny issues resulting from years of controversy and litigation surrounding the property. As a result, the Proposed Purchaser has spent a significant amount of time and resources up to this point and fully expects that its due diligence and transaction costs will significantly exceed 3% of the total purchase price, which is $390,000. As a result, the Break Fee proposed here is especially warranted in this particular transaction based on existing facts and circumstances to ensure that the Proposed Purchaser does not suffer a loss due to its expenses in helping to expose the Purchased Assets to the market and creating a floor for bidding, as well as providing assurances to other potential bidders that another party has completed its due diligence and found the Purchased Assets to have value.

## IX.    The Sale Hearing

35.     Subject to Court approval, the Sale Hearing shall be held before the Court on December 9, 2013, or at such earlier date as counsel and interested parties may be heard.

36.     Objections, if any, to the relief requested in this Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Southern District of Florida, Miami Division, Claude Pepper Federal Building, 51 S.W. First Ave. #1510, Miami, Florida 33130-1669 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern Time) on the third business day before the Auction Procedures Hearing (the "**Auction Procedures Objection Deadline**"); and (d) be served upon (i) counsel to the Debtors, (ii) counsel to the Proposed Purchaser, and (iii) the Office of the United States Trustee, in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on the same day.

37.     Objections, if any, to the Sale contemplated by the Purchase Agreement must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Southern District of Florida, Miami Division, Claude Pepper Federal Building, 51 S.W. First Ave. #1510, Miami, Florida 33130-1669 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern Time) on the earlier of (i) seven days prior to the date of the Auction or (ii) December 2, 2013 (the "**Sale Objection Deadline**"); and (d) be served upon (i) counsel to the Debtors, (ii) counsel to the Proposed Purchaser, and (iii) the Office of the United States Trustee, in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on the same day.

38.     On or before ten (10) business days after entry of the Auction Procedures Order, the Debtors will cause a notice, substantially in the form attached as Exhibit 2 to the Auction Procedures Order (the "**Notice of Auction**"), to be sent by first-class mail postage prepaid, to the following: (a) all creditors or their counsel known to the Debtors to assert a lien (including any

security interest), claim, right, interest, or encumbrance of record against all or any portion of the Purchased Assets; (b) the Office of the United States Trustee; (c) the Securities and Exchange Commission; (d) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the Sale, may have claims, contingent or otherwise, in connection with the Debtors' ownership of the Purchased Assets or have any known interest in the relief requested by this Auction Procedures Motion; (e) the state and local environmental agencies in the jurisdictions where the Debtors own or lease real property; (f) counsel to the Proposed Purchaser; (g) counsel to the prepetition and postpetition secured creditors (collectively, the "**Secured Creditors**"); (h) the United States Attorney's office; (i) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (j) all parties to any litigation involving the Debtors; (k) all counterparties to any executory contract or unexpired lease of the Debtors; (l) all other known creditors and interest holders of the Debtors; and (m) all potential bidders previously identified or otherwise known to the Debtors.

39.     In addition to the foregoing, as soon as practicable, but in any event no later than five (5) business days after the entry of the Auction Procedures Order, the Debtors shall publish the Notice of Auction (modified for publication, as necessary) in the Miami Herald and the Daily Business Review (Miami-Dade Edition).

## X.     Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases

40.     In connection with the Sale, the Auction, and the entry of the Sale Order (whether the Prevailing Purchaser is the Proposed Purchaser or another Qualifying Bidder), the Debtors

request this Court's approval of the following procedures for the assumption and assignment of certain executory contracts and unexpired leases:

a.   On or before ten (10) business days after the entry of the Auction Procedures Order, the Debtors shall serve by first class mail or hand delivery the notice of potential assumption and assignment of the Scheduled Contracts (as defined in the Cure Notice), substantially in the form attached hereto as Exhibit 3 to the Auction Procedures Order (the "**Cure Notice**"), on all non-Debtor parties to the Scheduled Contracts.  The Cure Notice shall identify the Scheduled Contract and provide the cure amount that the Debtors believe must be paid to cure all prepetition defaults under the Scheduled Contracts (the "**Cure Amounts**", each default a "**Cure Amount**").

b.   Unless the non-Debtor party to a Scheduled Contract (i) files an objection (the "**Cure Amount Objection**") to (a) its scheduled Cure Amount, (b) the assumption and assignment to the Proposed Purchaser of the Scheduled Contracts, or (c) the ability of the Proposed Purchaser to provide adequate assurance of future performance by the Sale Objection Deadline, and (ii) serves a copy of the Cure Amount Objection so as to be received no later than the Sale Objection Deadline to the Debtors, counsel for the Debtors, counsel to the Proposed Purchaser, and the Office of the United States Trustee, such non-Debtor party shall be deemed to consent to the Cure Amount proposed by the Debtors and shall be forever barred and estopped from objecting to the Cure Amount, and from asserting that (A) any additional amounts are due or defaults exist, (B) any conditions to assumption and assignment must be satisfied under such Scheduled Contract before it can be assumed and assigned to the Proposed Purchaser, (C) any

required consent to assignment has not been given, or (D) the Proposed Purchaser has not provided adequate assurance of future performance.

c.  If the Proposed Purchaser is not the Prevailing Bidder, the non-Debtor parties to the Scheduled Contracts shall have until the Sale Hearing (the "**Adequate Assurance Objection Deadline**") to object to the assumption and assignment of such Scheduled Contract solely on the issue of whether the Prevailing Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (an "**Adequate Assurance Objection**"); provided, however, that if the Proposed Purchaser is the Prevailing Bidder, all Adequate Assurance Objections must be filed by the Sale Objection Deadline; provided, further, however, that all objections to the assumption and assignment of Scheduled Contracts that do not relate to the issue of whether the Prevailing Bidder can provide adequate assurance of future performance must be filed by the Sale Objection Deadline.

d.  In the event of a dispute regarding: (a) any Cure Amount with respect to any Scheduled Contract; (b) the ability of the Prevailing Bidder (including the Proposed Purchaser) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption, the Cure Amounts shall be paid as soon as reasonably practicable after the closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtors, with the consent of the Proposed Purchaser or other Prevailing Bidder, as applicable, are authorized to settle any dispute regarding the amount of any

Cure Amount or assignment to the Prevailing Bidder (including the Proposed Purchaser) without any further notice to or action, order or approval of the Court.

e.    In the event any party to a Scheduled Contract timely objects to the calculation of the Cure Amount for such Scheduled Contract designated by the Debtors and alleges that the Cure Amount for such Scheduled Contract exceeds the amount calculated by the Debtors for such Scheduled Contract (the amount of such excess Cure Amount for the Scheduled Contract in question, the "**Excess Cure Amount**"), then, (i) the Debtors shall provide written notice to Proposed Purchaser of such Cure Amount objection and the amount of such Excess Cure Amount for each of the proposed Assumed Contracts, and (ii) Proposed Purchaser shall, within three business days after receipt of such notice from the Debtors either (a) notify Debtors that Proposed Purchaser elects not to assume such Scheduled Contract if the Excess Cure Amount is in excess of ten percent of the Cure Amount for such Scheduled Contract and (b) take no action with respect to such notice, in which case, such Scheduled Contract shall continue to be assumed by Proposed Purchaser at the Closing.  At the Closing, the Debtors shall retain the aggregate Excess Cure Amounts for all Assumed Contracts in escrow and shall use commercial reasonable efforts to resolve such discrepancy with such Scheduled Contract parties after the Closing.  In the event any such discrepancies are resolved by the Debtors, then, the Debtors shall refund such Excess Cure Amounts to Proposed Purchaser less any out of pocket expenses incurred by the Debtors to resolve such matter(s).  In the event that the Debtors do not resolve such discrepancy with such Scheduled Contract party in question,

then, Debtors shall deliver such Excess Cure Amount to the Scheduled Contract parties in question.

f.   Within two (2) business days after the Closing Date, the Debtors will file a complete list of the Scheduled Contracts, substantially in the form attached hereto as Exhibit 4 to the Auction Procedures Order (the "**Assumption Notice**"), that were assumed and assigned, as of the Closing Date, to the Proposed Purchaser or to the Prevailing Bidder, to the extent that the Prevailing Bidder is not the Proposed Purchaser.

## XI.   Notice

41.   A copy of this Motion, with attached exhibits, is being served on all creditors and interested parties in these cases.  Moreover, notice of the Sale and Auction Procedures will be provided as specified in the Auction Procedures Order.  Accordingly, the Debtors request that the Court enter an order finding that such notice of this Auction Procedures Motion is adequate and sufficient and complies with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

## XII.   Waiver of Stays

42.   At the Sale Hearing, given the Debtors' and the Proposed Purchaser's interest in proceeding expeditiously, the Debtors will request that this Court enter an order waiving the 14-day stays set forth in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure and providing that the Sale Order be immediately enforceable and that the closing under the Purchase Agreement may occur immediately.

**WHEREFORE**, the Debtors respectfully request entry of an order, substantially in the form of the proposed order attached hereto as Exhibit "B", (a) granting the relief requested herein; and (b) granting such other relief as is just and appropriate.

4233.101/349140                                    30

Dated:  October 21, 2013

Respectfully submitted,

**KOZYAK TROPIN & THROCKMORTON, P.A.**
*Counsel for the Debtors*
2525 Ponce de Leon Blvd., 9th Floor
Miami, Florida 33134
Tel.:  (305) 372-1800
Fax:  (305) 372-3508
E-mail: cwt@kttlaw.com
         clc@kttlaw.com
         vfa@kttlaw.com

By: /s/ Corali Lopez-Castro
         Charles W. Throckmorton
         Florida Bar No. 286192
         Corali Lopez-Castro
         Florida Bar No. 863830
         Vincent F. Alexander
         Florida Bar No. 68114

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 21, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day (i) via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel of record or pro se parties who are authorized to receive electronically Notices of Electronic Filing in this bankruptcy case; and (ii) prepaid, first class U.S. mail upon all parties on the attached Service List.

By: /s/ Corali Lopez-Castro
         Corali Lopez-Castro

4233.101/349140

**ELCOM HOTEL & SPA, LLC and
ELCOM CONDOMINIUM, LLC**
**Case Nos. 13-10029-RAM & 13-10031-RAM**

## MASTER SERVICE LIST

**Served via electronic mail (ECF) to:**

Paul J. Battista, Esq on behalf of Interested Party Jorge J. Perez, as Receiver Only and not in his Individual Capacity pbattista@gjb-law.com, gjbecf@gjb-law.com

Paul J. Battista, Esq on behalf of Interested Party McDonald Hopkins, LLC pbattista@gjb-law.com, gjbecf@gjb-law.com

Francis L. Carter, Esq. on behalf of Mediator Francis L. Carter flc@katzbarron.com, lcf@katzbarron.com

Ileana Espinosa Christianson, Esq. on behalf of Creditor Branch Banking & Trust Company ileana.christianson@gray-robinson.com, jceide@gray-robinson.com;lnegron@gray-robinson.com;ileana.christianson@gray-robinson.com

Ileana Espinosa Christianson, Esq. on behalf of Defendant Branch Banking and Trust Company, as Successor In Interest to Colonial Bank f/k/a Colonial Bank, N.A., a national banking association, by asset acquisition from the FDIC in its capacity as receiver fo ileana.christianson@gray-robinson.com, jceide@gray-robinson.com;lnegron@gray-robinson.com;ileana.christianson@gray-robinson.com

Joseph A. DeMaria on behalf of Defendant JYM, Ltd jad@tewlaw.com, ecs@tewlaw.com;mm@tewlaw.com;dturken@tewlaw.com

Joseph A. DeMaria on behalf of Defendant We Valet, LLC jad@tewlaw.com, ecs@tewlaw.com;mm@tewlaw.com;dturken@tewlaw.com

Joseph A. DeMaria on behalf of Defendant Jorge E Arevalo jad@tewlaw.com, ecs@tewlaw.com;mm@tewlaw.com;dturken@tewlaw.com

Brian S Dervishi on behalf of Defendant Ocean Bank bdervishi@wdpalaw.com, service@wdpalaw.com

Michael J. Eisler, Esq. on behalf of Defendant Bayview Loan Servicing, LLC meisler@strauseisler.com

John H Genovese, Esq on behalf of Creditor Berkowitz Pollack Brant jgenovese@gjb-law.com, hburke@gjb-law.com;gjbecf@gjb-law.com

Christopher A Jarvinen on behalf of Creditor 10295 Collins Avenue, Hotel Condominium Association, Inc.
cjarvinen@bergersingerman.com, efile@bergersingerman.com

Harris J. Koroglu on behalf of Creditor ValleyCrest Landscape Maintenance, Inc.
hkoroglu@shutts.com, jgoodwin@shutts.com

Richard H Malchon, Jr on behalf of Other Professional BMC-The Benchmark Management
Company richard.malchon@arlaw.com, katie.takas@arlaw.com

Aleida Martinez Molina on behalf of Interested Party Village of Bal Harbour, Florida
amartinez@wsh-law.com, jfuentes@wsh-law.com

Nicole R Messamore on behalf of Creditor Freshpoint South Florida, Inc.
nmessamore@sblawfirmfl.com, general@sblawfirmfl.com

Barry E Mukamal
YPERLINK"mailto:bankruptcy@marcumllp.com"bankruptcy@marcumllp.com, FL64@ecfcbis.com

Timothy J Norris, Esq on behalf of Creditor Duane Morris LLP tjnorris@duanemorris.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Jeffrey J Pardo on behalf of Creditor 10295 Collins Avenue, Hotel Condominium Association, Inc.
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor 10295 Collins Investment Inc.
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor 133812 Canada, Inc.
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor 513 AMREI LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Bal Harbour 1017, LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor George J Schafer LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Indulgence at Bal Harbour, LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Josemar LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor K & K Realty Associates LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Ku Trading LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor TAS PROP LLC jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Unit #1112 Regent Bal Harbour LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Unit #1113 Regent Bal Harbour LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Unit #714 Regent Bal Harbour, LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Westquality Inc.
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Arline Shenker jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Ashok Kumar jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Claire Daniels jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Denis Trupkin jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Edward Tam jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Francis Leo Doyle jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Gary Daniels jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Hassan Abbass jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Julia Abbass jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Kinda Farhat jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Lewis Shenker jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Lillian Glowinsky jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Linda Trupkin jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Michael Konig jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Michael C. Murr jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Naim Farhat jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Nicholaos Rokanas jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Noel A. D'Silva jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Norman Glowinsky jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Patricia Puglisi jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Penelope Laskaris jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Puglisi Joseph jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Tara Hart jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Vimal M. Fonseca jpardo@pardogainsburg.com

Raquel A Rodriguez on behalf of Interested Party Jorge J Perez rrodriguez@mcdonaldhopkins.com, ccorzo@mcdonaldhopkins.com

William G Salim Jr on behalf of Interested Party Mark Pordes wsalim@mmsslaw.com, cleibovitz@mmsslaw.com

Steven D Schneiderman on behalf of U.S. Trustee Office of the US Trustee Steven.D.Schneiderman@usdoj.gov

Paul Steven Singerman, Esq on behalf of Creditor 10295 Collins Avenue, Hotel Condominium Association, Inc.
singerman@bergersingerman.com, mdiaz@bergersingerman.com;efile@bergersingerman.com

Adam I Skolnik on behalf of Creditor HSA Investments I, LLC askolnik@skolniklawpa.com, fskolnik@skolniklawpa.com

Adam I Skolnik on behalf of Creditor HSA Investments II, LLC askolnik@skolniklawpa.com, fskolnik@skolniklawpa.com

Adam I Skolnik on behalf of Creditor HSA Investments III, LLC askolnik@skolniklawpa.com, fskolnik@skolniklawpa.com

Peter A Tappert, Esq. on behalf of Defendant Ocean Bank ptappert@wdpalaw.com, service@wdpalaw.com

Charles M Tatelbaum on behalf of Creditor 10295 Collins Avenue Residential Condominium Association, Inc.
ctatelbaum@hinshawlaw.com, csmith@hinshawlaw.com;carrese@hinshawlaw.com;gfarmer@hinshawlaw.com;lportuondo@hinshawlaw.com;esegarra@hinshawlaw.com;clucas@hinshawlaw.com

Charles M Tatelbaum on behalf of Plaintiff 10295 Collins Avenue Residential Condominium Association, Inc.
ctatelbaum@hinshawlaw.com, csmith@hinshawlaw.com;carrese@hinshawlaw.com;gfarmer@hinshawlaw.com;lportuondo@hinshawlaw.com;esegarra@hinshawlaw.com;clucas@hinshawlaw.com

Charles M Tatelbaum on behalf of Plaintiff 10295 Collins Avenue, Hotel Condominium Association, Inc.
ctatelbaum@hinshawlaw.com,
csmith@hinshawlaw.com;carrese@hinshawlaw.com;gfarmer@hinshawlaw.com;lportuondo@hinshawlaw.com;esegarra@hinshawlaw.com;clucas@hinshawlaw.com

Charles W Throckmorton, Esq on behalf of Debtor Elcom Condominium, LLC cwt@kttlaw.com,
lf@kttlaw.com;ycc@kttlaw.com

Charles W Throckmorton, Esq on behalf of Debtor Elcom Hotel & Spa, LLC cwt@kttlaw.com,
lf@kttlaw.com;ycc@kttlaw.com

Charles W Throckmorton, Esq on behalf of Interested Party Elcom Condominium, LLC
cwt@kttlaw.com, lf@kttlaw.com;ycc@kttlaw.com

David S Turken on behalf of Defendant JYM, Ltd dturken@tewlaw.com

David S Turken on behalf of Defendant We Valet, LLC dturken@tewlaw.com

David S Turken on behalf of Defendant Jorge E Arevalo dturken@tewlaw.com

Albert J Vitto, III on behalf of Creditor Yun Maintenance Services, Inc.
vitto@slpalaw.com

Jason Weaver on behalf of Creditor HSA Investments I, LLC jasonweaveresq@gmail.com,
akaplan@hagenlawfirm.com

Jason Weaver on behalf of Creditor HSA Investments II, LLC jasonweaveresq@gmail.com,
akaplan@hagenlawfirm.com

Jason Weaver on behalf of Creditor HSA Investments III, LLC jasonweaveresq@gmail.com,
akaplan@hagenlawfirm.com

Jason Weaver on behalf of Defendant HSA Investments I, LLC jasonweaveresq@gmail.com,
akaplan@hagenlawfirm.com

Jason Weaver on behalf of Defendant HSA Investments II, LLC jasonweaveresq@gmail.com,
akaplan@hagenlawfirm.com

Jason Weaver on behalf of Defendant HSA Investments III, LLC jasonweaveresq@gmail.com,
akaplan@hagenlawfirm.com

Doron Weiss on behalf of Plaintiff Elcom Hotel & Spa, LLC dweiss@barthet.com

Doron Weiss on behalf of Special Counsel Paul D. Breitner dweiss@barthet.com

**Served via U.S. Mail to:**

OBH Funding, LLC
3000 John Deere Road
Toano, VA 23168

Illy Caffe North America
800 Westchester Avenue
Suite S440
Rye Brook, NY 10573

F9 Investments, LLC f/k/a ANO, LLC
c/o Eric Ostroff, Esq.
Meland Russin & Budwick, P.A.
200 South Biscayne Blvd., Suite 3000
Miami, FL 33131

Florida Dept. of Revenue
P.O. Box 6668
Tallahassee, FL 32314

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Thomas D. Sullivan
3000 John Deere Road
Toano, VA 23168

U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA 30326-1382

Steven C. Cronig, Esq.
Mitchell R. Bloomberg, Esq.
Hinshaw & Culbertson, LLP
2525 Ponce de Leon, Suite 400
Coral Gables, FL 33134

Esperanza Segarra, Esq.
Hinshaw & Culbertson, LLP
2525 Ponce de Leon, Suite 400
Coral Gables, FL 33134

Paul W. Linehan, Esq.
McDonalds Hopkins LLC
600 Superior Aveue, East, Suite 2100
Cleveland, OH 44114

348249.1