**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                           Chapter 11

ELCOM HOTEL & SPA, LLC and                       Case No. 13-10029-BKC-RAM
ELCOM CONDOMINIUM, LLC                           Case No. 13-10031-BKC-RAM

                    Debtors.                     (Jointly Administered)

_____/

**PRELIMINARY OBJECTION OF 10295 COLLINS AVENUE, HOTEL**
**CONDOMINIUM ASSOCIATION, INC. TO DEBTORS' DISCLOSURE**
**STATEMENT IN SUPPORT OF JOINT PLAN OF LIQUIDATION**
**OF ELCOM HOTEL & SPA, LLC AND ELCOM CONDOMINIUM, LLC**

                    BERGER SINGERMAN LLP
                    1450 Brickell Avenue
                    Miami, Florida 33131
                    Telephone:  (305) 755-9500
                    Facsimile:  (305) 714-4340
                    Paul S. Singerman, Esq.
                    Christopher A. Jarvinen, Esq.
                    Debi S. Galler, Esq.
                    Email: singerman@bergersingerman.com
                           cjarvinen@bergersingerman.com
                           dgaller@bergersingerman.com

                    *Counsel for the 10295 Collins Association,*
                    *Hotel Condominium Association, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................1

GENERAL BACKGROUND.................................................................................9

PROCEDURAL BACKGROUND...........................................................................10

ARGUMENT.......................................................................................................11

I.     The Hearing to Consider Whether Conditionally to Approve the Disclosure Statement Should be Adjourned Because the Debtors Have Violated the Notice Requirements of Bankruptcy Rules 2002(b) and 3017(a). ................................11

II.    The Disclosure Statement Lacks Adequate Information and Should Not Be Conditionally Approved...................................................................................14

      A.     Under Section 1125 of the Bankruptcy Code, a Disclosure Statement Cannot be Approved Unless it Provides Adequate Information............................14

      B.     Inadequate Information Regarding the Trust and the Plan Administrator.............16

      C.     Insufficient Information Regarding Third Party Releases. ....................20

      D.     Inadequate Disclosure Regarding Possible Distributions Under the Plan to Jorge Arevalo. ...........................................................................22

      E.     Inadequate Disclosure Regarding the Reason the Debtors Have Decided to Not to Apportion Any Administrative Expense Claims Against the Chapter 11 Estate of Elcom Condominium. ..........................................23

      F.     Inadequate Disclosure Regarding Distributions to the Holders of Allowed General Unsecured Claims in Elcom Hotel's Class 4 and Elcom Condominium's Class 3.......................................................................24

      G.     Insufficient Information Regarding What Creditors Are Included in Elcom Hotel's Class 3 ("General Unsecured Vendor Claims").........................25

      H.     Insufficient Information Regarding the Debtors' Determination to Provide a Fifty (50%) Distribution to the Holders of Allowed Claims in Elcom Hotel's Class 3 ("General Unsecured Vendor Claims").........................25

      I.     Inadequate Disclosure Regarding the Scope of the Injunction. .............26

      J.     Inadequate Disclosure Regarding Claims Objections...........................26

      K.     Inadequate Disclosure Regarding the Lack of Substantive Consolidation............27

L.    Inadequate Disclosure Regarding the Liquidation Analysis.................................29

M.    Inadequate Disclosure to Justify the Debtors' Assertion that $50,000 is Sufficient to Wind-Down the Debtors and to Fund the Trust...............................32

N.    Other Inadequate Disclosures. ..............................................................32

III.    The Disclosure Statement Cannot Be Approved Because the Plan is Patently Unconfirmable. .........................................................................................34

A.    Ample Legal Authority Exists to Deny Approval of a Disclosure Statement that Describes a Fatally Flawed Plan. ...................................................34

B.    The Plan Includes Gerrymandered Classes of Claims. ...........................................35

C.    The Plan Does not Meet the "Good Faith" Requirement. .....................................37

IV.    The Solicitation Package Should Include the Hotel Association's Letter in Opposition to the Plan..........................................................................................38

RESERVATION OF RIGHTS .........................................................................39

CONCLUSION.........................................................................................39

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps">Cases</span>

*Bank of America Nat'l Trust & Sav. Ass'n* v. *203 N. LaSalle St. P'Ship*,
  526 U.S. 434 (1999) ................................................................................................8

*Deutsche Bank AG* v. *Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005) .....................................................................20

*In re 266 Washington Assocs.*,
  141 B.R 275 (Bankr. E.D.N.Y. 1992) ...................................................................34

*In re Aspen Limosine Service, Inc.*,
  193 B.R. 325 (D. Colo. 1996) ...............................................................................15

*In re Boston Post Road, Ltd., P'ship.*,
  21 F.3d 477 (2d Cir. 1994) ....................................................................................36

*In re Condere Corp.*,
  228 B.R. 615 (Bankr. S.D. Miss. 1998) ................................................................38

*In re Copy Crafters Quickprint, Inc.*,
  92 B.R. 973 (Bankr. N.D.N.Y. 1995) ....................................................................15

*In re Crowthers McCall Pattern, Inc.*,
  120 B.R. 279 (Bankr. S.D.N.Y. 1990) .............................................................15, 16

*In re Curtis Center Ltd. P'ship.*,
  195 B.R. 631 (Bankr. E.D. Pa. 1996) ....................................................................35

*In re Dow Corning Corp.*,
  280 F.3d 648 (6th Cir. 2002) .................................................................................20

*In re the Duncraggen Realty Cor*p.,
  No. 92-B-40605 (PCB), 2007 WL 2492782 (Bankr. S.D.N.Y. Aug. 29, 2007) .....................12

*In re Filex, Inc.*,
  116 B.R. 37 (Bankr. S.D.N.Y. 1990) .....................................................................34

*In re First Humanics Corp.*,
  124 B.R. 87 (Bankr. W.D. Mo. 1991) ....................................................................12

*In re Friedman's Inc.*,
  356 B.R. 758 (Bankr. S.D. Ga. 2005) ....................................................................20

iii

*In re Main Street AC, Inc.*,
    234 B.R. 771 (Bankr. N.D. Cal. 1999) ..................................................................34

*In re Mt. Carbon Metro. Dist.*,
    242 B.R. 18 (Bankr. D.Colo. 1999) ......................................................................37

*In re Mercedes Homes, Inc.*,
    431 B.R. 869 (Bankr. S.D. Fla. 2009) ...................................................................20

*In re Oneida Motor Freight, Inc.*,
    848 F.2d 414 (3d Cir. 1988) ................................................................................15

*In re Phoenix Petroleum Co.*,
    278 B.R. 385 (Bankr. E.D. Pa. 2001) ...................................................................35

*In re Quigley Co.*,
    377 B.R. 110 (Bankr. S.D.N.Y. 2007) ..................................................................35

*In re R&G Properties, Inc.*,
    No. 08-10876, 2009 WL 2043873 (Bankr. D. Vt. July 6, 2009) .............................35

*In re Tucker Freight Lines, Inc.*,
    62 B.R. 213 (Bankr. W.D. Mich. 1986) ................................................................38

*In re Westmoreland Oil Dev. Corp.*,
    157 B.R. 100 (S.D. Tex. 1993) .............................................................................14

*Momentum Mfg. Corp.* v. *Employee Creditors Comm. (In re Momentum Mfg. Corp.)*,
    25 F.3d 1132 (2d Cir. 1994) ..........................................................................14, 16

## STATUTES

11 U.S.C. § 1103(c) ....................................................................................................38

11 U.S.C. § 1125(a)(1) ................................................................................................16

11 U.S.C. § 1129(a)(3) ................................................................................................36

11 U.S.C. § 1129(a)(7) ................................................................................................29

## BANKRUPTCY RULES

Bankruptcy Rule 2002(b) .......................................................................................11, 12

Bankruptcy Rule 3017(a) .......................................................................................11, 12

10295 Collins Avenue, Hotel Condominium, Inc. (the "Hotel Association"), by and through its undersigned counsel, files this preliminary objection ("Objection")[1] to the conditional approval of the *Disclosure Statement in Support of Joint Plan of Liquidation of Elcom Hotel & Spa, LLC and Elcom Condominium, LLC*, dated October 17, 2013 [ECF No. 363] (the "Disclosure Statement"), filed jointly by Elcom Hotel & Spa, LLC ("Elcom Hotel") and Elcom Condominium, LLC ("Elcom Condominium" and together with Elcom Hotel, collectively, the "Debtors" or "Elcom").[2]

In support of this Objection, the Hotel Association respectfully represents as follows:

## PRELIMINARY STATEMENT

In seeking to have this Court hold a hearing to consider whether to approve the Disclosure Statement on a conditional basis for the *Joint Plan of Liquidation of Elcom Hotel & Spa, LLC and Elcom Condominium, LLC*, dated October 17, 2013 [ECF No. 364] (the "Plan") filed 14 days ago, the Debtors are placing the proverbial "cart before the horse" in these chapter 11 cases.  The Debtors have opted to ignore long-standing rules, practices and customs with respect to the sale of assets pursuant to a plan.  In their headlong rush to obtain conditional approval of the Disclosure Statement prior to completing the sale of their assets, the Debtors are also trampling the due process rights of the Hotel Association and the other unsecured creditors of the Debtors' estates to have a fair and meaningful opportunity to review the Disclosure Statement, the Plan, and equally important, the proposed Trust Agreement[3] that the Debtors

---

[1]    The Hotel Association reserves all rights to supplement or amend this preliminary Objection.

[2]    In the event that any other party in interest files an objection to the approval of the Disclosure Statement, and to the extent not inconsistent with the arguments made herein, the Hotel Association incorporates by reference such other objection(s), even if later withdrawn by the party filing such objection(s).

[3]    Any term not defined herein shall have the meaning ascribed to it in the Plan.

failed to file with the Disclosure Statement even though the Trust created by the Trust

Agreement represents the core piece of the Debtors' proposed liquidation.[4]

The steps in the process of selling a debtor's business within the context of a plan are

well-known and generally follow a familiar, carefully-structured order.  First, the debtor obtains

court approval for bidding/auction procedures.  Then, if there are two or more entities that

submit competing qualified proposals, the debtor holds an auction at which the entity submitting

the highest and/or otherwise best bid is declared the successful bidder.  Shortly thereafter, the

debtor negotiates with interested parties and files the proposed disclosure statement, plan and

related documents reflecting, among other things, the distributions that will be made to creditors

from the net proceeds obtained in the sale process.  Finally, the debtor files a motion complying

with, among other requirements, the 28-day notice period set forth in Rule 2002(b) and Rule

3017(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to obtain

approval of the disclosure statement and related solicitation procedures, and, finally, the sale

closing generally takes place concurrently or soon after the plan is confirmed.

Here, in marked contrast, the Debtors have inexplicably lumped together all of these

steps, and in the process, the Debtors have created a confusing mishmash of a sale and plan

process whereby they seek, on a few days notice to interested parties, to have the Court approve

*concurrently* the proposed bidding/auction procedures that will govern the future sale of the

Debtors' assets as well as, on a conditional basis, approve the Disclosure Statement which, in

---

[4]     In fact, the Debtors do not intend to file the proposed Trust Agreement until Friday, November 1st (a date
which is only three days prior to the Court's hearing, scheduled to take place on Monday November 4th at 9:30
a.m., to consider whether conditionally to approve the Disclosure Statement).  *See* Plan, § 1.1.79 (noting that
Trust Agreement will be attached as Exhibit "A" to the Plan) and Exhibit "A" to the Plan (stating that the
documents comprising this exhibit will not be filed until three days prior to the Court's hearing to consider
whether conditionally to approve the Disclosure Statement).  The Hotel Association submits that the Debtors'
failure to file the proposed Trust Agreement with the Disclosure Statement has violated the notice and due
process requirements for the approval of the Disclosure Statement.

turn, will result in the Debtors soliciting the plan for voting by creditors in November *prior* to the conclusion of the sale process in December.

Due to the fact that the immediate distributions to be made under the proposed Plan to the unsecured creditors in the Debtors' cases rely entirely upon the net proceeds from the sale of the Debtors' assets, and given the additional fact that the Purchase and Sale Agreement ("Stoneleigh PSA") submitted by Stoneleigh Capital, LLC ("Stoneleigh"), provides Stoneleigh extensive rights to credit against the purchase price for a whole host of items (the amounts of which have not even been estimated in the Disclosure Statement but could amount to hundreds of thousands or millions of dollars),[5] the Hotel Association's preliminary analysis indicates that it is quite possible that the general unsecured creditors holding claims against Elcom Hotel in Class 4 ("General Unsecured Claims"), estimated by the Debtors to total between $14 million to $80 million, will receive absolutely **no distributions** under the Plan.

Tellingly, the Disclosure Statement fails to provide any percentage distribution range to the allowed claims of general unsecured creditors in either Elcom Hotel's Class 4 (one of the two voting classes of unsecured claims in Elcom Hotel) as well as the only voting class of general unsecured creditors in Elcom Condominium (Class 3).[6]  The Hotel Association believes that this fact alone requires denial of the conditional approval of the Disclosure Statement because the Debtors should not be able to solicit a plan where the general unsecured creditors have no idea of the percentage distribution that they may anticipate on their allowed claims.

Rather, the solicitation process related to the Plan should occur after the auction/sale process has concluded so that the Disclosure Statement sent out to creditors as a part of the solicitation process will describe verifiable percentage distribution ranges to the holders of

---

[5]    *See* Stoneleigh PSA, §§ 6.2.1 - 6.2.13.

[6]    *See* Disclosure Statement, pp. 6-7.

general unsecured claims, and, in turn, the Hotel Association and the Debtors' other general unsecured creditors in Class 4 of Elcom Hotel and Class 3 of Elcom Condominium will know, with certainty, the distributions that they can expect to receive under the Plan. Otherwise, the Debtors have not provided general unsecured creditors adequate information at the time that they vote for or against confirmation of the Plan.

Moreover, despite the Debtors' glaring failure to satisfy the 28-day notice requirement embedded in Bankruptcy Rules 2002(b) and 3017(a), the Debtors still seek to have this Court conditionally approve the Disclosure Statement. The Hotel Association submits that the Debtors' failure to abide by the mandated, 28-day notice provision represents sufficient cause in of itself to adjourn the hearing on the Disclosure Statement. Accordingly, the Hotel Association submits that the hearing on the Disclosure Statement should be adjourned until, at the earliest, November 14, 2013 (i.e., the 28th day after the filing of the disclosure statement on October 17, 2013), or preferably, December 9, 2013 (the tentative date scheduled for the hearing to consider whether to approve the sale)) and the objection deadline should also be extended.

Furthermore, the Court should not grant conditional approval of the Disclosure Statement because it contains inadequate information. Unlike most cases where a disclosure statement contains more information than a creditor would need to cast its vote, the Disclosure Statement appears to proceed on the faulty premise that the quantity of pages somehow equals the quality of disclosure. The Disclosure Statement – while providing more than adequate amounts of hype in its 109 pages – is woefully deficient in providing creditors with adequate information with which to make an informed judgment concerning the Plan.

Based upon its preliminary review of the Disclosure Statement and Plan over the past few days, the Hotel Association believes that these documents fail to provide adequate disclosure, or

any disclosure whatsoever, with respect to: (i) the post-confirmation Trust Agreement (which, as mentioned above, the Debtors failed to file with the Plan); (ii) the manner in which the Plan Administrator will be chosen, compensated, replaced and supervised, as well as his/her powers under the Trust Agreement; (iii) any justification for the breadth and extent of the third-party releases in a liquidating plan, particularly in favor of Tom Sullivan (the indirect owner of the Debtors) and a myriad of affiliates that he owns and controls;[7] (iv) the distributions that will be made to general unsecured creditors; (v) the *millions* of dollars in unjustified distributions that two entities indirectly owned by Tom Sullivan will receive under the Plan, including OBH Funding, LLC ("OBH Funding") and F9 Properties, LLC, f/k/a ANO, LLC ("F9" or "ANO");[8] (vi) the liquidation analysis; and (vii) numerous other issues.

---

[7]    *See* Plan, § 10.3; Disclosure Statement, p. 40.

[8]    The Debtors have apparently granted ANO (n/k/a F9) an allowed general unsecured claim in each of the Debtors' estates for an amount not less than $14,319,591.17 representing an alleged prepetition "loan".  *See* Plan, §§ 3.2.4, 3.3.2; Disclosure Statement at pp. 6-7 (chart of claims and estimated distributions) and 12 (describing the "loan"); Schedules for Elcom Hotel [ECF No. 84-2 at ECF p. 16 out of 31] and Elcom Condominium [ECF No. 87 at ECF p. 19 out of 31].  However, as stated in the forensic report ("Forensic Accounting Report") filed by Berkowitz Dick Pollack & Brant (the "Forensic Accountants") in the state-court receiver action, the Forensic Accounting Report concluded that the $14,319,591.17 is actually an *equity* infusion.  *See* Forensic Accounting Report §§ III.B at p. 22 and V; III.D.  The Forensic Accounting Report was filed in the Chapter 11 Cases as an exhibit to an objection filed by the Residential Association.  *See* ECF No. 29, Exhibits A-1 to A-5.  The Hotel Association also pointed out this fact in the attachments to the identical proofs of claim filed by the Hotel Association in each of the Chapter 11 Cases.  *See* Elcom Hotel claim no. 62-1 and Elcom Condominium claim no. 32-1, ¶¶ 22-26.  The Disclosure Statements provides absolutely no disclosure with respect to this dispute.

In addition, the Plan provides that OBH Funding will receive distributions in excess of $4.0 million, comprised of the sum (i) a secured claim against Elcom Hotel in an amount not less than $1,832,486.14 (prepetition receiver certificates) *plus* (ii) a superpriority administrative expense claim against both estates in an amount of not less than $2,200,000 (postpetition debtor-in-possession financing).  While the Hotel Association does not object to the distributions to OBH Funding of the $2,200,000, representing repayment for the postpetition financing, the Disclosure Statement fails to provide adequate information as to why OBH Funding is entitled to any claim (secured or otherwise) related to the receiver certificates.  The Hotel Association believes that the only reason why the state-court receiver was required to resort to obtaining receiver certificates in the first place was due to the outright failure of Elcom Condominium to pay its assessments.  In other words, the Hotel Association believes that the Debtors should *object* to the claim related to the receiver certificates (to have it reclassified as equity, or, alternatively, as an unsecured claim that is subordinated to the claims of other unsecured creditors), rather than grant it as an allowed secured claim.  The Disclosure Statements provides absolutely no disclosure with respect to this dispute.

Furthermore, the Court should deny conditional approval of the Disclosure Statement because it describes a plan that is not confirmable on its face.  As detailed herein, the Plan is not confirmable because it unfairly discriminates, in violation of section 1129(b) of the Bankruptcy Code, against the general unsecured creditors holding claims, estimated by the Debtors to range from $14 million to $80 million, in Elcom Hotel's Class 4 ("General Unsecured Claims") because the Debtors have gerrymandered a small class of unnamed general unsecured creditors in Elcom Hotel, allegedly holding unsecured claims in the range of $500,000 to $971,032 and described as so-called vendors in Class 3 ("General Unsecured Vendor Claims") that are allegedly "critical" to the purchaser's operations at One Bal Harbour.[9]

The Debtors intend to make distributions to each creditor in this gerrymandered class in amounts representing 50% of such creditor's allowed unsecured claim.  Due to the fact that the Disclosure Statement fails (i) to name these unsecured creditors, (ii) to provide any information as to the manner in which these unsecured creditors will be chosen for inclusion in the class (and when they will be chosen), (iii) to indicate any reason why such creditor is critical *to the Debtors*, (iv) to explain why the Debtors have chosen to make a distribution percentage of 50% on the allowed claims in this class, or, (v) to provide any legal basis to support the creation of this type of class under the Plan, the Hotel Association submits that the Disclosure Statement fails to contain adequate information and should be denied.

Moreover, the Debtors simply cannot meet the "good faith" requirements of section 1129(a)(3) of the Bankruptcy Code.  As detailed in the Hotel Association's separate motion to substantively consolidate the Debtors' two estates filed concurrently herewith, the Plan proceeds

---

[9]     The Plan and Disclosure Statement indicate that "Claims in Class 3 will only consist of trade vendor Claims that will continue to do business with the Prevailing Bidder after the Sale and are deemed to be critical to the Prevailing Bidder's operations at the Real Property."  *See* Plan, § 3.2.3, no 1; Disclosure Statement, p. 25, n. 6.

upon the faulty premise that the two estates will not be substantively consolidated.  However, one thing is absolutely clear about the lack of the substantive consolidation.  The biggest beneficiary by far will be Tom Sullivan.

As stated above, the Plan grants an enormous windfall to F9 (an entity ultimately owned and controlled by Tom Sullivan) in the form of a huge, and unjustified, allowed general unsecured claim in both of the Debtors' estates in an amount of not less than $14,319,591.17 which the Debtors have described as a prepetition "loan" made by ANO (n/k/a F9) to Elcom for the purpose of purchasing the Debtors' assets.  Due to the combination of: (i) a significantly lower debt-to-asset ratio of Elcom Condominium (the entity that owns the Debtors nine remaining condominium units); (ii) the Debtors' decision ($y$) to charge against Elcom Hotel all of the administrative expenses in the Chapter 11 Cases, and ($z$) to apportion the gross purchase price related to the sale of the Debtors' assets in the amount of $8 million to Elcom Hotel and $4.25 million to Elcom Condominium;[10] and (iii) the Debtors' apparent goal of having the $14,319,591.17 claim against Elcom Condominium be essentially the only claim against this estate, the Hotel Association conservatively estimates that F9 will receive a distribution windfall in excess of hundreds of thousands, and potentially in excess of $1.5 million, if the two estates are not substantively consolidated (principally due to F9's expected distribution from Elcom Condominium); that is, F9's distribution on its unsecured claims will be at least hundreds of thousands greater (and potentially in excess of $1.5 million or greater) than if the estates are substantively consolidated.  Thus, virtually all of the general unsecured creditors in the Debtors'

---

[10]    *See* Stoneleigh PSA attached as Exhibit "A" to the *Debtors' Motion for Entry of an Order (A) Approving Competitive Bidding and Sale Procedures; (B) Approving Form and Manner of Notices; (C) Approving Form of Purchase and Sale Agreement; (D) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale, Including Treatment of Executory Contracts and Unexpired Leases; (E) Authorizing Sale of Substantially all of Debtors' Assets Pursuant to 11 U.S.C. § 363, Free and Clear of All Liens, Claims, Encumbrances and Interests; and (F) Granting Related Relief*, dated October 21, 2013 [ECF No. 375] (as defined herein, the "Sale Motion"), Exhibit "A", § 3.1 ("Purchase Price").

7

cases will benefit if the Debtors' estates are substantively consolidated because they will receive higher distributions from the Plan, and, therefore, the decision by the Debtors not to do so lacks any justification.

The Debtors' decision not to substantively consolidate the two estates is also particularly galling in light of the fact that (i) the two Debtors are subject to the exact same ultimate ownership by Tom Sullivan (through Elevation),[11] (ii) the Debtors were historically operated as a single enterprise, and (iii) the independent Forensic Accounting Report contains an abundance of facts showing that Elcom Hotel and Elcom Condominium should be substantively consolidated. As such, the Hotel Association submits that the Court should rule upon the Hotel Association's motion to substantive consolidate the estates prior to deciding whether to send the Plan out for solicitation to creditors.

Another reason supporting the lack of good faith in proposing the liquidating Plan is that the Debtors seek to grant to Tom Sullivan and his affiliated entities extensive releases under it. The Debtors must surely know that if such releases are ultimately approved by the Court, the impact would be catastrophic on the current derivative action in the Chapter 11 Cases that is being pursued by the Associations against various defendants, including Tom Sullivan and certain of his affiliated entities (*see* Adversary Proceeding No. no. 13-01590-RAM (the "Derivative Action")).  In brief, the grant of such releases under the liquidating Plan in favor of Tom Sullivan and certain of his affiliated entities would effectively grant total immunity to these parties in the Derivative Action.  Although the Hotel Association might not oppose the grant of some form of releases, the Hotel Association respectfully submits that, in the very least, the proposed releases in the liquidating Plan in favor of Tom Sullivan and certain of his affiliated

---

[11]    *See* Disclosure Statement, p. 10.

entities should specifically carve-out any claim related to the Trust Assets, including the Derivative Action, and if the Debtors refuse to do so, the Disclosure Statement should explicitly state – in non-legalese English that the typical creditor can understand and bolded – the potential negative consequences to the Derivative Action should Tom Sullivan (and his related entities) obtain extensive releases under the Plan.  Thus, the Hotel Association submits that the Plan was not proposed in good faith and the Disclosure Statement contains inadequate information.

Accordingly, for the reasons discussed herein, the Hotel Association respectfully requests that the Court deny the conditional approval of the Disclosure Statement.

## **GENERAL BACKGROUND**

1.      On January 2, 2013 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the clerk of this Court.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code (the "Chapter 11 Cases").

2.      No official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

3.      On January 15, 2013, the Court approved a certain stipulation [ECF No. 69] (the "Stipulation") entered into between and among the Hotel Association, the 10295 Collins Avenue, Residential Condominium Association, Inc. (the "Residential Association" and together with the Hotel Association, collectively, the "Associations"), the Debtors, Tom Sullivan, F9, ANO and Elevation Communities, LLC ("Elevation").  Among other things, the Stipulation provides the Associations with mutual derivative standing to pursuant any claims of the Debtors against

9

various parties and have meaningful "seats at the table" throughout the process to sell the

Debtors' assets. *See* Stipulation, ¶¶ 10, 13.

## **PROCEDURAL BACKGROUND**

4.      On October 4, 2013, the Court entered the *Order Granting in Part and Denying in*

*Part the Hotel Associations' Motion to Enforce Stipulation* [ECF No. 338] (the "Enforce

Stipulation Order").  The Enforce Stipulation Order states, in pertinent part,

> If the plan, disclosure statement, and Sale Motion are
> filed on October 17, 2013, the Court will conduct a hearing on
> November 4, 2013 at 10:30 a.m., to consider (1) preliminary
> approval of the disclosure statement; (2) approval of bid
> procedures and the form of the APA; and (3) approval of
> Stoneleigh as the stalking horse bidder.

Enforce Stipulation Order, ¶ 9.

5.      Although the Debtors complied with the time deadline in the Enforce Stipulation

Order by filing, on October 17, 2013, the Disclosure Statement and the Plan, the Debtors did not

do so with respect to the Sale Motion, which was not filed until four days later, on October 21,

2013.

6.      On Friday October 18, 2013 at 4:21 p.m., the Debtors filed the *Ex Parte Motion of*

*Debtors and Debtors in Possession for Order (A) Scheduling Hearing to Consider Preliminary*

*Approval of Disclosure Statement; (B) Establishing Deadline for Objection to Disclosure*

*Statement; and (C) Shortening Notice of Hearing and Objection Deadline on the Disclosure*

*Statement* [ECF No. 367] (the "Scheduling Motion").

7.      In the Scheduling Motion, the Debtors requested an order of the Court (i)

scheduling a hearing to conditionally approve the Disclosure Statement and consolidate the

hearings on the Disclosure Statement and Plan for December 9, 2013 (*see* Scheduling Motion, ¶

5278945-8

7) and (ii) shortening the notice periods required by Bankruptcy Rules 2002(b) and 3017, as amended by Local Rule 3017-1, applicable to disclosure statements.

8.      On Monday, October 21, 2013 at 12:21 p.m., the Court entered an order granting the Scheduling Motion [ECF No. 369] (the "Scheduling Order")[12] in which the Court (i) has scheduled the preliminary hearing to consider whether conditionally to approve the Disclosure Statement on November 4, 2013 (the "Preliminary Disclosure Statement Hearing"), (ii) setting the deadline for the filing of objections to the approval of the Disclosure Statement on October 31, 2013 (the "Objection Deadline"), and (iii) setting October 30, 2013 (three business days prior to the Preliminary Disclosure Statement Hearing) as the deadline for parties to confer regarding objection.[13]

9.      Accordingly, a total number of only (i) 14 days will elapse between the filing of the Disclosure Statement (October 17th) and the Objection Deadline (October 31st), and (ii) 18 days will pass between the date of the filing of the Disclosure Statement (October 17th) and the date of the Preliminary Disclosure Statement Hearing (November 4th).

## <u>ARGUMENT</u>

**I.      The Hearing to Consider Whether Conditionally to Approve the Disclosure Statement Should be Adjourned Because the Debtors Have Violated the Notice Requirements of Bankruptcy Rules 2002(b) and 3017(a).**

10.      The Hotel Association and the Debtors' other creditors have not been given adequate notice of the Disclosure Statement. Bankruptcy Rules 2002(b) and 3017(a) require a 28-day notice period before a court may consider whether to approve a disclosure statement. *See*

---

[12]    The Hotel Association believes that the Scheduling Order merely scheduled the Preliminary Disclosure Statement Hearing and does not provide any substantive relief to the Debtors regarding whether the Court has determined whether it is appropriate to approve *on short notice* the Disclosure Statement on a conditional basis. To the extent otherwise, this Objection is also a motion for the Court to reconsider the Scheduling Order.

[13]    Pursuant to the Hotel Association's email request made on October 23, 2013, the Debtors agreed to extend the deadline for the parties to confer until Noon on November 1, 2013.

5278945-8

Bankruptcy Rules 2002(b), 3017(a).  Bankruptcy Rule 3017(a) states, in pertinent part, "a court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in Rule 2002 to consider the disclosure statement and any objections or modifications thereto."  *See* Bankruptcy Rule 3017(a).

11.     The purpose of Bankruptcy Rule 2002(b) is to protect the due process rights of creditors and other interested parties with respect to a disclosure statement.  *See, e.g., In re the Duncraggen Realty Cor*p., No. 92-B-40605 (PCB), 2007 WL 2492782 at 3-4 (Bankr. S.D.N.Y. Aug. 29, 2007).  The Supreme Court has stated that the "fundamental requisite of due process of law is the opportunity to be heard [and that] * * * [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonable calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id*. (quoting *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)).

12.     As detailed herein, the Debtors filed the Disclosure Statement and the Plan on October 17, 2013, a *mere 14 days prior* to the Objection Deadline and *18 days prior* to the Preliminary Disclosure Statement Hearing.  Moreover, the Debtors have never filed the Trust Agreement (the terms of which represent the core of the Debtors' liquidation for unsecured creditors) or provided any information regarding the Plan Administrator, such as how the Plan Administrator will be chosen, compensated, replaced and supervised, as well as his/her powers under the Trust Agreement.  Accordingly, the Hotel Association believes that it and the other creditors of the Debtors have been provided an insufficient amount of time to review the Disclosure Statement as well as lack of sufficient notice of the Preliminary Disclosure Statement Hearing.  *In re First Humanics Corp*., 124 B.R. 87, 89 n.3 (Bankr. W.D.Mo. 1991) (noting that

court reset hearing on disclosure statement where debtor filed an amended disclosure statement 10 days before the hearing date on the original disclosure statement and parties objected on the basis of insufficient notice).

13.     Although Debtors' creditors will be harmed if the Preliminary Disclosure Statement Hearing goes forward on November 4, 2013, there will be no harm whatsoever to the Debtors' estates if the disclosure statement hearing is adjourned to, at the earliest, November 14, 2013 (i.e., the 28th day after the October 17, 2013 filing of the disclosure statement) and the Debtors' confirmation hearing takes place approximately a month later, on or about December 16, 2013.  First, there will be more than ample time, if a confirmation hearing takes place on or about December 16, 2013, for the order granting confirmation to become final prior to the end of 2013, as has been requested by Stoneleigh Capital, LLC ("Stoneleigh"), the putative stalking-horse, as a condition for closing on the sale.[14]

14.     More importantly, there exists another potential qualified bidder that has not stated that it intends to impose the condition of closing prior to the end of December, 2013.  The Residential Association has filed a notice with the Court [ECF No. 360] stating that the Residential Association intends to submit a competing bid for the Debtors' assets, and the Residential Association did not indicate in such notice, or in any other pleading filed in the Chapter 11 Cases, that the Residential Association will seek to impose the requirement of closing on the sale prior to the end of December, 2013 (if the Residential Association is the winner of the auction).  Thus, it is quite possible that the ultimate winner at the auction (if one is held) will be an entity that does not require a final order confirming a proposed plan by December 31, 2013.

---

[14]   Stoneleigh has not made a closing of December 31, 2013 a requirement of the sale.  As set forth in the Stoneleigh PSA, Stoneleigh would not cancel the sale if it does not close by the end of 2013.  Rather, Stoneleigh would seek to reduce the $12,250,000 gross purchase price by $10,000 a day for each day that the closing does not occur after December 31, 2013.  *See* Stoneleigh SPA.  In the Hotel Association's limited objection to the Sale Motion, the Hotel Association has objected to this aspect of the Stoneleigh PSA.

13

15.     Moreover, it is quite possible that there will never be a final order confirming the Plan by December 31, 2013.  Unless the Debtors make the necessary changes to the Plan detailed herein before the Debtors seek to solicit the Plan to creditors (including, but not limited to, substantive consolidation of the Debtors' estates, removal of the gerrymandered class and carve-outs for the releases to be granted to Tom Sullivan and his affiliated entities with respect to the claims that will form part of the Trust Assets), it is quite possible that the Hotel Association will appeal an order confirming the Plan, and therefore, it is doubtful that there will be any final order confirming the current, proposed Plan by the end of December, 2013.  Accordingly, the Hotel Association respectfully requests the Court to adjourn the hearing on the Disclosure Statement until, at the earliest, November 14, 2013.

## II.     The Disclosure Statement Lacks Adequate Information and Should Not Be Conditionally Approved.

16.     The Disclosure Statement lacks adequate information because it omits key material facts, underlying assumptions and factual support.  These failures make it impossible for the Hotel Association and other unsecured creditors to make an informed decision about whether to support or oppose the Plan.  Accordingly, the Disclosure Statement fails to comply with the requirements of section 1125 of the Bankruptcy Code and therefore, the Disclosure Statement should not be approved.

### A.     Under Section 1125 of the Bankruptcy Code, a Disclosure Statement Cannot be Approved Unless it Provides Adequate Information.

17.     One of the fundamental policies underlying the chapter 11 reorganization process is full disclosure by a debtor.  *Momentum Mfg. Corp.* v. *Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *In re Westmoreland Oil Dev. Corp.*, 157 B.R. 100, 102 (S.D. Tex. 1993).  Congress intended the disclosure statement to be the

14

primary source of information upon which creditors and shareholders rely in making an informed judgment about a plan of reorganization. *Id*.

18.    Under Section 1125(b) of the Bankruptcy Code, a proposed disclosure statement may not be approved by a court unless it provides "adequate information" to holders of claims or interests. 11 U.S.C. § 1125(b). In turn, section 1125(a)(1) defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records … that would enable … a hypothetical investor of the relevant class to make an informed judgment about the plan …

11 U.S.C. § 1125(a)(1).

19.    The purpose of section 1125 is to assist the creditors in evaluating the plan on its face. *In re Aspen Limosine Service, Inc*., 193 B.R. 325, 334 (D. Colo. 1996). As such, the requirement that a disclosure statement contain adequate information is at the very "heart" of the chapter 11 reorganization process. *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The importance of full disclosure is "underlaid by the reliance placed upon the disclosure statement by the creditors and the court." *In re Oneida Motor Freight, Inc.*, 848 F.2d 414, 417 (3d Cir. 1988) ("[g]iven such reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information'"). Accordingly, section 1125 of the Bankruptcy Code prefers more, rather than less, clear disclosure in a disclosure statement. *Crowthers*, 120 B.R. at 300; *In re Copy Crafters Quickprint, Inc*., 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1995).

20.    In particular, section 1125 requires that the Disclosure Statement contains sufficient information that would enable a "hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan". 11

15

U.S.C. § 1125(a)(1); *Momentum Mfg. Corp.*, 25 F.3d at 1136; *Crowthers*, 120 B.R. at 301 (holding that disclosure statement was materially in error which precluded confirmation). This test "parallels the materiality standard adopted by the Supreme Court with respect to proxy solicitations under section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78 (1975), and Rule 14a-9, 17 C.F.R. § 240.14a-9 (1975), promulgated thereunder." *Crowthers*, 120 B.R. at 300 (citing *TSC Indus., Inc.* v. *Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)) ("an omitted fact is material if there is a substantial likelihood that a reasonable investor would consider it important in deciding how to vote"). Given the necessity for adequate information in the Disclosure Statement and the paramount position section 1125 occupies in the chapter 11 process, "there is little, if any, room for harmless error." *Crowthers*, 120 B.R. at 300.

21.     Even through the Debtors appear to be quite content to deprive the Hotel Association and the Debtors' other creditors holding tens of millions in asserted claims of adequate information, section 1125 of the Bankruptcy Code requires substantially more. Therefore, the Hotel Association respectfully submits that the Disclosure Statement should not be approved in the absence of the following key pieces of information that a hypothetical investor will need in order to make a fully informed decision whether to vote for or against the proposed Plan.

**B.      Inadequate Information Regarding the Trust and the Plan Administrator.**

22.     The Disclosure Statement fails to adequately disclose how the Hotel Association and other creditors will be involved in the creation, control and supervision of the new Trust. The Trust is the core feature of the Debtors' liquidation because it essentially represents the sole means of collecting potential assets (e.g., causes of action) and making distributions to the Debtors' unsecured creditors. The Plan provides that upon its Effective Date, the Trust will be

16

established, and a Plan Administer will be appointed to prosecute claims that form the Trust

Assets (i.e., causes of action), with any proceeds of the prosecution of the litigation going to the

Beneficiaries (i.e., the general unsecured creditors).  *See* Plan §§ 1.1.78-1.1.81, 4.3-4.14.

23.    However, the Trust will be governed by a Trust Agreement that the Debtors failed

to attach to the Plan.  *See* Plan §§ 1.1.79, 4.3.  In fact, the Debtors do not intend to file the

proposed Trust Agreement until Friday, November 1st, a date which is only three days prior to

the Court's hearing, scheduled to take place on Monday, November 4th at 9:30 a.m., to consider

whether conditionally to approve the Disclosure Statement.  *See* Plan, § 1.1.79 (noting that Trust

Agreement will be attached as Exhibit "A" to the Plan) and Exhibit "A" to the Plan (stating that

the documents comprising this exhibit will not be filed until three days prior to the Court's

hearing to consider whether conditionally to approve the Disclosure Statement).  As stated

above, the Hotel Association submits that the Debtors' failure to file the proposed Trust

Agreement has violated the notice and due process requirements for the approval of the

Disclosure Statement.

24.    Moreover, the Disclosure Statement provides no information regarding the

manner in which the Plan Administrator will be chosen, compensated, replaced and supervised,

as well as his/her powers under the Trust Agreement.  The Hotel Association believes that the

Debtors intend to cut the Associations out of the process of selecting and supervising the Plan

Administrator, and the Debtors will select the initial Plan Administrator.  *See* Plan § 4.5 (stating

simply that "a Plan Administrator shall be appointed over the Trust").  However, the Plan

Administrator will occupy a vitally important part of the post-confirmation Debtors because

(s)he will have the power to pursue (or not) all of the causes of action, including the current

17

Derivative Action being pursued by the Associations, on behalf of the creditors of the Debtors' estates. *See* Plan § 10.4.1.2.

25.     The Hotel Association believes that the lack of detail in the Plan and Disclosure Statement regarding the specifics of the Trust Agreement, combined with the lack of disclosure regarding how the initial Plan Administrator (and any replacement) will be chosen, compensated, replaced and supervised, as well as his/her powers under the Trust Agreement, will effectively deprive the Hotel Association of any real influence over the creation and operation of the Trust and the choice of the Plan Administrator.  Worse still, the Plan and Disclosure Statement effectively cut the Hotel Association and the Debtors' other unsecured creditors out of the process because neither indicates that the Trust Agreement or the Plan Trustee must be acceptable to the Hotel Association or any other creditor.

26.     Rather, the clear pattern in these Chapter 11 Cases is that the Debtors have intentionally excluded the Hotel Association from being a part of any meaningful negotiations related to the plan documents, and the Hotel Association believes that the Debtors will continue to do so with respect to the form of the Trust Agreement and the selection of the Plan Administrator.   For example, starting on October 7, 2013, the Hotel Association made repeated requests to the Debtors to receive and review drafts of the Disclosure Statement and Plan but the Debtors chose not to do so.  Rather, the Hotel Association did not see the terms of such documents until they were publicly filed by the Debtors on October 17, 2013.  Due to the fact that the Hotel Association is a creditor holding over $27 million in asserted claims against the Debtors' estates as well as occupies a truly unique, and fundamental role at the One Bal Harbour property, the Plan should be revised to provide the Hotel Association (and the Residential

18

Association) a central role in the creation and control of the Trust and the supervision of the Plan Administrator.

27.     Furthermore, there exists a real danger in permitting the Debtors to possess significant influence related to the creation and structure of the Trust and the appointment of the Plan Administrator.  Importantly, the Trust Assets to be transferred by the Debtors to the Trust on the Effective Date will include various claims, such as the causes of action contained in the Derivative Action commenced by the Associations.  *See* Plan § 10.4.1.2.  Many of the claims identified in the Derivative Action are against insiders of the Debtors, including, Tom Sullivan and certain affiliated entities owned and/or controlled by him.  Yet, the Debtors are seeking to release those claims against these insiders and affiliates for no consideration.  *See* Plan § 10.3.

28.     Moreover, a substantial number of the Derivative Action-related claims could bring significant value in the form of distributions on the allowed claims of the Hotel Association and the Debtors' other unsecured creditors, and many these claims are against insiders of the Debtors.  Given the fact that the potential targets of the Trust include the Debtors' insiders, these entities should have minimal rights in either choosing the Plan Administrator or negotiating the form of the Trust Agreement.  To permit otherwise is the legal equivalent of letting the fox guard the hen house.

29.     Rather, the two Associations (who together represent the vast majority of the non-insider claims against the Debtors, and more importantly, occupy truly unique roles at One Bal Harbour because they represent the twin pillars of the property) are the ultimate beneficiaries of the proceeds from the Trust, and therefore, the two Associations should be granted the power to choose the Plan Administrator, negotiate the form of the Trust Agreement with the Plan Administrator, and, as is typical in many other liquidating chapter 11 cases, possess an oversight

19

function with respect to the Trust and the Plan Administrator.  In any event, the Disclosure

Statement should disclose these issues to provide proper notice to the unsecured creditors.

       **C.**      **<u>Insufficient Information Regarding Third Party Releases.</u>**

30.     Third-party releases are subject to careful scrutiny and are "proper only in rare

cases."  *See Deutsche Bank AG* v. *Metromedia Fiber Network, Inc. (In re Metromedia Fiber*

*Network, Inc.),* 416 F.3d 136, 141 (2d Cir. 2005).  As such, third-party releases are often

prohibited "absent the finding of circumstances that may be characterized as unique."

*Metromedia*, 416 F.3d at 142 (noting that no case has tolerated non-debtor releases absent the

finding of circumstances characterized as unique).

31.     Courts located in this District and in elsewhere in the Eleventh Circuit approve

releases of non-debtors in the limited factual situations where such releases are "necessary or

appropriate" to carry out the purposes of chapter 11.  *See, e.g., In re Mercedes Homes, Inc*., 431

B.R. 869, 878 (Bankr. S.D. Fla. 2009); *In re Friedman's Inc.,* 356 B.R. 758, 761-762 (Bankr.

S.D. Ga. 2005).  To determine if non-debtor releases are necessary and fair, courts in the

Eleventh Circuit generally look to the seven-factor test enunciated by the Sixth Circuit in *In re*

*Dow Corning Corp*., 280 F.3d 648 (2002).[15]  *See, e.g., Mercedes Homes*, 431 B.R. at 878;

*Friedman*, 356 B.R. at 761-762.

32.     The liquidating Plan includes a broad release provision that effectively releases

the Debtors and whole host of other <u>insiders</u> and entities (as defined in the liquidating Plan, the

---

[15]  The seven factors set forth in *Dow Corning* are: (1) whether there is an identity of interests between the debtor
and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a
suit against the debtor or will deplete the assets of the debtor; (2) whether the non-debtor has contributed
substantial assets to the reorganization; (3) whether the injunction is essential to reorganization, namely, the
reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or
contribution claims against the debtor; (4) whether the impacted class, or classes have overwhelmingly voted to
accept the plan; (5) whether the plan provides a mechanism to pay for all, or substantially all, of the class, or
classes, affected by the injunction; (6) whether the plan provides an opportunity for those claimants who choose
not to settle to recover in full; and (7) whether the bankruptcy court made a record of specific factual findings
that support its conclusions. 280 F.3d at 658.

"Released Parties") from essentially all claims relating to "any act, omission, transaction, event or other occurrence taking place on or *prior to the Effective Date*" of the Plan.  Plan, § 10.3 (emphasis supplied).  The proposed Released Parties include the following:

(1)  the Debtors,

(2)  Thomas Sullivan, individually,

(3)  F9 Properties, LLC (f/k/a ANO, LLC),

(4)  Elevation Communities, LLC,

(5)  OBH Funding, LLC,

(6)  F9 Investments, LLC, and

(7)  for each of (1) through (6), each of their respective current and former directors, officers, employees, representatives, members, affiliates, agents, counsel, financial advisors, and professionals (with the specific exception of (1) Jorge Arevalo, (2) Juan Camilo Arevalo, (3) entities owned solely by either Jorge Arevalo or Juan Camilo Arevalo, and (4) entities owned jointly by Jorge Arevalo and Juan Camilo Arevalo, who are not released from claims and causes of action that have or may be brought by holders of impaired Claims).

*See* Plan, § 10.3.  Importantly, the Disclosure Statement fails to include any explanation in support of granting each of these entities the benefit of the releases in the liquidating Plan.  Rather, the Disclosure Statement simply reiterates the release provision contained in the liquidating Plan.  *See* Disclosure Statement, p. 40.  That is insufficient for creditors to decide whether to approve such releases.

33.    In brief, the non-existent discussion in the Disclosure Statement regarding the third-party releases does not allow the Hotel Association and other general unsecured creditors to assess the appropriateness of such releases, or to gauge the impact of such releases on their individual recoveries.  Therefore, the Court should not conditionally approve the Disclosure Statement without it being revised to provide a full explanation of the circumstances that would justify the proposed third-party releases contained in the Plan, including a discussion of each of the seven-factor *Dow Corning* test.

21

D.      **Inadequate Disclosure Regarding Possible Distributions Under the Plan to Jorge Arevalo.**

34.     In the Disclosure Statement, the Debtors provide the following brief description of the Debtors' business structure:

> Debtors Elcom Hotel and Elcom Condo are Florida limited liability companies.  The sole member of Elcom Hotel and Elcom Condo is Elevation Communities, LLC ("Elevation").  Elcom Hotel and Elcom Condo are member-managed limited liability companies. The members of Elevation are F9 Investments, LLC ("F9") and Elbalha, LLC, whose interest is controlled by F9 Properties, LLC f/k/a ANO, LLC ("ANO"), as attorney-in-fact. Thomas D. Sullivan is the manager of F9, ANO, and Elevation.

*See* Disclosure Statement, p. 10.

35.     However, it's what the Disclosure Statement *doesn't* state that matters infinitely more because it does not indicate whether Jorge Arevalo ("Arevalo"), or any person or entity affiliated with Arevalo, possesses any interests (ownership or otherwise) in Elevation or F9, and therefore, Arevalo would have the right to benefit from any distributions under the Plan.  *See* Plan, §§ 3.2.5 and 3.3.3 (leaving open the possibility of distributions on interests in Elcom Hotel and Elcom Condominium by not providing for outright cancellation of such interests).

36.     As detailed in the duplicate proofs of claim filed by the Hotel Association in each of the Debtors' estates, Arevalo's possible ownership interests have been embedded throughout the Debtors' ownership structure, including the following based upon information obtained from the Florida Department of State, Division of Corporations (www.sunbiz.org):

> a.      Elevation Communities, LLC (*the sole member of Elcom Hotel and Elcom Condominium*):      The Articles of Organization filed on April 3, 2009 list both Tom Sullivan and Jorge Arevalo as the original managers.  Just a few months prior to the bankruptcy filing, on October 15, 2012, Elevation filed a reinstatement listing Tom Sullivan as the sole manager.

22

b.    <u>Elbalha, LLC (one of two members of Elevation)</u>: The Articles of Organization filed on June 16, 2009 list Jorge Arevalo as the sole manager.

37.    Also, as stated above, the Debtors have granted F9 a general unsecured claim in each estate in an amount of not less than $14,319,591.17, and therefore F9 stands to receive enormous distributions under the Plan.  As detailed throughout the Forensic Accounting Report, however the actions (or lack thereof) of Arevalo and entities owned and/or controlled by him, caused serious damage to the One Bal Harbour property, and were, in fact, reasons leading to the appointment of the Receiver and the eventual chapter 11 filing.  Thus, to the Hotel Association, it would represent a severe "slap in the face" to it and all of the Debtors' other unsecured creditors if the possibility exists that Arevalo could receive <u>any</u> direct or indirect distributions under the Plan.

38.    Accordingly, the Hotel Association submits that the Disclosure Statement does not provide adequate information until it discloses the ownership interests in Elevation and F9 whether there exists a possibility that Arevalo, or an entity owned and/or controlled by him, could receive any direct or indirect distributions under the Plan.

E.    **Inadequate Disclosure Regarding the Reason the Debtors Have Decided to Not to Apportion Any Administrative Expense Claims Against the Chapter 11 Estate of Elcom Condominium.**

39.    In the Disclosure Statement, the Debtors have apportioned all of the projected administrative expense claims that will arise in the Chapter 11 Cases – an amount that the Debtors estimate will total $3.3 million – against the estate of only one of the Debtors.  *See* Disclosure Statement, p. 5.  The Debtors have apportioned all of the administrative expenses against Elcom Hotel and not a single penny against the estate of Elcom Condominium.

40.     Importantly, the Debtors have not disclosed in the Disclosure Statement the fact that their decision to have Elcom Hotel bear all of the administrative expense claims in the Debtors' estates will decrease distributions to general unsecured creditors in Class 4 of Elcom Hotel and artificially increase the distributions to holders of unsecured claims in Class 3 of Elcom Condominium (the primary beneficiary of which will be F9, an entity owned and controlled by Tom Sullivan).  In fact, the Hotel Association believes that the Debtors' decision to do so, combined with the lack of substantively consolidating the Debtors' estates, will result in the general unsecured creditors in Class 4 of Elcom Hotel receiving no distributions under the Plan.  Accordingly, the Debtors should be required to explain in Disclosure Statement their reasons for apportioning all of the estimated $3.3 million in administrative expense claims solely to Elcom Hotel and the impact on general unsecured creditors in both estates so that creditors can make an informed decision whether to support or oppose the Plan.

F.      **Inadequate Disclosure Regarding Distributions to the Holders of Allowed General Unsecured Claims in Elcom Hotel's Class 4 and Elcom Condominium's Class 3.**

41.     The Debtors fail to disclose at all the estimated percentage recovery under the Plan for two voting classes of claims, including Elcom Hotel's Class 4 ("General Unsecured Claims") and Elcom Condominium's Class 3 ("General Unsecured Claims") Disclosure Statement, pp. 6-7.   Rather, the Debtors have left blank the relevant boxes in the "Projected Recovery Under Plan".  *See* Disclosure Statement, pp. 6-7.

42.     However, it is vitally important for the Debtors to provide an estimate of the amount of such percentage recoveries.  Elcom Hotel's Class 4 is one of the two voting classes of unsecured creditors in the estate of Elcom Hotel (the other class being the gerrymandered Class 3) and Elcom Condominium's Class 3 is the sole voting class in the estate of Elcom Condominium.  Thus, the Debtors' creditors in these two classes must know, at the point in time

24

that the Debtors solicit the Plan, the potential percentage recovery they will receive so that such creditors possess adequate information in order to make an informed decision whether to support or oppose the Plan.

> **G.     Insufficient Information Regarding What Creditors Are Included in Elcom Hotel's Class 3 ("General Unsecured Vendor Claims").**

43.     In the Plan, the Debtors have bifurcated the general unsecured creditors of Elcom Hotel into two separate voting classes, including Class 3 ("General Unsecured Vendor Claims") and Class 4 ("General Unsecured Claims").   *See* Plan, §§ 3.2.3 and 3.2.4; Disclosure Statement, p. 6.

44.     In addition to failing to provide any distribution percentage to Class 4, the Plan and Disclosure Statement indicate that the holders of allowed Class 3 claims will receive a 50% distribution of their allowed claims.   Due to the fact that the Disclosure Statement fails (i) to name these unsecured creditors, (ii) to provide any information as to the manner in which these unsecured creditors will be chosen for inclusion in the class (and when they will be chosen), (iii) to indicate any reason why such creditor are critical *to the Debtors*, or (iv) to provide any legal basis to support the creation of this type of class under the Plan, the Hotel Association submits that the Disclosure Statement fails to contain adequate information and should be denied. Accordingly, the Disclosure Statement does not contain adequate information and should not be conditionally approved.

> **H.     Insufficient Information Regarding the Debtors' Determination to Provide a Fifty (50%) Distribution to the Holders of Allowed Claims in Elcom Hotel's Class 3  ("General Unsecured Vendor Claims").**

45.     As stated above, the Debtors have bifurcated the general unsecured creditors of Elcom Hotel into two separate classes, including Class 3 ("General Unsecured Vendor Claims") and Class 4 ("General Unsecured Claims").   *See* Plan, §§ 3.2.3 and 3.2.4; Disclosure Statement,

p. 6.  In addition to failing to provide any distribution percentage to Class 4, the Plan and

Disclosure Statement indicated that the holders of allowed Class 3 claims will receive a 50%

distribution.  However, the Disclosure Statement fails to provide any information as to why the

Debtors chose this particular distribution percentage.  Accordingly, the Disclosure Statement

does not contain adequate information and should not be conditionally approved.

### I.        Inadequate Disclosure Regarding the Scope of the Injunction.

46.        The Plan permanently enjoins any person that have held, hold or may hold Claims

or Interests against the Debtors from, among other things, "commencing or continuing, in *any*

manner or in any place, *any* suit, action or other proceeding" with respect to any such Claim or

Interests which are released or extinguished pursuant to the Plan.  *See* Plan, § 10.6 ("Release and

Injunction").  It is quite possible that potential targets related to the Trust Assets (including the

defendants in the Derivative Action and the separate state-court actions commenced by the Hotel

Association against such defendants) may seek to obtain a "back door" release by arguing that

the injunction language somehow applies to such claims because the language appears to

encompass any action or proceeding and any claim released by the Plan.

47.        To make the proposed injunction perfectly clear, the Debtors should do two

things.  First, the Debtors should add carve-out language to the release language in Section 10.3

of the Plan carving out any claims arising from the Trust Assets.  Second, this very same carve-

out should be added to the injunction language in Section 10.6 of the Plan.  In any event, the

Debtors have not even sought to explain in the Disclosure Statement why <u>any</u> releases are

appropriate in a liquidating plan.  The Debtors should be required to revise the Disclosure

Statement to provide explanations for these issues.

### J.        Inadequate Disclosure Regarding Claims Objections.

26

48.     In the Plan, the Debtors have created a confusing claims objection process whereby "the Debtors, *the Trust*, or the Plan Administrator, as applicable" shall have the right to object to the allowance of claims. *See* Plan, § 6.2(i) (emphasis supplied). However, the Disclosure Statement fails to explain how the Trust (as opposed to the Plan Administrator) will have the power to object to the allowance of claims, and by what mechanism the Trust will be able to do so. Accordingly, the Disclosure Statement should be revised to address this issue.

**K.      Inadequate Disclosure Regarding the Lack of Substantive Consolidation.**

49.     The Debtors provide insufficient information regarding the Debtors' unjustified decision not to substantively consolidate the Debtors' estates under the Plan. The Debtors devote one sentence to this critically important issue in the Disclosure Statement. *See* Disclosure Statement, p. 23 ("No substantive consolidation of the Debtors has been sought or is otherwise proper"); Plan, § 3.1.1 ("No substantive consolidation of the Debtors has been sought or is otherwise proper").

50.     As detailed in the Hotel Association's separate motion to substantively consolidate the Debtors' two estates, the Plan proceeds upon the faulty premise that the two estates will not be substantively consolidated. However, one thing is absolutely clear about the lack of the substantive consolidation. The biggest beneficiary by far will be Tom Sullivan.

51.     As stated above, the Plan grants an enormous windfall to F9 (and entity ultimately owned and controlled by Tom Sullivan) in the form of an enormous, and unjustified, allowed general unsecured claim in both of the Debtors' estates in an amount of not less than $14,319,591.17. As explained above, the combination of: (i) a significantly lower debt-to-asset ratio of Elcom Condominium (the entity that owns the nine condominium units); (ii) the Debtors' decision ($y$) to charge against Elcom Hotel all of the administrative expenses in the Chapter 11 Cases, and ($z$) to apportion the gross purchase price related to the sale of the Debtors' assets in

27

the amount of $8 million to Elcom Hotel and $4.25 million to Elcom Condominium;[16] and (iii) the Debtors' apparent goal of having the $14,319,591.17 claim against Elcom Condominium be essentially the only claim against this estate, the Hotel Association conservatively estimates that F9 will receive a distribution windfall in excess of hundreds of thousands of dollars of additional distributions if the two estates are not substantively consolidated (principally due to F9's expected distribution from Elcom Condominium).  On the other hand, virtually all of the general unsecured creditors in the Debtors' cases will benefit if the Debtors' estates are substantively consolidated because they will receive higher distributions from the Plan, and, therefore, the decision by the Debtors not to do so lacks any justification.

52.     Also, as stated in the preliminary statement, the Debtors' decision not to substantively consolidate the two estates is also particularly galling in light of the fact that (i) the two Debtors are subject to the exact same ultimate ownership by Tom Sullivan (through Elevation),[17] (ii) the Debtors were historically operated as a single enterprise, and (iii) the independent Forensic Accounting Report contains an abundance of facts showing that Elcom Hotel and Elcom Condominium should be substantively consolidated.  As such, the Hotel Association submits that the Court should rule upon the Hotel Association's motion to substantive consolidate the estates prior to deciding whether to send the Plan out for solicitation to creditors.

53.     In brief, the Plan does not provides for substantive consolidation and the Disclosure Statement fails to explain the basis for such treatment or its negative impact on creditors, including the holders of approximately $14 million to $80 million in general unsecured claims classified in Class 4 against Elcom Hotel, as well as the huge, windfall estimated at a

---

[16]     *See* Stoneleigh PSA attached as Exhibit "A" to the Sale Motion, Exhibit "A", § 3.1 ("Purchase Price").

[17]     *See* Disclosure Statement, p. 10.

minimum to be in the hundreds of thousands of dollars in additional distributions that F9 will likely receive if the estates are not substantive consolidated.  Given the potential positive impact of substantive consolidation on tens of millions of dollars in claims, the Debtors must provide adequate information related to this issue.

> ### L.    <u>Inadequate Disclosure Regarding the Liquidation Analysis</u>.

54.    Section 1129(a)(7) of the Bankruptcy Code is often referred to as the "best interests test" or the "liquidation test."  The best interests test focuses on individual dissenting creditors rather than classes of claims.  *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 440 n. 13 (1999).  The test requires that "if the holder of a claim impaired under a plan of reorganization has not accepted the plan, then such holder must 'receive ... on account of such claim ... property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive ... if the debtor were liquidated under chapter 7 ... on such date.'"  *Id.* at 440 (quoting 11 U.S.C. § 1129(a)(7)).

55.    The Debtors provide insufficient information regarding the Liquidation Analysis described on pp. 8-9 of, and attached as Exhibit "B" to, the Disclosure Statement.  The Hotel Association assumes that the Debtors intend to rely upon the Liquidation Analysis as a means of seeking to satisfy the "best interests test" of section 1129(a)(7) of the Bankruptcy Code.  However, the Liquidation Analysis contains glaring deficiencies and lack of adequate disclosure.

56.    First, the Debtors do not state who prepared the Liquidation Analysis.  Thus, the Debtors should indicate the individual(s) who prepared the Liquidation Analysis so that the Hotel Association may seek discovery related to the Liquidation Analysis.

57.    Second, the Liquidation Analysis is faulty.  The Liquidation Analysis alleges that the Debtors will receive $13,500,000 from the sale of the Debtors' assets in the chapter 11 cases.  *See* Disclosure Statement, Exhibit "B" (column for "Chapter 11 Plan").  However, as shown by

29

the Stoneleigh PSA, the *gross* purchase price for the Debtors' assets is only $12,250,000, an amount which is $1,250,000 less than indicated in the Liquidation Analysis. *See* Stoneleigh PSA, § 3.1. Moreover, the Stoneleigh PSA provides Stoneleigh extensive rights to credit against the purchase price for a whole host of items (the amounts of which have not even been estimated in the Disclosure Statement but could amount to hundreds of thousands or millions of dollars), and therefore, listing net proceeds in the amount of $13,500,000 simply makes no sense. *See* Stoneleigh PSA, §§ 6.2.1 - 6.2.13.

58.     Third, the Liquidation Analysis asserts that if the sale of the Debtors' assets took place in a chapter 7 liquidation, rather than a chapter 11 case, the sale price would magically decrease from $13,500,000 to $6,765,414, representing a reduction of approximately 50%. *See* Disclosure Statement, Exhibit "B" (column for "Chapter 7 Liquidation"). The only possible explanation the Debtors give in the Disclosure Statement for this statistically astounding decrease in the sale price are the following 19 words:  "the depressed value of the Property due to conversion, lack of operational funding" and "the perception of a 'fire sale'". *See* Disclosure Statement, p. 8.

59.     The Hotel Association believes that the Debtors have utterly failed to provide adequate disclosure to justify the assertion that the gross sale price for the Debtors' assets in a *well-run* chapter 7 *liquidating* case would be any less than in the Debtors' *liquidating* chapter 11 cases, or why there would be perception of a "fire sale" in a chapter 7 *liquidation* as opposed to the sale during the Debtors' chapter 11 *liquidatio*n. Rather, the Hotel Association believes that the Debtors are simply grasping at straws because, in reality, there is no meaningful difference between a liquidating chapter 11 case and a chapter 7 liquidation with respect to the gross sales price that could be obtained for the Debtors' assets, so long as the sales process is well-run.

60.     Moreover, the Debtors have provided no disclosure as to other line item components of the Liquidation Analysis, such as why they choose to include a huge figure of $500,000 as a line time for the professional fees in the chapter 7 case or the relatively insignificant amount of only $50,000 as the total amount of the compensation, legal costs and expenses for *both* the Plan Administrator and his/her counsel under the Trust.  Without such explanation in the Liquidation Analysis, it seems clear to the Hotel Association that the Debtors simply backed-in numbers to the Liquidation Analysis, without any justification, to give the appearance of a better outcome for creditors under the Plan than in a chapter 7 liquidation analysis.

61.     Importantly, it is an absolute certainty that the distributions to the general unsecured creditors in a chapter 7 liquidation will be greater than under the Debtors' Plan.  To take one example, the Plan will transfer the right to pursue the Derivative Action to the Trust.  However, at the same time, the Debtors seek to grant to Tom Sullivan and certain of his affiliated entities extensive releases under the Plan.  The Debtors know that if such releases are ultimately approved by the Court, the impact would be catastrophic on the Derivative Action because such releases will effectively provide total immunity to these entities in the Derivative Action.  In sharp contrast, in a chapter 7 scenario, there would be no releases for any of the defendants in the Derivative Action, and if the Plan Administrator successfully pursues the claims against these defendants, the distributions to unsecured creditors would be greater than in the chapter 11 cases.  The Debtors should be required to disclose this issue in the Disclosure Statement.

62.     Also, as stated above, the Hotel Association also respectfully submits that the releases in the Plan in favor of Tom Sullivan and certain of his affiliated entities should specifically carve-out any claim forming a part of the Trust Assets (including the Derivative

Action), and if the Debtors refuse to do so, the Disclosure Statement should explicitly state the potential negative consequences to the Derivative Action should Tom Sullivan (and the other entities) obtain extensive releases under the Plan.

**M.    Inadequate Disclosure to Justify the Debtors' Assertion that $50,000 is Sufficient to Wind-Down the Debtors and to Fund the Trust.**

63.    The Disclosure Statement Does not provide an explanation to support the Debtors' assertion that $50,000 is sufficient to wind-down the Debtors estates and undertake all of the necessary actions under the Trust. In the Disclosure Statement, the Debtors indicate that $50,000 will be used to fund the wind down of the Debtors and fund the Trust. *See* Disclosure Statement, p. 30. The Disclosure statement does not offer an explanation to support the conclusion that $50,000 is sufficient to cover the expected wind-down expenses for the Debtors and the Trust expenses. It needs to do so. Moreover, the Hotel Association believes that $50,000 is not an adequate amount for the Trust to undertake all of the work that it needs to do (including pursuing the Derivative Action that the Plan proposes to transfer to the Trust) and the Disclosure Statement should state the Hotel Association's position.

**N.    Other Inadequate Disclosures.**

64.    Although the Hotel Condominium Association has been provided only a few days to review the Disclosure Statement and Plan, the Debtors failed to provide adequate disclosure in the Disclosure Statement with respect to the following:

   a.    *The Bulk Sale.*

      i.    The Disclosure Statement mentions that "Elcom Hotel purchased 51 of the hotel condominium units from WCI Communities, Inc. Elcom Condo subsequently sold 42 of its hotel condominium units beginning in February, 2011." *See* Disclosure Statement, p. 15.

      ii.    However, the Hotel Association believes that the Disclosure Statement should be revised to mention the following allegations set forth by the Associations in the Derivative Action: (a) 38 of the units were

32

transferred to OBH Investment Properties, Inc. in a bulk transfer (the "Bulk Transfer"); (b) the purchase price for the Bulk Transfer was below market; (c) At the closing of the Bulk Transfer, monies which represent the Shared Facilities Expenses and Shared Facilities Escrow (an amount in excess of $2.5 million) were never collected by Elcom Condominium; (d) Tom Sullivan, through ANO (the entity that he owns and controls) received all of the cash proceeds from the transaction totaling $9,209,797.39; (e) As a result of the failure to pay the Shared Facilities Expenses and Shared Facilities Escrow at the time of the Bulk Transfer, there was insufficient cash flow to operate and maintain the One Bal Harbour as a five star resort and eventually One Bal Harbour was put in jeopardy of being closed down without the infusion of new capital; (f) Within a short time after the Bulk Transfer, virtually all of the 38 hotel condominium units were resold without any subsequent purchaser paying the still unpaid Shared Facilities that had accrued prior to the Bulk Transfer; (g) The transferees under the Bulk Transfer, which included persons that were partners of the Elcom Condominium's principals, transferred those same units for a total profit of more than $8,000,000; and (h) Upon information and belief, one or more of the Defendants in the Derivative Action received a portion of the proceeds from the subsequent sale of the hotel condominium units.

b. ***The Plan Mediation***.

    i.    In the Disclosure Statement, the Debtors assert that the Debtors "believe that the Associations did not comply with the Plan Mediation Order, and preserve all claims and rights against the Associations for their non-compliance with the Plan Mediation Order." *See* Disclosure Statement, p. 15.

    ii.    As an initial comment, the Hotel Association believes that it was actually the Debtors and Sullivan that did not comply in good faith with the plan mediation and such statement should be included in the Disclosure Statement.

    iii.    Moreover, the Debtors should be required to explain the exact alleged "claim and rights against the Associations" that the Debtors believe they have preserve.

c. ***The Derivative Action***.

    i.    The Disclosure Statement provides inadequate information regarding the Derivative Action. *See* Disclosure Statement, pp. 18-19. First, the Disclosure Statement is misleading when it states that the Associations "believed" that they have standing to commence the Derivative Action. *See id.* Nothing could be further from the truth. The Stipulation explicitly provided the Associations such standing. *See* Stipulation, ¶ 13.

ii.    Moreover, the Disclosure Statement does not provide adequate information regarding the nature of the Derivative Action because the Disclosure Statement simply lists, in mechanical fashion and without explanation, the titles of the counts alleged in the complaint.

iii.    The Hotel Association submits that such a bare bone statement does not provide sufficient information to creditors to understand the nature of the Derivative Action, the possible proceeds that will be obtained from the successful prosecution of the Derivative Action and the positive impact on distributions from the Trust to the Beneficiaries.

d.    ***Alleged Claims Against the Associations***.

i.    On Exhibit "E" of the Disclosure Statement, the Debtors list the "Associations" as potential litigation targets. *See* Disclosure Statement, Exhibit "E".

ii.    The Hotel Associations believes that the Debtors have provided no disclosure as to why the Associations, which are the very entities (and their memberships) that have suffered due to the mismanagement and fraud perpetrated at the One Bal Harbour property, could conceivably be a litigation *target*.

iii.    The Hotel Association submits that the Debtors should be required to provide additional information in the Disclosure Statement related to this far-fetched assertion, and the Hotel Association should have the opportunity to respond and revise such disclosure, prior to the approval of the Disclosure Statement.

## III.    The Disclosure Statement Cannot Be Approved Because the Plan is Patently Unconfirmable.

### A.    Ample Legal Authority Exists to Deny Approval of a Disclosure Statement that Describes a Fatally Flawed Plan.

65.    Even if the Court concludes that the Disclosure Statement contains adequate information, the Hotel Association submits that it should not be approved because the Debtors have proposed a plan that is fatally flawed, and therefore, the Plan is not confirmable under section 1129 of the Bankruptcy Code. *In re Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D.Cal. 1999) ("[i]t is now well accepted that a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan could not possibly be confirmed"); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992) ("[a]

34

disclosure statement will not be approve where … it describes a plan which is fatally flawed and thus incapable on confirmation").

66.     Ample authority exists for the Court to consider fundamental legal objections to confirmation as a part of considering whether to approve a disclosure statement.  *See, e.g., In re R&G Properties, Inc.*, No. 08-10876, 2009 WL 2043873, at *5 (Bankr. D.Vt. July 6, 2009) (court holds that debtor failed to satisfy burden that disclosure statement contained adequate information where debtor proposed plan with gerrymandered classes); *In re Quigley Co.*, 377 B.R. 110, 115-16 (Bankr. S.D.N.Y. 2007) ("[i]f the plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied, as solicitation of the vote would be futile"); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("[w]here the plan's inadequacies are patent, they may, and should be addressed at the disclosure statement stage"); *In re Curtis Center Ltd. P'ship.*, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996) (citing cases) (bankruptcy court noted agreement with "the proposition that a disclosure statement should be disapproved where the plan it describes is patently unconfirmable"); *In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990) ("court approval of a disclosure statement for a plan which will not, nor cannot, be confirmed by the Bankruptcy Court is a misleading and artificial charade which should not bear the imprimatur of the court").

**B.      The Plan Includes Gerrymandered Classes of Claims.**

67.     The Plan includes gerrymandered classes.  Here, the Plan is not confirmable because it unfairly discriminates, in violation of section 1129(b) of the Bankruptcy Code, against the general unsecured creditors holding claims, estimated by the Debtors to range from $14 million to $80 million, in Elcom Hotel's Class 4 ("General Unsecured Claims") because the Debtors have gerrymandered a small class of unnamed general unsecured creditors in Elcom Hotel, allegedly holding a unsecured claims in the range of  $500,000 to $971,032 in Class 3

35

("General Unsecured Vendor Claims") that are allegedly a group of vendors that are "critical" to Stoneleigh.  The Plan seeks to make distributions to each creditor in this gerrymandered class in amounts representing 50% of such creditor's allowed unsecured claim.

68.    Yet there is no justification for two separate classes of unsecured claims in Elcom Hotel.  In *In re Boston Post Road, Ltd., P'ship*, the Second Circuit affirmed a bankruptcy court's denial of confirmation of a debtor's chapter 11 plan.  21 F.3d 477, 478-479 (2d Cir. 1994).  The court found that the Bankruptcy Code does not permit separate classification of unsecured claims solely to create an impaired assenting class to effect "cram down."  *Id*. at 483.  Thus, the court determined that the bankruptcy court properly concluded that the debtor's creation of multiple classes of similar unsecured claims was done with the sole purpose of "gerrymandering" the classes in order to force "cram down" on an objecting unsecured creditor.  *Id*. at 481-83.

69.    There is simply no material difference between and among the two classes of unsecured claims against Elcom Hotel, despite the Debtors' self-serving statement that the tiny class of vendor claims is somehow "critical" to Stoneleigh.  If Stoneleigh believes that certain vendors *of the Debtors* are critical *to Stoneleigh*, then it is Stoneleigh, not the Debtors' prepetition creditors, who should be bearing the cost of incentivizing such vendors to continue to business with Stoneleigh after the closing of the sale.

70.    Stated differently, the vendors in Class 3 are not critical *to the Debtors* or else the Debtors would have filed a critical vendor motion in the case seeking critical vendor status for them (as the Debtors did for other vendors early in the Chapter 11 Cases).  As a result of its gerrymandering, the Debtors are seeking merely to assure themselves of obtaining the vote in favor if the Plan by one class of impaired creditors of Elcom Hotel.

71.     Moreover, the Disclosure Statement contains inadequate information on this issue.  Although the Plan purportedly to reserve to the Debtors alone the power to modify the Plan, it is clear that Stoneleigh's hands are all over the Plan, particularly with respect to the design of Elcom Hotel's Class 3.  *See* Plan, § 13.2 ("Modification of Plan").  Moreover, the proposed auction procedures proposed by Stoneleigh and the Debtor require the Debtors to confirm this particular Plan or else Stoneleigh is not required to close on the sale.  It is equally clear that the Disclosure Statement provides no information concerning (i) Stoneleigh's actions in formulating the Plan, (ii) the power of Stoneleigh to prevent the Debtors from modifying the Plan without Stoneleigh's explicit approval and (iii) the manner in which Stoneleigh will dictate to the Debtors (and when) regarding which creditors are to receive the benefit of being placed in Elcom Hotel's Class 3.  Until the Disclosure Statement fully discloses these important issues, the Hotel Association submits that it does not contain adequate information.

72.     As described above, the Plan is also patently unconfirmable because, among other reasons, it impermissibly grants broad releases to third-parties and fails to provide for substantive consolidation of the Debtors' estates.   Accordingly, the Hotel Association respectfully submits that the Disclosure Statement should not be conditionally approved by the Court.

**C.      The Plan Does not Meet the "Good Faith" Requirement.**

73.     Pursuant to section 1129(a)(3) of the Bankruptcy Code, the Plan may be confirmed by the Court only if it "the plan has been proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  In order to meet the good faith requirement, the Debtors must demonstrate, among other things, that the process they used to seek its confirmation was fair.  *In re Mt. Carbon Metro. Dist.*, 242 B.R. 18, 41 (Bankr. D.Colo. 1999) (Chapter 9).

37

74.     As detailed in the Hotel Association's separate motion to substantively consolidate the Debtors' two estates filed concurrently herewith, the Plan proceeds upon the faulty premise that the two estates will not be substantively consolidated.  For the reasons expressed herein and in the separate motion, the Hotel Association submits that the Court should rule upon the Hotel Association's separate motion to substantive consolidate the Debtors' estates prior to deciding whether to permit the Debtors to send the Plan out for solicitation to creditors.

75.     Moreover, as stated above, a second reason supporting the lack of good faith in proposing the liquidating Plan are the extensive releases that the Debtors seek to grant to Tom Sullivan and his affiliated entities.  The Debtors know that if such releases in this liquidating Plan are ultimately approved by the Court, the impact would be effectively to grant total immunity to these entities in the Derivative Action.  Thus, the Hotel Association submits that the Plan was not proposed in good faith and the Disclosure Statement contains inadequate information.

IV.     **The Solicitation Package Should Include the Hotel Association's**
        **Letter in Opposition to the Plan.**

76.     If the Court approves the Disclosure Statement and authorizes the Debtors to solicit votes on the Plan, the Hotel Association respectfully requests that it be authorized to provide a letter to the Debtors to be distributed with the Disclosure Statement describing the Hotel Association's views expressed in this Objection, including the right to make a recommendation to vote against acceptance of the Plan.  *In re Tucker Freight Lines, Inc.*, 62 B.R. 213, 215 n.1 (Bankr. W.D. Mich. 1986) (authorizing creditors' committee opposed to disclosure statement to include in solicitation package a letter recommending that creditors vote against acceptance of proposed plan); *see also In re Condere Corp.*, 228 B.R. 615, 621 (Bankr. S.D.Miss. 1998) (noting that creditors received creditors' committee letter urging creditors to

38

vote against proposed plan).   Given the fact that there is no official committee of unsecured creditors appointed in the Chapter 11 Cases, as well as the important and unique role of the Hotel Association with respect to the One Bal Harbour property, the Hotel Association submits that including such letter from the Hotel Association is justified and warranted.

## RESERVATION OF RIGHTS

77.    Due to the fact that the Debtors are seeking conditional approval of the Disclosure Statement and the Hotel Association has had only a few days to prepare this Objection, the Hotel Association expressly reserves all of its rights to object to the Plan and/or the Disclosure Statement on any ground whatsoever, regardless of whether those grounds are addressed herein.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Hotel Association respectfully requests that the Court enter an order: (i) sustaining the Hotel Association's objection and denying the conditional approval of the Disclosure Statement; (ii) requiring the Debtors to amend and supplement the Disclosure Statement to correct the defects and include adequate information identified in this Objection; and (iii) granting such other and further relief as the Court deems just, proper and equitable.

[INTENTIONALLY LEFT BLANK]

5278945-8

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this

31st day of October, 2013, by electronic transmission through the Court's CM/ECF system upon

all parties on the attached CM/ECF Service List.


Dated:   Miami, Florida
           October 31, 2013

                      BERGER SINGERMAN LLP

                      By:    /s/ Christopher A. Jarvinen
                               Christopher A. Jarvinen
                               Florida Bar No. 021745
                               (cjarvinen@bergersingerman.com)
                               (A Member of the Firm)

                      Paul S. Singerman (singerman@bergersingerman.com)
                      Florida Bar No. 378860
                      Debi E. Galler (dgaller@bergersingerman.com)
                      Florida Bar No. 985236
                      1450 Brickell Avenue, Suite 1900
                      Miami, FL 33131
                      Telephone:  (305) 755-9500
                      Facsimile:  (305) 714-4340

                      *Counsel for the 10295 Collins Avenue, Hotel*
                      *Condominium Association, Inc.*

5278945-8

## CM/ECF SERVICE LIST

**13-10029-RAM Notice will be electronically mailed to:**

Vincent F Alexander on behalf of Debtors Elcom Condominium, LLC and Elcom Hotel & Spa, LLC
vfa@kttlaw.com, lf@kttlaw.com

Paul J. Battista, Esq on behalf of Interested Party Jorge J. Perez, as Receiver Only and not in his Individual Capacity
pbattista@gjb-law.com, gjbecf@gjb-law.com

Paul J. Battista, Esq on behalf of Interested Party McDonald Hopkins, LLC
pbattista@gjb-law.com, gjbecf@gjb-law.com

Francis L. Carter, Esq. on behalf of Mediator Francis L. Carter
flc@katzbarron.com, lcf@katzbarron.com

Ileana Espinosa Christianson, Esq. on behalf of Creditor Branch Banking & Trust Company
ileana.christianson@gray-robinson.com, jceide@gray-robinson.com, lnegron@grayrobinson.Com

Joseph A. DeMaria on behalf of Defendants JYM General Partner, Ltd., JYM, Ltd., We Valet, LLC and Jorge E. Arevalo
jad@tewlaw.com, ecs@tewlaw.com, mm@tewlaw.com, dturken@tewlaw.com

Brian S Dervishi on behalf of Defendant Ocean Bank
bdervishi@wdpalaw.com, service@wdpalaw.com

Michael J. Eisler, Esq. on behalf of Defendant Bayview Loan Servicing, LLC
meisler@strauseisler.com

John H Genovese, Esq on behalf of Creditor Berkowitz Pollack Brant
jgenovese@gjb-law.com, hburke@gjb-law.com, gjbecf@gjb-law.com

Zachary N James on behalf of Defendants ANO, LLC, Elevation Communities, LLC and Thomas Sullivan
zjames@melandrussin.com, ltannenbaum@melandrussin.com, mrbnefs@yahoo.com

Christopher A Jarvinen on behalf of Creditor 10295 Collins Avenue, Hotel Condominium Association, Inc.
cjarvinen@bergersingerman.com, efile@bergersingerman.com

Harris J. Koroglu on behalf of Creditor ValleyCrest Landscape Maintenance, Inc.
hkoroglu@shutts.com, jgoodwin@shutts.com

Corali Lopez-Castro, Esq on behalf of Creditors 10295 Collins Avenue Residential
Condominium Association, Inc. and 10295 Collins Avenue, Hotel Condominium Association,
Inc.
clc@kttlaw.com, rcp@kttlaw.com

Corali Lopez-Castro, Esq on behalf of Debtors Elcom Condominium, LLC and Elcom Hotel &
Spa, LLC
clc@kttlaw.com, rcp@kttlaw.com

Corali Lopez-Castro, Esq on behalf of Interested Party Jorge J. Perez, as Receiver Only and not
in his Individual Capacity
clc@kttlaw.com, rcp@kttlaw.com

Richard H Malchon, Jr on behalf of Other Professional BMC-The Benchmark Management
Company
richard.malchon@arlaw.com, katie.takas@arlaw.com

Aleida Martinez Molina on behalf of Interested Party Village of Bal Harbour, Florida
amartinez@wsh-law.com, jfuentes@wsh-law.com

Matthew Mazur, Jr on behalf of Interested Party William Perry Walker, III
mmazurjr@mazur-law.com, mazurpaecf@gmail.com

Nicole R Messamore on behalf of Creditor Freshpoint South Florida, Inc.
nmessamore@sblawfirmfl.com, general@sblawfirmfl.com

Barry E Mukamal
bankruptcy@marcumllp.com, FL64@ecfcbis.com

Timothy J Norris, Esq on behalf of Creditor Duane Morris LLP
tjnorris@duanemorris.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Jeffrey J Pardo on behalf of Creditors 10295 Collins Avenue, Hotel Condominium Association,
Inc. and 10295 Collins Investment, Inc.
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor 133812 Canada, Inc.
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor 513 AMREI LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Bal Harbour 1017, LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor George J Schafer LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Indulgence at Bal Harbour, LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Josemar LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor K & K Realty Associates LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Ku Trading LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor TAS PROP LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Unit #1112 Regent Bal Harbour LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Unit #1113 Regent Bal Harbour LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Unit #714 Regent Bal Harbour, LLC
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Westquality Inc.
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Arline Shenker
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Ashok Kumar
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Claire Daniels
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Denis Trupkin
jpardo@pardogainsburg.com

5278945-8

Jeffrey J Pardo on behalf of Creditor Edward Tam
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Francis Leo Doyle
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Gary Daniels
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Hassan Abbass
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Julia Abbass
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Kinda Farhat
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Lewis Shenker
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Lillian Glowinsky
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Linda Trupkin
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Michael Konig
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Michael C. Murr
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Naim Farhat
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Nicholaos Rokanas
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Noel A. D'Silva
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Norman Glowinsky
jpardo@pardogainsburg.com

5278945-8

Jeffrey J Pardo on behalf of Creditor Patricia Puglisi
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Penelope Laskaris
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Puglisi Joseph
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Tara Hart
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Creditor Vimal M. Fonseca
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Plaintiff 10295 Collins Avenue Residential Condominium
Association, Inc.
jpardo@pardogainsburg.com

Jeffrey J Pardo on behalf of Plaintiff 10295 Collins Avenue, Hotel Condominium Association,
Inc.
jpardo@pardogainsburg.com

Raquel A Rodriguez on behalf of Interested Party Jorge J Perez
rrodriguez@mcdonaldhopkins.com, ccorzo@mcdonaldhopkins.com

Peter D. Russin, Esq on behalf of Creditor ANO, LLC
prussin@melandrussin.com, ltannenbaum@melandrussin.com, mrbnefs@yahoo.com

Peter D. Russin, Esq on behalf of Defendants ANO, LLC., Elevation Communities, LLC and
Thomas Sullivan
prussin@melandrussin.com, ltannenbaum@melandrussin.com, mrbnefs@yahoo.com

William G Salim Jr on behalf of Interested Party Mark Pordes
wsalim@mmsslaw.com, cleibovitz@mmsslaw.com

Steven D Schneiderman on behalf of U.S. Trustee Office of the US Trustee
Steven.D.Schneiderman@usdoj.gov

Paul Steven Singerman, Esq on behalf of Creditor 10295 Collins Avenue, Hotel Condominium
Association, Inc.
singerman@bergersingerman.com, mdiaz@bergersingerman.com, efile@bergersingerman.com

Peter A Tappert, Esq. on behalf of Defendant Ocean Bank
ptappert@wdpalaw.com, service@wdpalaw.com, ctsanchez@wdpalaw.com

Charles M Tatelbaum on behalf of Creditors 10295 Collins Avenue Residential Condominium Association, Inc. and 10295 Collins Avenue, Hotel Condominium Association, Inc.
ctatelbaum@hinshawlaw.com, csmith@hinshawlaw.com, carrese@hinshawlaw.com, gfarmer@hinshawlaw.com, lportuondo@hinshawlaw.com, esegarra@hinshawlaw.com, clucas@hinshawlaw.com

Charles W Throckmorton, Esq on behalf of Debtors Elcom Condominium, LLC and Elcom Hotel & Spa, LLC
cwt@kttlaw.com, lf@kttlaw.com, ycc@kttlaw.com

David S Turken on behalf of Defendants JYM General Partner, Ltd., JYM, Ltd., We Valet, LLC and Jorge E. Arevalo
dturken@tewlaw.com

Albert J Vitto, III on behalf of Creditor Yun Maintenance Services, Inc.
vitto@slpalaw.com

Jason Weaver on behalf of Creditor HSA Investments I, LLC
jasonweaveresq@gmail.com, akaplan@hagenlawfirm.com

Jason Weaver on behalf of Creditor HSA Investments II, LLC
jasonweaveresq@gmail.com, akaplan@hagenlawfirm.com

Jason Weaver on behalf of Creditor HSA Investments III, LLC
jasonweaveresq@gmail.com, akaplan@hagenlawfirm.com

Doron Weiss on behalf of Debtor Elcom Hotel & Spa, LLC
dweiss@barthet.com

Doron Weiss on behalf of Special Counsel Paul D. Breitner
dweiss@barthet.com